No. 22-6023

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

JOSHUA JARRETT, et al.,
Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA.
Defendant-Appellee.

On Appeal from the United States District Court
for the Middle District of Tennessee

## BRIEF OF APPELLANTS

David L. Forst
Sean P. McElroy
FENWICK & WEST LLP
Silicon Valley Ctr.
801 California St.
Mountain View, CA 94041
(650) 988-8500

Jeffrey M. Harris
Cameron T. Norris
Jeffrey S. Hetzel
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellants*

## CORPORATE DISCLOSURE STATEMENT

No plaintiff is a subsidiary or affiliate of a publicly owned corporation, and no corporation has a substantial financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

Statement in Support of Oral Argument .................................................................. ix

Statement of Jurisdiction .......................................................................................... 1

Statement of the Issues ............................................................................................. 1

Statement of the Case ............................................................................................... 2

    I.      Jarrett's recurring tax problem ............................................................. 3

    II.     Jarrett's lawsuit .................................................................................... 5

    III.   The government's unaccepted offer ..................................................... 6

    IV.   The district court's dismissal ............................................................... 8

Summary of Argument .............................................................................................. 9

Argument .................................................................................................................. 11

    I.      This case is not moot because Jarrett did not accept the government's offer ................................................................................................. 12

          A.    An unaccepted offer cannot moot a claim ............................. 12

          B.    The government's offer was unaccepted, so it did not moot Jarrett's claim. ...................................................................... 15

          C.    This case is not the exception. .............................................. 19

    II.     This case is not moot because, even if Jarrett had accepted the government's offer, the government did not offer complete relief. .............. 26

          A.    Jarrett sought, and is entitled to, a judgment that his unsold tokens are not taxable income. ............................................. 26

          B.    Jarrett sought, and is entitled to, an injunction. .................... 28

    III.   Even if this case were otherwise moot, it would be capable of repetition but evading review. ........................................................................ 32

Conclusion ............................................................................................................... 36

Certificate of Compliance ....................................................................................... 38

Certificate of Service .............................................................................................. 38

Addendum ............................................................................................................... 1a

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Jacobs,*
374 P.2d 489 (Alaska 1962) ...................................................................................21

*Barry v. Lyon,*
834 F.3d 706 (6th Cir. 2016) ........................................................................... 33, 35

*Biodiversity Legal Found. v. Badgley,*
309 F.3d 1166 (9th Cir. 2002) ..............................................................................36

*Bob Jones Univ. v. Simon,*
416 U.S. 725 (1974) ...............................................................................11, 30, 31

*California v. San Pablo & T.R. Co.,*
149 U.S. 308 (1893) ...................................................................................... 22, 23

*Campbell-Ewald Co. v. Gomez,*
577 U.S. 153 (2016) ...............................................................................passim

*Chapman v. First Index, Inc.,*
796 F.3d 783 (7th Cir. 2015) ......................................................................... 10, 18

*Christian Coal. of Fla. v. United States,*
662 F.3d 1182 (11th Cir. 2011) ...................................................................... 32, 35

*Church of Scientology of Haw. v. United States,*
485 F.2d 313 (9th Cir. 1973) ................................................................................33

*Citizens for Responsible Gov't v. Davidson,*
236 F.3d 1174 (10th Cir. 2000) ............................................................................28

*City of Erie v. Pap's A.M.,*
529 U.S. 277 (2000) ............................................................................................25

*Cohen v. United States,*
650 F.3d 717 (D.C. Cir. 2011) ......................................................................passim

*Comm'r v. Glenshaw Glass Co.,*
348 U.S. 426 (1955) ....................................................................................... 3, 4

*County of Dakota v. Glidden,*
113 U.S. 222 (1885) ............................................................................................14

*Cumberland Capital Corp. v. Harris,*
621 F.2d 246 (6th Cir. 1980) ................................................................................11

*Decker v. Nw. Envtl. Def. Ctr.*,
   568 U.S. 597 (2013) ..................................................................26

*Downey v. State Farm Fire & Cas. Co.*,
   266 F.3d 675 (7th Cir. 2001) ....................................................18

*Drs. Hill & Thomas Co. v. United States*,
   392 F.2d 204 (6th Cir. 1968) ...............................23, 24, 34, 36

*Eliason v. Henshaw*,
   17 U.S. (4 Wheat.) 225 (1819) ................................................14

*Empire Mach. Co. v. Litton Bus. Tel. Sys., Div. of Litton Sys., Inc.*,
   566 P.2d 1044 (Ariz. Ct. App. 1977)......................................21

*Enochs v. Williams Packing & Navigation Co.*,
   370 U.S. 1 (1962) ...............................................................29, 30

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
   498 U.S. 426 (1991) ..................................................................32

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013)....................................................................12

*Gomez v. Campbell-Ewald Co.*,
   768 F.3d 871 (9th Cir. 2014) ....................................................13

*Gomez v. Campbell-Ewald Co.*,
   805 F. Supp. 2d 923 (C.D. Cal. 2011) .....................................13

*Granato v. Bane*,
   74 F.3d 406 (2d Cir. 1996).......................................................36

*Greer v. Comm'r*,
   557 F.3d 688 (6th Cir. 2009) ...............................................1, 27

*H.A.L. NY Holdings, LLC v. Guinan*,
   958 F.3d 627 (7th Cir. 2020) ....................................................18

*Heckler v. Day*,
   467 U.S. 104 (1984) ..................................................................29

*Hermes v. William F. Meyer Co.*,
   382 N.E.2d 841 (Ill. App. Ct. 1978) ........................................21

*Hous. Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*,
   643 F.2d 1185 (5th Cir. 1981) ..................................................21

*Household Bank v. JFS Grp.*,
   320 F.3d 1249 (11th Cir. 2003) ................................................27

*Humane Soc. of U.S. v. Clinton*,
  236 F.3d 1320 (Fed. Cir. 2001) ....................................................36

*In re City of Detroit*,
  841 F.3d 684 (6th Cir. 2016) ......................................................34

*Inv. Annuity, Inc. v. Blumenthal*,
  609 F.2d 1 (D.C. Cir. 1979) .................................................. 29, 30

*Knox v. SEIU, Local 1000*,
  567 U.S. 298 (2012) ............................................................. 27, 34

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
  511 U.S. 375 (1994) ..................................................................18

*L.A. Becker Co. v. Clardy*,
  51 So. 211 (Miss. 1910) ............................................................21

*Lawrence v. Blackwell*,
  430 F.3d 368 (6th Cir. 2005) ........................................... 2, 11, 33

*Little v. Bowers*,
  134 U.S. 547 (1890) ..................................................................22

*Mallory v. Eyrich*,
  922 F.2d 1273 (6th Cir. 1991) ...................................................17

*Mayo Found. for Med. Educ. & Res. v. United States*,
  562 U.S. 44, 55 (2011). .............................................................22

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ..................................................................27

*Ne. Ohio Coal. for the Homeless v. Husted*,
  831 F.3d 686 (6th Cir. 2016) ......................................................24

*NFIB v. Sebelius*,
  567 U.S. 519 (2012) ....................................................................4

*O'Brien v. Ed Donnelly Enters., Inc.*,
  575 F.3d 567 (6th Cir. 2009) ........................................... 13, 17, 24

*Pacific R.R. v. Ketchum*,
  101 U.S. 289 (1880) ..................................................................18

*Phillips v. Comm'r*,
  283 U.S. 589 (1931) ..................................................................31

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*,
  769 F.3d 447 (6th Cir. 2014) ......................................................35

*Ross v. Hartford Lloyd Ins. Co.,*
2019 WL 8223066 (N.D. Tex. Sept. 16) .......................................................... 20

*Rufo v. Inmates of Suffolk Cty. Jail,*
502 U.S. 367 (1992) ................................................................................................. 17

*San Mateo Cty. v. S. Pac. R. Co.,*
116 U.S. 138 (1885) ................................................................................................. 22

*South Carolina v. Regan,*
465 U.S. 367 (1984) .................................................................. 11, 30, 31, 32

*Stark v. McCaw,*
506 P.2d 863 (Wash. Ct. App. 1973) ............................................................... 21

*Steel Co. v. Citizens for Better Env't,*
523 U.S. 83 (1998) ................................................................................................... 24

*Sullivan v. Benningfield,*
920 F.3d 401 (6th Cir. 2019) ............................................................... 10, 26

*Town of Chester v. Laroe Estates, Inc.,*
581 U.S. 433 (2017) ................................................................................................ 32

*United States v. Am. Friends Serv. Comm.,*
419 U.S. 7 (1974) ..................................................................................................... 30

*United States v. Guy,*
978 F.2d 934 (6th Cir. 1992) ................................................................ 27, 28

*Universal Life Church Monastery Storehouse v. Nabors,*
35 F.4th 1021 (6th Cir. 2022) ............................................................................ 11

*Virginia v. Am. Booksellers Ass'n, Inc.,*
484 U.S. 383 (1988) ............................................................................................... 28

*Vittitow v. City of Upper Arlington,*
43 F.3d 1100 (6th Cir. 1995) ............................................................................. 28

*Vt. Right to Life Comm. v. Sorrell,*
221 F.3d 376 (2d Cir. 2000) ............................................................................... 28

*Warren v. Sessoms & Rogers, P.A.,*
676 F.3d 365 (4th Cir. 2012) ............................................................................. 19

*Warrior Constructors, Inc. v. Small Bus. Inv. Co. of Hous.,*
536 S.W.2d 382 (Tex. Civ. App. 1976) ......................................................... 21

*Zinni v. ER Solutions, Inc.,*
692 F.3d 1162 (11th Cir. 2012) ........................................................................ 18

vi

## Statutes

26 U.S.C. §6532 ......................................................................................... 5, 24, 26

26 U.S.C. §7405 ................................................................................. 7, 26, 27, 28

26 U.S.C. §7421 ............................................................................................. 5, 29

26 U.S.C. §7422 ..................................................................................... 1, 5, 24, 29

26 U.S.C. §7803(a)(3)(D) ................................................................................. 31

28 U.S.C. §1291 ................................................................................................... 1

28 U.S.C. §1346(a)(1) .......................................................................................... 1

31 U.S.C. §3328(a)(1)(A) ..................................................................... 7, 16, 26

31 U.S.C. §3328(a)(3) .......................................................................................... 7

## Constitutional Provisions

U.S. Const. Art. I, §9, Cl. 4 .............................................................................. 4

U.S. Const., amend. XVI .................................................................................... 4

## Other Authorities

3 Sir William Blackstone, *Commentaries on the Laws of England* ........................... 15

12 Fed. Prac. & Proc. Civ. §3005 (3d ed.) ...................................................... 18

86 C.J.S. Tender §14 ......................................................................................... 15

86 C.J.S. Tender §37-39 .................................................................................... 15

Dodge, *Accessions to Wealth, Realization of Gross Income, and Dominion and Control*, 4 Fla. Tax Rev. 685 (2000) ............................................................................................. 3

Fed. R. Civ. P. 68(a) ........................................................................................ 18

IRS Form 1040 (2022), perma.cc/VB5J-7ZXR .............................................. 34

Ltr. from Rep. Schweikert to IRS (Jul. 29, 2020), perma.cc/45JK-3889 ..................... 4

N.Y.S. Bar Ass'n Tax Section, *Cryptocurrency and Other Fungible Digital Assets*, No. 1461 (2022) ................................................................................................................. 4

Restatement (2d) of Contracts ............................................................. 10, 16, 21

Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............... 32

Sutherland, *Cryptocurrency Economics and the Taxation of Block Rewards*, 165 Tax Notes Federal 749 (2019) ................................................................................................. 4

*Updates to Question on Digital Assets; Taxpayers Should Continue to Report All Digital Asset Income*, IRS.gov (Jan. 24, 2023), perma.cc/D6A9-QHEM ...............................4, 23, 34

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellants respectfully request oral argument. This case raises three important questions of tax procedure that will affect all refund suits in this circuit:

1. The district court carved out an exception—good for tax law only—to the rule that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016). In recognizing this exception, the district court relied solely on cases that predate *Campbell-Ewald*. Whether those cases survive *Campbell-Ewald* is an important question that this circuit hasn't yet answered.

2. The district court held that courts adjudicating tax-refund cases can provide no redress beyond the unaccepted monetary compensation offered here. That holding is in tension with this Court's recognition that a judgment in a tax-refund case provides more relief than monetary compensation alone. *See Greer v. Comm'r*, 557 F.3d 688, 692 (6th Cir. 2009). It also means that courts adjudicating tax-refund cases cannot issue injunctions, but "the Supreme Court has indicated just the opposite." *Cohen v. United States*, 650 F.3d 717, 740 n.5 (D.C. Cir. 2011) (en banc) (Kavanaugh, J., dissenting).

3. The district court held that no mootness exception applies to tax-refund cases that present a discrete and annually repeating legal issue because future iterations involve different years. If affirmed, that holding would create a circuit split. *See Church of Scientology of Haw. v. United States*, 485 F.2d 313, 314-15 (9th Cir. 1973).

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §1346(a)(1) and 26 U.S.C. §7422. This Court has jurisdiction under 28 U.S.C. §1291. The notice of appeal was timely filed on November 21, 2022—52 days after the district court's order dismissing this case against the United States. *See* Order, R.66, Page ID #743; Notice, R.77, Page ID #744. The district court's final order disposed of all parties' claims.

## STATEMENT OF THE ISSUES

1.      Joshua and Jessica Jarrett (for simplicity, "Jarrett") brought a tax-refund case against the government. Jarrett rejected the government's offer to pay the full amount of the disputed tax. When a plaintiff brings a claim for monetary relief and rejects a defendant's offer to pay the full amount, the case is "not moot." *Campbell-Ewald*, 577 U.S. at 159, 162, 165. The district court held that when Jarrett rejected the government's offer here, the case was moot. Was that error?

2.      Jarrett also sought a judgment and injunctive relief—two things the government never even offered. A judgment would have made a difference by rendering the government's otherwise conditional offer unconditional. *Greer v. Comm'r*, 557 F.3d 688, 692 (6th Cir. 2009). And "injunctive relief is available" in tax-refund suits like this one. *Cohen v. United States*, 650 F.3d 717, 740 n.5 (D.C. Cir. 2011) (en banc) (Kavanaugh, J., dissenting). The district court held that the case was moot because a judgment wouldn't have made a difference and injunctive relief isn't available. Was that error?

3.    This case presents a legal issue that recurs for Jarrett every year and that the government has blocked from judicial review. When a case presents a legal issue that is capable of repetition and evades review, a mootness exception applies, even if the issue will recur in a different year. *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). The district court held this exception did not apply because the legal issue would recur in "a different … year." Was that error?

## STATEMENT OF THE CASE

The IRS has given Jarrett a recurring tax problem. Jarrett creates valuable cryptocurrency tokens. Under federal tax law, a taxpayer who creates valuable things usually cannot be taxed until he sells them. But the IRS appears to think that cryptocurrency tokens are taxable when they are created. Whether the IRS is right will affect Jarrett's tax liability every year.

Jarrett tried to resolve this problem by the book. He paid the tax, went through the administrative-review process, and then brought this tax-refund suit. But after the case got a judge and a schedule, the government tried to moot it by offering Jarrett a refund of the taxes he originally paid. The government refused to explain the basis for its offer, refused to agree to a judgment admitting liability, refused to guarantee that it would not try to recover the refund later, and refused to tell Jarrett that it wouldn't find his tokens taxable next year. Jarrett rejected the government's offer. Undeterred, the government mailed him an unsolicited check. Jarrett again said no and refused to take the check or cash it. The government moved to dismiss this case as moot based on its

rejected offer and unilateral mailing. The district court agreed and dismissed the case as moot.

## I.    Jarrett's recurring tax problem

Jarrett owns a small business in Tennessee. Jarrett Decl., R.51-1, Page ID #650. He also uses a cryptocurrency called Tezos. Am. Compl., R.61, Page ID #721. Tezos is known for its high percentage of token holders who, like Jarrett, participate in expanding the Tezos network and creating new Tezos tokens. *State of Tezos Q4 2022*, Messari (Jan. 18, 2023), perma.cc/6YFK-G75W. Jarrett regularly creates new Tezos tokens using a combination of his computing skill and the Tezos tokens he already owns—a process known as "staking." Am. Compl., R.61, Page ID #721; *see also* Jarrett Decl., R.51-1, Page ID #650.

The federal government taxes income when it is realized—"income," as the word states, must "come in." *See generally Eisner v. Macomber*, 252 U.S. 189, 200 (1920). "In the case of self-created property, income is not realized until the self-created objects are sold." Dodge, *Accessions to Wealth, Realization of Gross Income, and Dominion and Control*, 4 Fla. Tax Rev. 685, 688 (2000); *see also Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 431 (1955). When a baker prepares a loaf of bread, he does not realize income until a customer buys it. When a photographer takes a picture, she does not realize income until she sells the rights to it. And when a celebrity signs a picture of himself, no one realizes income until the picture is sold. If the IRS tried to tax these creations before they generated income, it would violate the tax code, over a century of judicial precedent, and

the Constitution. *Glenshaw Glass*, 348 U.S. at 433; *see* U.S. Const., amend. XVI; Art. I, §9, Cl. 4; *NFIB v. Sebelius*, 567 U.S. 519, 570 (2012).

The question underlying this case is whether self-created cryptocurrency tokens are taxable when they are created or when they are sold. Some argue that self-created tokens are not taxable upon creation because, like created property in general, they are simply not income. *E.g.*, Sutherland, *Cryptocurrency Economics and the Taxation of Block Rewards*, 165 Tax Notes Federal 749, 752 (2019). Jarrett agrees. Others argue that self-created tokens are immediately taxable because tokens are not property created by the taxpayer. *E.g.*, N.Y.S. Bar Ass'n Tax Section, *Cryptocurrency and Other Fungible Digital Assets*, No. 1461, at 47 (2022). Indeed, the IRS has instructed taxpayers to report as income receipt of all "new digital assets resulting from mining, staking and similar activities." *See Updates to Question on Digital Assets; Taxpayers Should Continue to Report All Digital Asset Income*, IRS.gov (Jan. 24, 2023), perma.cc/D6A9-QHEM.

No court has ever resolved this question. The answer is critically important for taxpayers like Jarrett. *See, e.g.*, *Ltr. from Rep. Schweikert to IRS* (Jul. 29, 2020), perma.cc/45JK-3889 (expressing "concerns" that the "taxation of 'staking' rewards as income may overstate taxpayers' actual gains from participating in this new technology").

Jarrett created 8,876 Tezos tokens in 2019. Am. Compl., R.61, Page ID #721. He did not sell or exchange these self-created Tezos tokens. *Id.* So if self-created tokens

4

are taxable upon creation, he owed $3,293 of income tax on them. *Id.*, Page ID #724. If they are not, he did not.

The Anti-Injunction Act bars preenforcement lawsuits to challenge tax liability; a taxpayer must instead pay the tax, file an administrative-refund claim, and then wait six months before filing a tax-refund suit. *See* 26 U.S.C. §§7421, 7422, 6532. During that six-month waiting period, the IRS can provide the refund and resolve the dispute. §6532.

Jarrett followed this process. He reported the value of his self-created (but not sold) cryptocurrency tokens as income in 2019. Am. Compl., R.61, Page ID #723-24. He paid income tax on the value of those tokens. *Id.* In July 2020, he filed an administrative-refund claim. *Id.*; Jarrett Decl., R.51-1, Page ID #651. He told the IRS in-depth how he created the tokens and why those self-created tokens shouldn't be taxable upon creation. Jarrett then waited. The IRS did not offer a refund, deny the claim, or respond in any way. Am. Compl., R.61, Page ID #724; Jarrett Decl., R.51-1, Page ID #651.

## II.    Jarrett's lawsuit

After the statutory waiting period lapsed, Jarrett filed this refund suit. Compl., R.1, Page ID #3. In his amended complaint, Jarrett sought three main forms of relief:

1. a "judgment that the disputed income taxes were erroneously assessed";
2. a "refund of [his] 2019 taxes in the amount of $3,793 plus statutory interest"; and
3. a "permanent injunction against the Internal Revenue Service preventing it from treating tokens created by [Jarrett] as income."

5

Am. Compl., R.61, Page ID #727.

The government answered Jarrett's complaint. It denied that Jarrett was entitled to a refund and took the position that the disputed taxes were lawfully collected. R.25, Page ID #66. It specifically "denie[d]" the central fact in this case: "that [Jarrett] *create[d]* new Tezos tokens." *Id.*, Page ID #61 (emphasis added).

## III. The government's unaccepted offer

After the case was assigned and the dispositive briefing schedule was set, the government tried to moot the case. The government first wrote a letter stating that it was "authorized and directed to" pay Jarrett the full amount of taxes demanded in his complaint. Letter, R.51-3, Page ID #657. It did not provide any explanation for the payment, any offer to be bound by an injunction or Rule 68 judgment, or any assurance that the government would not seek to recover the payment or to tax Jarrett's creation of cryptocurrency tokens in the future. *Id.*; Forst Decl., R.51-2, Page ID #653-54; Jarrett Decl., R.51-1, Page ID #651. Jarrett rejected the offer. *See* Rejection Letter, R.51-4, Page ID #659; Forst Decl., R.51-2, Page ID #653-54; Jarrett Decl., R.51-1, Page ID #651-52.

Next, the government sent Jarrett a proposed stipulation of dismissal. Forst Decl., R.51-2, Page ID #653. The dismissal would be without prejudice and would include no further explanation, injunction, judgment, or assurance. Forst Decl., R.51-2, Page ID #653-54; Jarrett Decl., R.51-1, Page ID #651-52. Jarrett rejected the stipulation, and it was never entered.

6

The government lastly mailed an unsolicited check for the same amount to Jarrett's counsel. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652; McMonagle Decl., R.41-1, Page ID #116. As before, the mailing did not provide any explanation for the payment, any offer to be bound by an injunction or Rule 68 judgment, or any assurance that the government would not seek to recover the payment or tax Jarrett's created tokens in the future. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652. Jarrett did not accept the check. *See* Jarrett Decl., R.51-1, Page ID #652. He explained to the government that the dispute remained unresolved for both 2019 and subsequent years. *Id.*

Jarrett has not received or deposited, and will not receive or deposit, the government's unsolicited check. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652; Rejection Letter, R.51-4, Page ID #659. The check remains with his counsel. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652. In fact, by operation of law, the check expired on January 31, 2023. *See* 31 U.S.C. §3328(a)(1)(A). Its expiration does not, however, "affect the underlying obligation of the United States" to Jarrett. *Id.* §3328(a)(3).

Even if Jarrett had deposited the check, he would not be off the hook for 2019 (let alone for future tax years). Absent a judgment in his favor, the government could bring a recovery action against him for the disputed tax amount. 26 U.S.C. §7405. While the government asserted in a brief that it wouldn't bring a recovery action, it would not agree to be bound by that promise. MTD Mem., R.42, Page ID #128.

Jarrett continues to create cryptocurrency tokens. Jarrett Decl., R.51-1, Page ID #650-51. Every year, his same legal problem recurs. *Id.*; *see also* Am. Compl., R.61, Page ID #724. Even if he went through the lengthy administrative and judicial processes again, the government has never promised not to moot a future case by unilaterally mailing another check.

## IV.    The district court's dismissal

After the government's offers went unaccepted, it moved to dismiss the case for lack of jurisdiction. MTD, R.41, Page ID #114. It argued that the case was moot because "the United States granted a full refund of the amount [Jarrett] asked for in the Complaint." MTD Mem., R.42, Page ID #123.

Jarrett responded that the case should not be dismissed for three independent reasons. First, the government's unaccepted offer did not moot his case because, under *Campbell-Ewald*, "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." 577 U.S. at 165; *see* MTD Opp., R.51, Page ID #632-38. Second, even if his request for monetary relief were moot, the case would not be moot because further relief remained available—namely, a "judgment" that "would prevent the government from suing [him]" as well as "forward-looking injunctive relief." *Id.*, Page ID #637-38, 644-47. And third, at the very least, the case would trigger a mootness exception because it would present an issue that is capable of repetition yet evading review. *Id.*, Page ID #638-44.

8

The district court dismissed the case as moot. Order, R.66, Page ID #743. It first held that "the Government's tender of full payment of a refund moots the refund claim." Op., R.65, Page ID #736. The court cited no case post-dating *Campbell-Ewald*. *Id.*, Page ID #736-38. It simply reasoned that *Campbell-Ewald* does not apply to tax-refund cases because the government "does not 'ask' taxpayers if they will accept a refund check"; it "issue[s] a refund check." *Id.*, Page ID #737-38. Second, the district court held that Jarrett could not obtain any further relief, including a judgment or an injunction, because the Anti-Injunction Act barred such relief. *Id.*, Page ID #738-39. And third, the district court held that no mootness exception applied because the issue of Jarrett's tax liability "for the 2019 tax year" could not arise again. *Id.*, Page ID #741.

Jarrett timely appealed. Notice, R.67, Page ID #744.

## SUMMARY OF ARGUMENT

This case is not moot for three independent reasons:

**I.**    Jarrett did not accept the government's offer. An unaccepted offer, for any amount, "does not moot a plaintiff's case." *Campbell-Ewald*, 577 U.S. at 165. Under "basic principles of contract law," an offer, "once rejected, ha[s] no continuing efficacy." *Id.* at 163. An unaccepted offer is a "legal nullity" and therefore cannot deprive a court of jurisdiction. *Id.* at 162. American courts traditionally adjudicated cases after defendants offered full payment, understanding that such offers did not affect their jurisdiction. *Id.* at 170-71 (Thomas, J., concurring in the judgment). And federal courts today can retain jurisdiction on the merits even after the parties have *agreed* on a payment

of monetary relief. *See Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015) (Easterbrook, J.). Therefore, when Jarrett rejected the government's offer to resolve the case, that offer became a legal nullity and could not deprive the district court of jurisdiction.

There is no exception to *Campbell-Ewald* that would apply here. That *Campbell-Ewald* involved a class-action rather than an individual claim is irrelevant because *Campbell-Ewald* considered both class and individual claims, said that its reasoning applies to individual claims, and based its holding on contract-law principles that apply equally to individual claims. 577 U.S. at 163-65. That *Campbell-Ewald* involved an offer of payment rather than an unsolicited check is irrelevant because there is no legal difference between the two—neither satisfies *Campbell-Ewald*'s demand that the plaintiff manifest "acceptance." *Id.* at 163; *see also Restatement (2d) of Contracts* §69 cmt. a (1981) (explaining that an offeree does not manifest acceptance by receiving an unsolicited delivery). And third, the fact that *Campbell-Ewald* was not a tax case is irrelevant because the Court expressed its holding in unqualified terms and specifically reasoned through its application to tax cases. 577 U.S. at 163-64.

**II.**     Even if Jarrett had accepted the offered check, he would still be entitled to additional relief. When a plaintiff has any prospect of further relief that would "make a difference to the legal interests of the parties," the case is not moot. *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019). Separate from his request for money, Jarrett requested a judgment in his favor, which would have made the government's offer

certain and irrevocable. Jarrett also requested an injunction protecting him going forward. The Anti-Injunction Act does not bar that request because the Act does not apply to tax-refund suits, *Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22 (1974); *Cohen*, 650 F.3d at 740 n.5 (Kavanaugh, J., dissenting), or when the taxpayer has no "alternative" way to get relief, *South Carolina v. Regan*, 465 U.S. 367, 378 (1984).

**III.**    Even if this case were otherwise moot, it would fall within the exception for issues that are capable of repetition but evading review. *Lawrence*, 430 F.3d at 371. Jarrett faces the same tax problem every year, so it is "clearly" capable of repetition. *Cumberland Capital Corp. v. Harris*, 621 F.2d 246, 249 (6th Cir. 1980). And his issue evades review, just as it evaded review here. The district court mistakenly rejected this argument because Jarrett's legal issue would recur in "a different tax year." Op., R.65, Page ID #741. Yet almost all cases that are capable of repetition involve issues that will recur only in different years. *E.g.*, *Lawrence*, 430 F.3d at 371 (election dispute). The issue here—whether self-created cryptocurrency tokens are taxable upon creation—is a pure question of law that will not turn on year-to-year factual differences.

For any one of these reasons, the government's unaccepted offer did not moot this case. This Court should reverse the district court's dismissal.

## ARGUMENT

On de novo review, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022), this case is not moot for three reasons, each of which is independently sufficient to reverse. Unaccepted offers don't moot cases after *Campbell-*

*Ewald*. Cases aren't moot when other forms of relief remain available. And if the government could automatically moot this case by unilaterally mailing a check, then the capable-of-repetition exception would apply. This Court should reverse and let the parties litigate the important tax question underlying this case.

## I.    This case is not moot because Jarrett did not accept the government's offer.

An unaccepted offer for the full amount of monetary relief requested by a plaintiff "does not moot a plaintiff's case." *Campbell-Ewald*, 577 U.S. at 165. The district court recognized a new exception to this rule for tax-refund cases. Op., R.65, Page ID #736-38. That exception had no basis in law or logic. And no other exception to *Campbell-Ewald* could justify the district court's dismissal. *Campbell-Ewald* controls and requires reversal.

### A.    An unaccepted offer cannot moot a claim.

"An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect." *Id.* at 162 (quoting and "adopt[ing]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (2013) (Kagan, J., dissenting)). Even when a defendant offers to pay the maximum amount that the plaintiff could recover in the case, the offer does not moot the case when the plaintiff rejects it. *See id.* at 158, 162. "When a plaintiff rejects such an offer—however good the terms—[the plaintiff's] interest in the lawsuit remains just what it was before. And so too does the court's ability to grant [the plaintiff] relief." *Id.* at 162. Therefore, "an unaccepted settlement offer has no force" and "does not moot a plaintiff's case." *Id.* at 156, 165.

In *Campbell-Ewald*, the plaintiff sued for monetary relief against a defendant who sent him an unconsented text message. *Id.* at 157-58. The plaintiff sought monetary relief of no more than $1,500. *Id.* at 156. After the plaintiff filed his complaint, the defendant offered to pay him $1,503. *Id.* at 158. The defendant also offered to pay his costs and to submit to an injunction barring itself from engaging in similar conduct again. *Id.* The defendant filed an offer of judgment under Rule 68, by which it agreed to be subject to a judgment against it for more than the full amount of monetary relief requested. *Id.*

The plaintiff "did not accept." *Id.* Although nobody doubted that the defendant would give the plaintiff all the monetary relief he requested and more, the plaintiff "rejected [the defendant's] settlement terms and the offer of judgment." *Id.* at 163. The defendant moved to dismiss the case as moot. *Id.* at 158. It argued that it should be allowed to unilaterally moot a claim for monetary relief by offering the plaintiff the complete monetary relief that he demanded. *Id.*

The district court rejected the defendant's argument and held that the "unaccepted [s]ettlement [o]ffer did not moot [the plaintiff's individual] claim." *Gomez v. Campbell-Ewald Co.*, 805 F. Supp. 2d 923, 931 (C.D. Cal. 2011). The Ninth Circuit agreed: an "unaccepted settlement offer alone is 'insufficient' to moot [the plaintiff's individual] claim." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 875 (9th Cir. 2014). The Ninth Circuit's decision split from three other circuits, including this one. *See Campbell-Ewald*, 577 U.S. at 160 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009)). The

Supreme Court thus granted certiorari to "resolve a disagreement among the Courts of Appeals over whether an unaccepted offer can moot a plaintiff's claim." *Id.*

The Supreme Court affirmed. It held that "an unaccepted settlement offer has no force," so it "does not moot a plaintiff's case." *Id.* at 156, 165. Its holding relied mostly on contract law—specifically the tenet that "an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter." *Id.* at 163 (quoting *Eliason v. Henshaw,* 17 U.S. (4 Wheat.) 225, 228 (1819)). Therefore, "[u]nder basic principles of contract law, [a defendant's] settlement bid and Rule 68 offer of judgment, once rejected, ha[ve] no continuing efficacy." *Id.* at 163. An offer cannot transform the legal relationship between the parties unless the plaintiff "accept[s]" it. *Id.* at 164. A unilateral offer that goes unaccepted is a "legal nullity." *Id.* at 162. It thus does not deprive a court of jurisdiction over the plaintiff's claim. *Id.* at 162.[1]

Justice Thomas concurred in the Court's judgment on another ground. He agreed that "an offer of complete relief on a claim does not render that claim moot." *Id.* at 169 (Thomas, J., concurring in the judgment). But he came to that conclusion by consulting the common law of tender. *Id.* at 170-71. At common law, a tender of complete monetary relief "would not have deprived a court of jurisdiction." *Id.* at 169. A defendant who wished to unilaterally moot a case had to produce not just the entire sum

---

[1] *Campbell-Ewald* followed a long line of cases where the Supreme Court applied contract-law principles to resolve questions of mootness. *E.g., County of Dakota v. Glidden*, 113 U.S. 222 (1885).

demanded, but the entire sum (1) "before [the] suit was filed," (2) in an "unconditional" manner, (3) while making an "admission of liability." *Id.* at 170. If one of these three conditions was missing, then American courts would continue to adjudicate the case. They did not understand a "mere offer" of complete relief to "strip them of jurisdiction." *Id.* at 171. To read Article III to forbid the adjudication of these cases thus would flout both "history and tradition." *Id.* at 174; *accord* 3 Sir William Blackstone, *Commentaries on the Laws of England* \*16 n.28 ("a tender of amends to the party injured" can serve as a "bar to the action" only if the plaintiff "thinks proper to accept such tender"); 86 C.J.S. Tender §14, §37-39 (identifying the same conditions as Justice Thomas).

## B. The government's offer was unaccepted, so it did not moot Jarrett's claim.

*Campbell-Ewald* controls this case. Jarrett first brought an administrative refund claim and was ignored by the IRS. Then he brought a tax-refund suit against the government seeking, among other things, a "judgment that the disputed federal income taxes were erroneously assessed" and an order "awarding [him] a refund for the 2019 tax year in the amount of $3,793, plus statutory interest." Am. Compl., R.61, Page ID #727. After he filed suit—and the case was assigned to a judge and a dispositive briefing schedule was set—the government offered to pay Jarrett "the maximum amount that [he] could recover" in the case. *Campbell-Ewald*, 577 U.S. at 178 (Roberts, C.J., dissenting); *id.* at 158, 162. Namely, it offered a check for $3,793 plus statutory interest. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652; McMonagle Decl.,

15

R.41-1, Page ID #116. The government refused to admit liability or even explain why it was offering to pay. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652; *see* Answer, R.25, Page ID #66 (denying liability). It refused to be bound by any judgment or injunction. *Id.* It did not even make a formal Rule 68 offer. *Id.*

Jarrett did not accept the government's offer. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652; Rejection Letter, R.51-4, Page ID #659. He refused to take or deposit the check. The check has since expired and cannot be cashed. 31 U.S.C. §3328(a)(1)(A). Under basic contract law, Jarrett's behavior was not an acceptance. *See Restatement (2d) of Contracts* §69 cmt. a (explaining that an offeree does not manifest acceptance by receiving an unsolicited delivery).

When Jarrett rejected the offer, "however good the terms," the offer became a "legal nullity." *Campbell-Ewald*, 577 U.S. at 162. Jarrett's "interest in the lawsuit remain[ed] just what it was before. And so too d[id] the court's ability to grant [the plaintiff] relief." *Id.* The offer, "once rejected, had no continuing efficacy." *Id.* at 163. It "ha[d] no force" and "d[id] not moot [this] case." *Id.* at 156, 165. Alternatively, the offer did not deprive the court of jurisdiction under the law of tender because Jarrett "den[ied]" that it was "sufficient to satisfy his demand" and because the government refused to offer it "before [the] suit was filed," in an "unconditional" manner, or while making an "admission of … liability." *Id.* at 170 (Thomas, J., concurring in the judgment). Its "offer of complete [monetary] relief" therefore did not "bar federal courts

16

from continuing to hear [Jarrett's] claim." *Id.* at 169. Under *Campbell-Ewald*, this case is "not moot." *Id.* at 165 (majority op.).

The mootness analysis here is even easier than in *Campbell-Ewald*. There, the defendant also offered to pay more than the plaintiff's requested monetary relief, pay the plaintiff's costs, submit to a formal Rule 68 judgment against it, and submit to an injunction barring it from engaging in similar conduct again. *Campbell-Ewald*, 577 U.S. at 156-58. Here, the government offered only Jarrett's requested monetary relief. It did not offer to pay his costs. It did not offer to submit to a Rule 68 judgment. It did not offer to submit to an injunction barring it from engaging in similar conduct again. And it refused to admit liability or even explain why it was paying the check. Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #651-52.

Even under the prior Sixth Circuit precedent that *Campbell-Ewald* overruled, a defendant could not get away with mooting a case by paying the requested monetary relief but not submitting to a judgment against it. *See O'Brien*, 575 F.3d at 575 (holding that a defendant must make "offer of judgment" *and* agree that the court "enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer"). Still today, parties can *agree* to a settlement without depriving the court of jurisdiction, for example:

- After a plaintiff accepts a defendant's settlement offer, a court can enter judgment on the merits for the plaintiff. *See Mallory v. Eyrich*, 922 F.2d 1273, 1275-77 (6th Cir. 1991).

- After the parties agree to a consent decree, a court can enter judgment on the merits. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 378 (1992).

17

- After the parties agree to a settlement, a court can retain jurisdiction to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

- After the parties agree to the terms of a judgment, an appellate court can review that judgment on the merits. *See Downey v. State Farm Fire & Cas. Co.*, 266 F.3d 675, 682-83 (7th Cir. 2001) (citing *Pacific R.R. v. Ketchum*, 101 U.S. 289, 295 (1880)).

Because "a district court cannot enter judgment in a moot case," these accepted offers must not moot cases. *Chapman v. First Index, Inc.*, 796 F.3d 783, 786 (7th Cir. 2015) (Easterbrook, J.). Even under Rule 68, when a defendant makes an offer of full monetary relief and the plaintiff accepts it, the court "must" enter judgment. Fed. R. Civ. P 68(a). A Rule 68 judgment is not a dismissal for lack of jurisdiction; it is an on-the-merits and claim-preclusive judgment. 12 Fed. Prac. & Proc. Civ. §3005 (3d ed.) (A Rule 68 judgment "should have claim-preclusive effect."); *see also H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 633 (7th Cir. 2020) (holding that the argument that a "Rule 68 judgment [i]s not a 'final judgment on the merits' … was and is a non-starter"). In short, *accepted* offers don't moot cases, and the government came nowhere close to that here.

This regime makes sense. A plaintiff who has been legally injured by a defendant—especially a defendant who has refused to pay the plaintiff before litigation—has good reason to demand a judgment. A judgment makes the defendant's payment guaranteed, irrevocable, and a bar to relitigation of the same issue or a recovery action for the amount disputed. A judgment can be enforced without another lawsuit. *See Kokkonen*, 511 U.S. at 381-82; *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1166-68 (11th Cir.

2012). A defendant's offer to pay the full monetary relief outside of court provides none of these protections.

### C.　　This case is not the exception.

The government will ask this Court to recognize a bespoke exception to *Campbell-Ewald*. It will likely argue that *Campbell-Ewald* applies only to class actions, only to offers where no check is mailed, or only to non-tax cases. But *Campbell-Ewald* allows none of these exceptions.

***First***, the government might argue—as it did below—that *Campbell-Ewald*'s rule is limited to class actions. MTD Rep., R.53, Page ID #665. The problem with this argument is that *Campbell-Ewald* contains no such limitation. It held unconditionally that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Campbell-Ewald*, 577 U.S. at 165. It came to that conclusion based on contract-law principles that are not limited to class actions. *Id.* at 162. It held that the defendant's offer did not moot the class claims *or* the plaintiff's individual claim. *Id.* at 158, 165. It expressly overruled a contrary case that was not a class action. *Id.* at 160 (citing *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 371 (4th Cir. 2012)). And when the Court had to reconcile its holding with five cases invoked by the defendant and the dissent, it never once mentioned the obvious fact that none of the five cases were class actions. *See id.* at 163-64 & n.5. Justice Thomas's concurrence likewise showed that, historically, the common-law tender doctrine that underlies Rule 68 applied first and foremost to individual claims. *Id.* at 170-71 (Thomas, J., concurring in the judgment).

Today, of course, the *Campbell-Ewald* rule arises most commonly in class actions because those are the cases where a defendant is most incentivized to offer complete relief (to avoid class certification) and the plaintiff is most incentivized to reject complete relief (to ensure classwide relief and attorney's fees). But nothing about the principle itself is limited to that context. "Although the *Campbell-Ewald* decision involved a class action under Federal Rule of Civil Procedure 23, the portion of its decision concerning the effect of an unaccepted contract offer is not limited to class actions." *Ross v. Hartford Lloyd Ins. Co.*, 2019 WL 8223066, at *4 n.3 (N.D. Tex. Sept. 16).

**Second**, the government might argue—as the district court held—that the *Campbell-Ewald* rule applies to *offers*, but here the government *mailed a check* after Jarrett rejected its offer. *See* Op., R.65, Page ID #737-38. But surely an employer who is sued for, say, racial discrimination cannot circumvent *Campbell-Ewald* by mailing an unwanted check to the employee's home address. That maneuver would violate basic principles of contract law. An offeree who receives but never deposits an unsolicited check does not manifest acceptance. Therefore, under the "contract law" inquiry mandated by *Campbell-Ewald*, the mailed check has "no operative effect." 577 U.S. at 162-63. If A asks B to sell him Blackacre for $1,000 and B says no, A cannot acquire Blackacre by

20

mailing B a check for $1,000. Legal authorities universally reject the argument that an offeree accepts an offer by receiving an unsolicited check.[2]

The government might point out that *Campbell-Ewald* hedged, in response to the dissent's hypotheticals, that it was not deciding what would happen if a defendant "deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." 577 U.S. at 166. But even if a defendant would win in that hypothetical situation, the government did not comply with either condition. It mailed a check that remains *un*deposited, and it refused to be bound by any judgment.

---

[2] *See, e.g.*, *Restatement (2d) of Contracts* §69 cmt. e ("A sends B a one-volume edition of Shakespeare with a letter, saying, 'If you wish to buy this book send me $6.50 within one week after receipt hereof, otherwise notify me and I will forward postage for return.' B examines the book and without replying carefully lays it on a shelf to await A's messenger. There is no contract."); *Anderson v. Jacobs*, 374 P.2d 489, 490 (Alaska 1962) (explaining that offeree's receipt of unsolicited check was not acceptance of offer); *Empire Mach. Co. v. Litton Bus. Tel. Sys., Div. of Litton Sys., Inc.*, 566 P.2d 1044, 1050 (Ariz. Ct. App. 1977) (holding that "the mere acceptance of the check in accordance with the terms of the offer does not constitute any evidence of binding conduct on [the offeree's] part"); *Warrior Constructors, Inc. v. Small Bus. Inv. Co. of Hous.*, 536 S.W.2d 382, 386 (Tex. Civ. App. 1976) (holding that "each time that appellee *cashed* one of the tendered checks it bound itself" (emphasis added)); *Stark v. McCaw*, 506 P.2d 863, 865 (Wash. Ct. App. 1973) (holding that offeree accepted offer only when he "accept[ed] and cash[ed] the check"); *Hermes v. William F. Meyer Co.*, 382 N.E.2d 841, 846 (Ill. App. Ct. 1978) (holding that where offeree received $60,000 certified check and "delivered the notice and check to his attorney," who in turn "retained" the check but did not deposit it, "it cannot be said that plaintiff's conduct unequivocally indicated his assent to a supposed offer"); *Hous. Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1187 (5th Cir. 1981) (holding that even an offeree who receives *and deposits* an unsolicited check does not thereby accept offer); *L.A. Becker Co. v. Clardy*, 51 So. 211, 213 (1910) (same).

***Third***, the government might propose a new exception to *Campbell-Ewald* for tax cases. It might emphasize that *Campbell-Ewald* distinguished "a trio of 19th-century railroad tax cases" where courts dismissed tax-collection cases brought by governments against railroads after the railroads paid their disputed taxes. 577 U.S. at 163-64 (distinguishing *Little v. Bowers*, 134 U.S. 547 (1890), *California v. San Pablo & T.R. Co.*, 149 U.S. 308 (1893), and *San Mateo Cty. v. S. Pac. R. Co.,* 116 U.S. 138 (1885)).

But this argument would rewrite *Campbell-Ewald* to carve out an exception "good for tax law only"—a jurisprudential approach that the Supreme Court has rejected. *Mayo Found. for Med. Educ. & Res. v. United States*, 562 U.S. 44, 55 (2011). *Campbell-Ewald* could have distinguished the three railroad cases because they were tax cases, but it did not. 577 U.S. at 163-64. That the Court felt the need to distinguish them proves that its rule *does* apply to tax cases. And the Court distinguished those cases for a reason that has nothing to do with taxes: none of them involved "*unaccepted*" offers. *Id.* at 163. In *Little v. Bowers*, the city agreed to a "compromise" with the railroad, where the city "agreed to take, and the [railroad] agreed to pay" a specified amount, and that *agreement* "extinguish[ed] the controversy between the parties." 134 U.S. at 556. In *San Mateo*, the county accepted—rather than rejected—two payments from the railroad that were greater than the disputed sum. *San Mateo*, 116 U.S. at 138-39. And in *California*, the State tried to reject the railroad's offer, but the California civil code "required the State to *accept* a taxpayer's full payment of the amount in controversy." *Campbell-Ewald*, 577 U.S. at 164 (citing *California*, 149 U.S. at 313-14) (emphasis added). Here, by contrast, the

22

government made the offer of payment, not the taxpayer. And Jarrett, the taxpayer, rejected that offer. Forst Decl., R.51-2, Page ID #653-54; Jarrett Decl., R.51-1, Page ID #651-52; Rejection Letter, R.51-4, Page ID #659. Unlike in *California*, no substantive law required Jarrett to accept the government's offer.

The district court cited one federal statute, Op., R. 65, Page ID #738, but that law states only that the Secretary "shall refund any balance" to a taxpayer who has made an "overpayment." 26 U.S.C. §6402(a). The statute says nothing about whether the taxpayer must accept that refund as satisfaction of the government's obligations to him. And the government does not believe there was a statutory "overpayment" here. Both inside and outside this litigation, it has argued that Jarrett's cryptocurrency tokens *are* taxable income upon creation. *See* R.25, Page ID #61; *Updates to Question on Digital Assets; Taxpayers Should Continue to Report All Digital Asset Income*, IRS.gov (Jan. 24, 2023), perma.cc/D6A9-QHEM. These problems likely explain why the government never mentioned this statute below. *See* MTD Mem., R.42, Page ID #119. MTD Rep., R.53, Page ID #663.

The government will also point to older cases holding that the government's payment mooted a refund case. MTD Mem., R.42, Page ID #123. MTD Rep., R.53, Page ID #664. But so far, every case that the government has found predates *Campbell-Ewald*. The district court, too, could only point to cases that predate *Campbell-Ewald*. *See* Op., R.65, Page ID #736-37. The only Sixth Circuit case was *Drs. Hill & Thomas Co. v. United States*. 392 F.2d 204 (6th Cir. 1968), a per curiam decision from 1968.

But the older cases, including *Drs. Hill*, cannot help the government. In *Drs. Hill*, after the taxpayer filed a refund suit challenging a Treasury regulation, the government "tendered not just the refund claimed, but the entire tax paid by the company." 392 F.2d at 204. It is not clear from the opinion whether the taxpayer accepted the government's offer. *Cf. id.* at 205 (noting that the taxpayer conceded that the challenged regulation's "application to the particular case has ceased"). The taxpayer argued only that the case was not moot because the challenged regulation would have "continuing application"; it never argued that it had rejected the government's offer. *Id.* So *Drs. Hill* cannot be precedent on that point. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1998) ("drive-by jurisdictional rulings … have no precedential effect"). Though this Court later cited *Drs. Hill* to support a similar proposition in *O'Brien*, the Supreme Court overruled *O'Brien* by name in *Campbell-Ewald. See* 577 U.S. at 160. This Court thus would be free to consider the issue anew, even if *Drs. Hill* had resolved it. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720-21 (6th Cir. 2016).

If anything, *Campbell-Ewald* should apply with more force in the tax-refund context. Unlike in ordinary litigation, Congress has specified the procedure for the IRS to preemptively resolve tax disputes. Under federal law, a plaintiff challenging a tax must first file a claim "with the Secretary," and then give the Secretary "6 months from the date of the filing of the claim" to resolve the dispute before going to court. 26 U.S.C. §7422(a), 6532(a)(1). It would render Congress's administrative-claim procedure ineffective to give the IRS no incentive to comply with this procedure. And it would be

backwards for *Campbell-Ewald* to apply against defendants with no formal opportunity to resolve claims before litigation but to not apply against defendants with exactly that opportunity.

\*   \*   \*

The consequences of the government's position "further counse[l] against a finding of mootness." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000). If the government could moot any tax-refund case by simply mailing an unwanted check, then it could "manipulate … jurisdiction" in numerous ways. *Id.* at 288. Consider the following scenarios:

- In this case, the government initially litigates on the merits rather than mailing Jarrett a check. It wins a merits judgment that it can impose the disputed tax on Jarrett. On appeal to this Court, it fully briefs and argues its merits position. After oral argument, the government decides that it's likely to lose. It decides to mail Jarrett an unsolicited check.

- The government decides that only certain judges will uphold a new tax. Several taxpayers file refund suits challenging the tax. The government waits to see which judge is assigned to each case. When a case is assigned to an unfavorable judge, it mails the plaintiff a refund check. In cases assigned to a favorable judge, it litigates the merits.

- The government mails refund checks to any taxpayer who hires a skilled lawyer, and litigates any case where the taxpayer sues *pro se* or hires a less skilled lawyer.

The sounder course—which avoids these embarrassments—is to apply *Campbell-Ewald* on its own terms and hold that the government's offer, because it was never accepted, could not moot Jarrett's case.

25

## II.   This case is not moot because, even if Jarrett had accepted the government's offer, the government did not offer complete relief.

Even if Jarrett had accepted the government's offer, this case still would not be moot. A case becomes moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker v. Nw. Envtl. Def. Ctr.*, 568 U.S. 597, 609 (2013). If some relief would still "make a difference to the legal interests of the parties," then the case cannot be moot. *Sullivan v. Benningfield*, 920 F.3d 401, 410 (6th Cir. 2019). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Id.* at 410.

Even if Jarrett had accepted the government's offer and even if his request for monetary relief were moot, a court could still grant him two forms of effectual relief that would affect the parties' interests. First, a court could enter a judgment that Jarrett is not liable for the disputed tax. And second, a court could enjoin the government from taxing Jarrett's creation of cryptocurrency tokens.

### A.   Jarrett sought, and is entitled to, a judgment that his unsold tokens are not taxable income.

Even assuming Jarrett accepted the government's offer and payment, he would not be home free even with respect to his 2019 taxes. The government's check expired on January 31. *See* 31 U.S.C. §§3328(a)(1)(A), 3328(b)(1)(B). Even if the IRS unilaterally mailed Jarrett a new one and could somehow force Jarrett to accept it, the IRS could later sue Jarrett to recover the disputed amount as erroneously made. *See* 26 U.S.C. §§6532(b), 7405. The government could recover an administrative refund by filing a

new case and arguing that Jarrett's interpretation of the tax code is wrong. *See, e.g.*, *United States v. Guy*, 978 F.2d 934, 937-38 (6th Cir. 1992). The government has this option even when the taxpayer accepts a refund in reliance on the government's false assurances. *Id.* In other words, refund checks are conditional in ways that other potentially case-mooting payments are not. Jarrett therefore seeks a "judgment that the disputed federal income taxes were erroneously assessed" and "awarding [him] a refund." Am. Compl., R.61, Page ID #727; *see* MTD Opp., R.51, Page ID #636-38.

A judgment in Jarrett's favor will change the parties' legal interests in two key ways. First, it will require the government to make a new refund payment, over which it will have no discretion. The litigation will transform an uncertain payment into a certain payment. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012) (holding that defendant's refund offer did not moot case given uncertainty over its effectiveness and completeness). Second, it will prevent the government from suing to recover any refund payment already made. *Greer v. Comm'r*, 557 F.3d 688, 692 (6th Cir. 2009). As it stands now, "the IRS could immediately recover it by suing the taxpayer under IRC §7405, which creates a cause of action for the recovery of erroneous refunds." *Id.* But a "court order," like the one that Jarrett requested, is an absolute bar to §7405 actions. *Id.* That alone defeats mootness. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007); *see also Household Bank v. JFS Grp.*, 320 F.3d 1249, 1259 (11th Cir. 2003) (collecting cases showing that "jurisdiction is present where … the defendant could allege a coercive claim under federal law").

The government might ask this Court to disregard the possibility of a recovery action because it promised in its briefing below to "not … turn around after this case is dismissed and sue [Jarrett] to recover the refund under 26 U.S.C. §7405." MTD Mem., R.42, Page ID #128. But the government's briefing promises are unenforceable, and the IRS can ignore them *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 395 (1988); *Guy*, 978 F.2d at 937-38. The government's "representations in this litigation are not binding on this or future administrations." *Citizens for Responsible Gov't v. Davidson*, 236 F.3d 1174, 1193 (10th Cir. 2000). "[T]here is nothing that prevents the [government] from changing its mind." *Vt. Right to Life Comm. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000). So there is "nothing that *requires* [this Court] to accept representations from the [government's] counsel." *Vittitow v. City of Upper Arlington*, 43 F.3d 1100, 1106 (6th Cir. 1995). The government's representations are especially dubious here because it could have easily offered to be bound by a judgment or an agreement barring a recovery action. But it offered only a dismissal without prejudice and an unexplained check, which it knew would allow it to "turn around after this case is dismissed" and get the contested money back. MTD Mem., R.42, Page ID #128; Forst Decl., R.51-2, Page ID #654; Jarrett Decl., R.51-1, Page ID #652.

### B.    Jarrett sought, and is entitled to, an injunction.

Jarrett also can continue pursuing his separate request for an "injunction against the Internal Revenue Service, preventing it from treating tokens created by [him] as income." Am. Compl., R.61, Page ID #727. A plaintiff who can seek a refund under

26 U.S.C. §7422 can also seek a related injunction in that proceeding. "In the absence of a clear command to the contrary from Congress, federal courts have equitable power to issue injunctions in cases over which they have jurisdiction." *Heckler v. Day*, 467 U.S. 104, 124 (1984). The only reason why Jarrett would not be entitled to an injunction is the Anti-Injunction Act, which the district court thought barred injunctions in tax-refund suits. *See* 26 U.S.C. §7421; Op. R.65, Page ID #738-39. But the district court was mistaken.[3]

As then-Judge Kavanaugh explained, "injunctive relief is available in the tax context, despite the terms of the Anti–Injunction Act." *Cohen*, 650 F.3d at 740 n.5 (Kavanaugh, J., dissenting). For two independent reasons, "precedent demonstrates that declaratory relief and injunctive relief are available in tax refund suits." *Id.*[4]

First, the text of the Tax Anti-Injunction Act does not apply to refund suits in the first place. The Act applies only when a lawsuit is brought "for the purpose of restraining the assessment or collection of any tax." 26 U.S.C. §7421(a). Refund suits do not have that purpose. *See Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7

---

[3] The district court also invoked the Declaratory Judgment Act's tax exemption, but that exemption is coterminous with the Tax Anti-Injunction Act. *See Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 9 (D.C. Cir. 1979). If an injunction is available, then so is a declaration; and vice versa.

[4] Although then-Judge Kavanaugh's opinion was a dissent, the majority did not take issue with his point. To the contrary, it took the more injunction-friendly position that the Anti-Injunction Act allows injunctions even outside of refund suits. *See Cohen*, 650 F.3d at 732.

(1962). Adding a request for prospective relief concerning the same disputed tax issue does not change the suit's purpose because that relief is "ancillary." *United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974). So the Supreme Court has hypothesized, but not yet held, that injunctions are available because "a suit for a refund is not 'for the purpose of restraining the assessment or collection of any tax.'" *Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22 (1974). In fact, "the Government has acknowledged" before "that plaintiffs could obtain appropriate declaratory and injunctive relief in tax refund suits." *Cohen*, 650 F.3d at 740 n.5 (Kavanaugh, J., dissenting).

Second, the Supreme Court has held that Anti-Injunction Act does not apply when a taxpayer is "not provided an alternative remedy." *South Carolina v. Regan*, 465 U.S. 367, 378 (1984). The history of the Act showed that it operated "to bar a suit only in situations in which Congress had provided the aggrieved party with an alternative legal avenue by which to contest the legality of a particular tax." *Id.* at 373. The alternative remedy for an aggrieved party is usually a refund. *See Enochs*, 370 U.S. at 8. Therefore, "the Supreme Court has suggested that injunctive relief would be available *only* in tax refund suits." *Cohen*, 650 F.3d at 740 n.5 (Kavanaugh, J., dissenting).

Any other interpretation of the Anti-Injunction Act would likely violate due process because it would give taxpayers no place to challenge illegal government taxes in court. "[A] taxpayer may not, consistently with due process, be denied the opportunity for an ultimate judicial determination of the legality of a tax assessment against him." *Inv. Annuity, Inc. v. Blumenthal*, 609 F.2d 1, 7 (D.C. Cir. 1979). As the Supreme Court has

put it, the Anti-Injunction Act complies with the Due Process Clause only if it causes a "mere postponement of the judicial enquiry." *Phillips v. Comm'r*, 283 U.S. 589, 596-97 (1931). But the Act violates due process when it does not allow an "adequate" opportunity to obtain "the ultimate judicial determination of the liability." *Id.* The Act must yield when a taxpayer is "unable to utilize any statutory procedure" to bring his claim. *South Carolina v. Regan*, 465 U.S. at 380; *see also Bob Jones*, 416 U.S. at 746 ("This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion [regarding the availability of injunctive relief] might well be different."). Constitutional avoidance thus counsels against reading the Act to totally bar suits for prospective relief.

After the Supreme Court said in *South Carolina v. Regan* that the Tax Anti-Injunction Act did not apply to plaintiffs without an alternative remedy, and then-Judge Kavanaugh said that it does not apply in refund suits, Congress made the argument stronger. It enacted a statutory guarantee giving taxpayers "the right to *challenge the position* of the Internal Revenue Service and *be heard*." 26 U.S.C. §7803(a)(3)(D) (emphases added). Because there "can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously," Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012), the Anti-Injunction Act should not be read to conflict with that statutory guarantee. Instead, Congress has confirmed that taxpayers who are denied the right to challenge the position of the IRS can do so by bringing all their claims for relief in a refund suit.

The district court relied on the Eleventh Circuit's decision in *Christian Coalition*, which held that injunctions aren't available in tax-refund suits once the claim for monetary relief becomes moot. Op. R.65, Page ID #738 (citing *Christian Coal. of Fla. v. United States*, 662 F.3d 1182, 1192 (11th Cir. 2011)). Of course, the monetary claim here is not moot. *See supra* I. But even if it were, *Christian Coalition* is unpersuasive. *Christian Coalition* holds that a taxpayer loses the right to seek an injunction once he is unable to bring a refund claim, 662 F.3d at 1192, but the Supreme Court has held that a taxpayer *gains* the right to seek an injunction once he is "unable to" bring a refund claim, *South Carolina v. Regan*, 465 U.S. at 376. *Christian Coalition* also assumes that a court can have statutory jurisdiction to issue an injunction when a suit is filed (when the monetary claim is live) and then lose that statutory jurisdiction later (when the monetary claim becomes moot). 662 F.3d at 1192. That assumption ignores the rule that courts must evaluate jurisdiction separately "for each form of relief that is sought," *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017), and the rule that statutory jurisdiction must be assessed at the time the complaint is filed, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). *Christian Coalition* is not a persuasive authority that this Court should adopt.

## III.   Even if this case were otherwise moot, it would be capable of repetition but evading review.

If the government were right that plaintiffs can get only monetary relief in refund suits and the government can end those suits by mailing an unwanted check, then this case would fall into the mootness exception for issues that are capable of repetition but

evading review. This exception applies when "there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again," and the "challenged action" can't "be fully litigated prior to its cessation or expiration." *Lawrence*, 430 F.3d at 371. "[T]he chain of potential events does not have to be air-tight or even probable"; it's "sufficient" that the plaintiff "*possibly* could have found [himself] once again in the same situation [he] faced when this suit was filed." *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016).

The Ninth Circuit thus holds that courts should retain jurisdiction when the government tries to unilaterally moot a tax-refund case that raises a recurring and discrete legal issue. In *Church of Scientology of Hawaii v. United States*, the plaintiff brought a refund suit arguing that it should be tax exempt. 485 F.2d 313 (9th Cir. 1973). The government attempted to moot the case by refunding the disputed amount without assuring the plaintiff of its tax-exempt status for future years. *Id.* at 316. The Ninth Circuit held that, even if the offer would have otherwise mooted the case, the district court retained jurisdiction because the same issue would recur in future years. "[T]here is nothing in the proposed refund payment to the taxpayer of sums involuntarily paid for [the years at issue] which would have assured it that the same demands would not be made for [later years]." *Id.* Thus, the "possibility of a continuing recurrence of the problem was sufficient to entitle the taxpayer to have the underlying legal issue determined." *Id.* at 318.

Here, the question whether Jarrett's self-created cryptocurrency tokens are taxable income upon creation is capable of repetition. In fact, "this controversy is not just

'*capable* of repetition'—in [Jarrett's] case, it *is* repeating." *In re City of Detroit*, 841 F.3d 684, 691 (6th Cir. 2016). Jarrett continues to create cryptocurrency tokens and pay income taxes, so the same issue has already recurred and will continue to recur each year. Jarrett Decl., R.51-1, Page ID #650-52; Am. Compl., R.61, Page ID #724. And "since the [government] continues to defend the legality of [taxing cryptocurrency tokens upon creation], it is not clear [it] would necessarily refrain from collecting [the same taxes] in the future." *Knox*, 567 U.S. at 307. In fact, the opposite seems true. The IRS has issued guidance informing cryptocurrency users that they should report as income "new digital assets resulting from mining, staking and similar activities." *Updates to Question on Digital Assets; Taxpayers Should Continue to Report All Digital Asset Income*, IRS.gov. The IRS has also updated the standard Form 1040 to ask taxpayers whether, "[a]t any time during 2022," they "receive[d] (as a reward, award, or payment … ) … a digital asset." IRS Form 1040 (2022), perma.cc/VB5J-7ZXR.

The district court took the view that "[t]his particular issue is not capable of repetition as any subsequent claim for refund would necessarily apply to a different tax year." Op., R.65, Page ID #741. But this Court long ago rejected the notion that a taxpayer's dispute was not capable of repetition because it would arise in a new tax year. In the portion of *Drs. Hill & Thomas* that was not overruled by *Campbell-Ewald*, this Court recognized that a yearly recurring tax dispute *would* satisfy the "probability of immediate repetition" prong, even though each new tax year is different. *Drs. Hill*, 392

F.2d at 205.[5] And in general, a legal issue can be capable of repetition even when future iterations will involve a different year. For instance, "challenges to election laws quintessentially evade review" even though each new election will involve a different year, different race, different term of office, and usually different opposing candidates. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 769 F.3d 447, 452-53 (6th Cir. 2014) (cleaned up).

The district court cited an out-of-circuit case holding that a tax dispute was not capable of repetition because it was fact-bound. *See Christian Coal. of Fla., Inc.*, 662 F.3d at 1196. The plaintiff there originally sought a determination that it was tax-exempt in past years, but there was a reasonable likelihood that, based on its political activities, it would be tax-exempt one year and not tax-exempt the next. *Id.* Here, Jarrett seeks the resolution of an isolated legal question—the taxability of self-created cryptocurrency tokens. The answer to that question will not change year to year. The government speculated that Jarrett might have losses in the future that would preclude his ability to sue for a refund, *see* MTD Mem., R.42, Page ID #129, but that speculation is false, *see* Am. Compl., R.61, Page ID #724. And that mere possibility is not enough to defeat the capable-of-repetition exception. *See Barry*, 834 F.3d at 716.

---

[5] The Court dismissed the case, though, because the identical issue would not evade review. It would soon be decided by the Sixth and Tenth Circuits in pending cases, and no mootness defense was available in either of those cases. *Id.* Here, there is no such parallel litigation.

Nor can there be any doubt that this issue will evade review. An issue evades review when the government can continue to unilaterally "en[d] the controvers[y]" presenting the issue "shortly after litigation commenced." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002); *see also Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1332 (Fed. Cir. 2001) (holding that an issue evaded review because government's post-filing maneuvers could "escape judicial review" and replace it with an "ineffectual cycle of repetitious events"). Courts analyzing this element look skeptically at defendants who try to deliberately moot cases. *E.g.*, *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996) (holding that issue evaded review because "[i]t is … telling that … the State was willing to [change its position] as soon as [plaintiffs] filed suit"). And this Court is especially skeptical when a tax issue has "public importance," making the government's incentive to moot cases that raise the issue extra high. *Drs. Hill*, 392 F.2d at 205.

The district court has shown the government the blueprint to evade review for all time: Ignore refund claims. If the taxpayer sues, then unilaterally mail him a check. And if the taxpayer resists, then deny the availability of any other relief. Of course, the last two steps shouldn't work under existing law. But if they did, then this case would fall in the heartland of the capable-of-repetition exception to mootness.

## CONCLUSION

This Court should reverse the district court's mootness dismissal and remand for further proceedings.

36

Respectfully submitted,

/s/ Cameron T. Norris

David L. Forst
Sean P. McElroy
FENWICK & WEST LLP
Silicon Valley Ctr.
801 California St.
Mountain View, CA  94041
(650) 988-8500

Jeffrey M. Harris
Cameron T. Norris
Jeffrey S. Hetzel
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) because it contains 10,002 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Garamond font.

*/s/ Cameron T. Norris*
Counsel for Appellants
Dated: February 7, 2023

## CERTIFICATE OF SERVICE

I filed this brief via ECF, which will email everyone requiring notice.

*/s/ Cameron T. Norris*
Counsel for Appellants
Dated: February 7, 2023

**Designation of Relevant Documents**

| Record Entry | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1 |
| 25 | Answer | 61 |
| 37 | Notice of Letters | 104 |
| 41 | Motion to Dismiss | 114 |
| 41-1 | McMonagle Declaration | 116 |
| 41-2 | FedEx Receipt | 118 |
| 42 | Defendant's Memorandum in Support of Motion to Dismiss | 119 |
| 51 | Plaintiffs' Memorandum in Opposition to Motion to Dismiss | 625 |
| 51-1 | Jarrett Declaration | 650 |
| 51-2 | Forst Declaration | 653 |
| 51-3 | Offer Letter | 656 |
| 51-4 | Rejection Letter | 658 |
| 53 | Defendant's Reply in Support of Motion to Dismiss | 663 |
| 61 | First Amended Complaint | 720 |
| 62 | Stipulation re Motion to Dismiss | 729 |
| 65 | Opinion Granting Motion to Dismiss | 733 |
| 66 | Order of Dismissal | 743 |
| 67 | Notice of Appeal | 744 |