No. 22-6023

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

JOSHUA JARRETT, ET AL.,

*Petitioner-Appellant*

v.

UNITED STATES OF AMERICA

*Respondent-Appellee,*

On Appeal from the
United States District Court for the Middle District of Tennessee
No. 3:21-cv-00419
Hon. J. Campbell

---

# BRIEF AMICUS CURIAE OF
# THE CENTER FOR TAXPAYER RIGHTS
# IN SUPPORT OF APPELLANT

---

AUDREY PATTEN
Federal Tax Clinic
The Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, Massachusetts 02130
(617) 390-2550
Fax: (617) 522-0715
apatten@law.harvard.edu

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus curiae* the Center for Taxpayer Rights states that it is a non-profit, tax-exempt organization incorporated in Virginia.  The Center has no parent corporation, and no publicly held corporation holds a ten percent or greater ownership stake in the Center.

Date:  February 13, 2023

*/s/ Audrey Patten*
Audrey Patten

*Counsel for* Amicus Curiae

## STATEMENT OF THE PARTIES' CONSENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(2), *amicus curiae* the Center for Taxpayer Rights states that, through its counsel, it has consulted with both the Appellant and Appellee in this case and that both consent to the filing of this brief.

Date: February 13, 2023

*/s/ Audrey Patten*
Audrey Patten

*Counsel for* Amicus Curiae

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................................ i

TABLE OF AUTHORITIES ........................................................................................ iii

INTEREST OF AMICUS CURIAE ............................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................ 2

ARGUMENT ................................................................................................................ 4

    I.    The United States' Unilateral Issuance of a Refund Does Not Automatically Moot a Refund Suit Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 in the Sixth Circuit. ................................................................................................................. 4

    II.    The IRS Does Not Retain Jurisdiction to Unilaterally Issue a Refund Once a Refund Suit is Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 and Has Commenced in a United States District Court or the Federal Court of Claims, nor does the DOJ Have Independent Authority to Authorize Such a Refund. ............... 6

    III.    Allowing the United States to Moot a Refund Suit Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 by Unilaterally Issuing a Refund Would Frustrate Taxpayers' Ability to Seek Effective Relief and Lead to the Ongoing Abrogation of Rights. ........................................................................................................................ 8

        A.    EITC Cases are an Example Where Wrongful Collection of Tax in the Tax Year at Issue Directly Restricts Rights in Future Tax Years and is Capable of Repetition. ........................................................................................................ 10

        B.    Mooting Refund Suits Through Unilateral Refund Payments Allows the Government to Avoid Attorneys' Fees. .......................................................... 14

        C.    Mooting Refund Suits Through Unilateral Refund Payments Allows the United States to Choose Alternate Theories, such as First Time Abate, for the Refund which May Abrogate a Taxpayer's Rights. ................................. 16

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S.Ct. 1493 (2022) ...................................... 1

*C.I.R. v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345 (1971) ..................................................... 7

*Catholic Answers Inc. v. United States*, 438 Fed.Appx. 640 (9th Cir. 2009) ......................... 8

*CIC Servs., LLC* v. *Internal Revenue Serv.*, 141 S. Ct. 1582 (2021) ..................................... 1

*Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204 (6th Cir. 1968) .......................... 5, 6

*First Fed. Savings & Loan Ass'n. v. United States*, 288 F. Supp. 477 (W.D. Mo. 1968) ...... 6

*Flora v. United States*, 362 U.S. 145 (1960) ..................................................................... 3

*Hendricks v. Bowen*, 847 F.2d 1255 (7th Cir. 1988) ........................................................ 15

*Hotel Conquistador v. United States*, 597 2d. 1348 (Ct. Cl. 1979) .................................... 9

*Knez v. Comm'r of Internal Revenue,* 114 T.C.M. (CCH) 444 (T.C. 2017) .......................... 13

*Oosterwijk v. United States*, Civil Action No. CCB-21-1151, 2022 U.S. Dist. LEXIS 14984; 2022 WL 255348 (D. Md. Jan. 27, 2022) ........................................... 18, 19

*Pierce v. Underwood*, 487 U.S. 552 (1988) ...................................................................... 15

*Ruhland v. United States*, 839 F. Supp. 993 (N.D.N.Y. 1993) ...................................... 15, 16

*United States v. Williams,* 514 U.S. 527 (1995) ................................................................. 3

## Statutes

26 U.S.C. § 152 .................................................................................................................. 14

26 U.S.C. § 32 ............................................................................................................... 10, 13

26 U.S.C. § 6212 ................................................................................................................ 9

26 U.S.C. § 6501 ................................................................................................................ 12

26 U.S.C. § 6532 ................................................................................................ 8

26 U.S.C. § 6662 .............................................................................................. 12

26 U.S.C. § 6676 .............................................................................................. 12

26 U.S.C. § 7422 .........................................................................................passim

26 U.S.C. § 7430 ........................................................................................ 14, 15

28 U.S.C. § 1346 .........................................................................................passim

## Other Authorities

*Earned Income and Earned Income Tax Credit (EITC) Tables*, IRS (Jan. 26, 2023),
    https://www.irs.gov/credits-deductions/individuals/earned-income-tax-
    credit/earned-income-and-earned-income-tax-credit-eitc-
    tables#EITC%20Tables.................................................................................. 11

I.R.S. Notice 2022-36, Penalty Relief for Certain Taxpayers Filing Returns for Taxable
    Years 2019 and 2022, IRB 188 (Sept. 6, 2022) ...................................... 18

Internal Revenue Service – IRS Earned Income Tax Credit (EITC) Initiatives: Report
    on Qualifying Child Residency Certification, Filing Status, and Automated
    Underreporter Tests (2008) ....................................................................... 12

IRM pt. 20.1.1.3.3.2.1 (Oct. 19, 2020)............................................................ 17

Margot L. Candall-Hollick, Cong. Rsch. Serv., IN11952, Audits of EITC Returns: By
    the Numbers (2022)..................................................................................... 11

Margot L. Crandall-Hollick, Cong. Rsch. Serv., R44825, The Earned Income Tax
    Credit (EITC): Legislative History 1 (2022) ........................................... 10

National Taxpayer Advocate, Volume 1 – Annual Report to Congress (2019) ..... 11, 12

National Taxpayer Advocate, Volume 2 – Annual Report to Congress (2007) .......... 12

*Penalty Relief due to First Time Abate or Other Administrative Waiver*, IRS (Aug. 22, 2022),
    https://www.irs.gov/payments/penalty-relief-due-to-first-time-abate-or-other-
    administrative-waiver................................................................................ 17, 18

U.S. Dep't of Just., Settlement Reference Manual (Tax Division, 2012)..................... 6, 7

iv

U.S. Dept. of Just., Just. Manual § 6-6.100 (2018)................................................6

U.S. Dept. of Just., Just. Manual § 6-6.600 (2018)................................................7

U.S. Dept. of Just., Just. Manual § 6-6.612 (2018)................................................6

U.S. Dept. of Just., Just. Manual § 6-6.622 (2018)................................................7

**Rules**

Fed. R. App. P. 26 ..........................................................................................................i

Fed. R. App. P. 29 ......................................................................................................i, 1

Fed. R. Civ. P. 68............................................................................................................6, 7

## INTEREST OF AMICUS CURIAE

The Center for Taxpayer Rights ("the Center") is a nonprofit organization that promotes taxpayer rights in the United States and abroad, with a special focus on the rights of lower and middle-income taxpayers.[1]  To further that mission, the Center often files *amicus curiae* briefs in cases implicating U.S. taxpayers' rights.  *See, e.g.*, *CIC Servs., LLC* v. *Internal Revenue Serv.*, 141 S. Ct. 1582 (2021) (involving *amicus* brief filed by the Center); *Boechler, P.C. v. Comm'r of Internal Revenue*, 142 S.Ct. 1493 (2022) (unanimous decision involving *amicus* brief filed by the Center).

The Center believes that the United States cannot unilaterally moot a tax refund suit brought pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422[2] by requesting the Internal Revenue Service ("IRS") to issue a check in the amount of the refund sought, despite the taxpayer's objection.  The Center also rejects the notion that the IRS or the Department of Justice ("DOJ"), acting on behalf of the United States, has any authority to issue such as check on their own during active refund litigation in the United States District Court.  The Center asserts that allowing the United States to do so will hamper the pursuit of justice in tax controversy cases and

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), the Center affirms that no party's counsel authored this brief in whole or in part.  No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief.
[2] Unless otherwise indicated, all section references are to the Internal Revenue Code, Title 26.

abrogate taxpayer rights in refund suits, which will particularly burden low- and middle-income taxpayers seeking correction of wrongful IRS collection practices.

Because the Middle District of Tennessee's incorrect interpretation of the mootness doctrine as applied to refund suits would diminish the rights of taxpayers, especially lower- and middle-income taxpayers, the Center has an interest in the outcome of this case.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs Joshua and Jessica Jarrett sued the United States pursuant to § 7422, contending that tax collected on cryptocurrency created by Mr. Jarrett in 2019 was not taxable income in 2019 and that the $3,793 the Jarretts paid in federal income taxes on the cryptocurrency should be refunded to them.  § 7422, in tandem with 28 U.S.C. § 1346(a)(1), waives sovereign immunity and allows taxpayers to recover payments of taxes, including interest and penalties, that are "erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws." 28 U.S.C. § 1346(a)(1).[3]  These statutes provide a post-deprivation remedy because the taxpayer must first pay the full amount of taxes owed

---

[3] The District Court opinion does not cite 28 U.S.C. § 1346(a)(1), only 26 U.S.C. § 7422. But while § 7422 sets out the rule that a taxpayer must first file an administrative refund claim with the IRS before filing suit, it is 28 U.S.C. § 1346(a)(1) that expressly grants the power to sue the United States for a tax refund.  *See generally, United States v. Williams,* 514 U.S. 527 (1995).

before filing suit against the United States in United States District Court or the Court of Federal Claims. *United States v. Williams,* 514 U.S. 527, 539 (1995). The statutory scheme provides for the taxpayer to challenge the basis of the original tax deficiency by paying the assessed taxes in full and then suing for refund, as an alternative to first bringing a pre-assessment and pre-payment petition challenging an IRS issued notice of deficiency in the United States Tax Court. *Flora v. United States*, 362 U.S. 145, 175 (1960).

In the instant case, the District Court ruled that the Jarrett's case was moot, after they filed their suit, the "United States authorized the Jarrett's refund, plus statutory interest." Op. R. 65, Page ID #734. The Jarretts, however, had rejected the refund check prior to the check's issuance. Op. R. 65, Page ID #734. It is unclear from the District Court opinion whether the DOJ determined a refund should issue or whether the IRS sought permission from the DOJ to issue the refund.

The United States' unilateral issuance of a refund check in this case poses a risk to effective resolution of tax controversies in refund suits and the exercise of taxpayers' rights under § 7422. First, there is no rule in the Sixth Circuit that automatically moots a refund suit because the United States unilaterally issues a refund check after the commencement of the suit. Second, neither the IRS nor the DOJ have any authority independent of a court order or approval by the taxpayer to issue a refund in the first place once a refund suit is filed. Third, allowing the United States to

unilaterally moot a case has a far-reaching impact on taxpayers' ability to bring unresolved issues before the courts and assert their rights.

Regarding taxpayers' abilities to assert their rights, there are various types of underlying litigation where the erroneous or wrongful collection of tax is capable of repetition and of continually abrogating future rights beyond the tax year at issue. Specifically, the Center will discuss Earned Income Tax Credit ("EITC") cases as an example of where a taxpayer's ongoing rights are linked to a correct ruling as to whether there was a true deficiency in the tax year at issue in the refund suit. Furthermore, a taxpayers' rights to attorneys' fees, in which the taxpayer must prove they are the "prevailing party," will be curtailed should the United States be able to moot a refund suit through a unilateral payment. Finally, the potential for the United States to use alternate theories for a refund, such as First Time Abate, will block taxpayers' ability to assert certain rights in the future.

## ARGUMENT

**I.    The United States' Unilateral Issuance of a Refund Does Not Automatically Moot a Refund Suit Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 in the Sixth Circuit.**

As a threshold matter, the Sixth Circuit does not have a rule that the United States' unilateral issuance of a refund automatically moots a refund suit brought under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422 before the issuance of the refund. The District Court writes that "[t]he weight of authority appears to favor the Government's position." Op. R. 65, Page ID #736. The Court's analysis also

4

concludes that when, as in the instant case, a unilateral refund covers all the tax years at issue in the suit, mootness applies because any new refund suit would necessarily involve a future tax year. According to the Court, that means the matter is not capable of repetition and is therefore outside any exception to the mootness doctrine. Op. R. 65, Page ID #741. The Court's conclusion is rooted in the position that recovery of the exact dollar amount for the exact tax year in the case is the only issue presented in a refund suit.

However, the sole Sixth Circuit opinion the Court cites, *Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204 (6th Cir. 1968), leaves open the possibility that mootness in a refund suit can be avoided in situations where the problematic collection of tax might be repeated or have a public importance. *Id.* at 205. The Court in *Drs. Hill & Thomas Co.* held that the taxpayer's dispute as to Treasury Regulation 301.7701-2's applicability to their tax filing status was moot because they received a refund while another pending case in the Sixth Circuit, not subject to mootness, "rais[ed] the identical issue . . . in progress." *Id.* As a result, there was no "probability of immediate repetition of the issue [nor unaddressed] public importance of a final decision." *Id.* at 204-05. The United States had tried to argue that "the case is moot since the suit for refund has only the objective of recovering money and it has tendered more than appellant sought." *Id.* at 205. The Sixth Circuit, however, acknowledged that there were "arguable grounds for avoidance of dismissal for mootness[:] probability of immediate repetition of the issue and the public importance

5

of the final decision." *Id.* Thus, the Sixth Circuit rejected the United States' assertion

that the recovery of money from the United States is the sole criteria to consider and

the refund thereof automatically moots a case before a District Court.

II.    **The IRS Does Not Retain Jurisdiction to Unilaterally Issue a Refund Once a Refund Suit is Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 and Has Commenced in a United States District Court or the Federal Court of Claims, nor does the DOJ Have Independent Authority to Authorize Such a Refund.**

Under 28 U.S.C. § 1346(a)(1), the district courts and the Court of Federal Claims

have original jurisdiction over claims for a refund of income tax made under 26 U.S.C.

§ 7422.  The IRS – whether pursuant to its own administrative procedures or by

instruction from the DOJ – cannot divest these courts of their refund jurisdiction by

issuing a refund check to the plaintiff who has exercised their right to review by an

independent tribunal.

Indeed, the DOJ is empowered to pursue settlements and make concessions once

a taxpayer files a claim in court.  U.S. Dept. of Just., Just. Manual §§ 6-6.100, 6-6.612

(2018); U.S. Dep't of Just., Settlement Reference Manual 9 (Tax Division, 2012); *see*

Fed. R. Civ. P. 68.  However, neither settlements nor concessions allow the

government to unilaterally end a case without the agreement of the plaintiff.  *See First*

*Fed. Savings & Loan Ass'n. v. United States*, 288 F. Supp. 477, 481-82 (W.D. Mo. 1968)

(denying a motion to dismiss for lack of subject matter jurisdiction after the

government attempted to tender a refund to the plaintiff, who refused, holding that

the refund tender on the eve of trial was a settlement offer than the plaintiff could

6

refuse to accept) *rev'd in part*, *C.I.R. v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 359 (1971) (overruling the Second Circuit's substantive decision, not the District Court's procedural decision to deny the motion to dismiss). If the government pursues a settlement offer, the plaintiff must be given an opportunity to reject the offer, and acceptance of the offer must be supplied to the court. Fed. R. Civ. P. 68. If the government offers a concession, it should only be made when the government has concluded "that the Government's case lacks any merit whatsoever." U.S. Dep't of Just., Settlement Reference Manual 9 (Tax Division, 2012). This suggests that concessions should only be made on the legal issues of the case, and not as an effort to avoid litigation on the legal issues presented. Additionally, the Justice Manual states that, for the department to make a concession, "the parties" must agree and sign a stipulation agreement. Otherwise, the United States Attorney's office should not send the IRS refund check until a signed stipulation is received. U.S. Dept. of Just., Just. Manual §§ 6-6.600, 6-6.622 (2018). From the facts in the instant case, there is no evidence to suggest that the DOJ made a settlement offer or issued the refund as part of a concession and no stipulation agreement exists, signed or unsigned; therefore, the refund does not fall under the statute or rules regulating either. The refund was issued to prevent the Court from hearing the case and to silence the plaintiff.

In addition to violating jurisdictional rules set by statute, the practice of mooting a case by issuing a refund to the plaintiff with the intent of evading litigation on the issues of the case renders meaningless the statutory rule that allows taxpayers to file a

refund claim with the district court or the Court of Federal Claims six months after filing an administrative claim for refund if the IRS has not yet responded. §6532(a)(1). If this Court allows the IRS, through the DOJ, to moot a case by issuing the full amount of the refund requested, the IRS will be permitted to litigate only what it chooses, as it will be empowered to avoid taking a position by failing to act on administrative claims for refund for at least six months (or longer), and then avoid litigation on the position by issuing the refund amount if and when the taxpayer files a suit for refund. This practice would allow the IRS to cherry-pick which issues it litigates and which taxpayers receive relief at the administrative level.

**III.     Allowing the United States to Moot a Refund Suit Brought Under 28 U.S.C. § 1346(1) and 26 U.S.C. § 7422 by Unilaterally Issuing a Refund Would Frustrate Taxpayers' Ability to Seek Effective Relief and Lead to the Ongoing Abrogation of Rights.**

Refund suits are an important tool for individual taxpayers to assert their rights to fair and effective tax administration and to hold the government accountable when it makes mistakes in tax collection. This is especially true in scenarios where a resolution of a refund suit on the merits will prevent continuing injustice. As the Ninth Circuit has pointed out, tax refund suits will not be mooted by payment of the refund sought if the case is "capable of repetition." *Catholic Answers Inc. v. United States*, 438 Fed.Appx. 640, 641 (9th Cir. 2009). Also, a final disposition in a refund suit leads to clarity of law and protects the taxpayer from a suit later brought by the United States to claw back money it paid as a unilateral refund untethered to a

settlement or judgment. *See e.g. Hotel Conquistador v. United States*, 597 2d. 1348, 1355 (Ct. Cl. 1979) (United States' payment of full refund while a motion to dismiss of a refund suit was pending did not moot case as the Court ruled, "a party who has sued the United States in this court in a tax case is entitled to a trial or, as here, a decision on dispositive motion, in this forum, unless the United States is willing to have judgment entered against it."). Conversely, making it harder to overcome mootness when the United States unilaterally issues a refund check will destabilize other procedural and substantive safeguards available to taxpayers, such as the rights to attorneys' fees or First Time Abate waivers. Given the complexities involved, it should be recognized that a tax refund suit is about more than just the dollar amount at stake.

Although the full payment rule may prevent many low- and middle-income taxpayers from filing refund suits, their ability to do so is not implausible and the consequences of restricted procedural rights is not inconsequential to these taxpayers. A common fact pattern may be as follows. A taxpayer is audited for claiming the EITC. He fails to adequately respond to the IRS' requests for proof that he is entitled to those credits, such as detailed documentation that his qualifying children are appropriately related to him. The IRS then issues a Notice of Deficiency pursuant to § 6212, giving him 90 days to file a petition in the United States Tax Court. If he does file a tax court petition, then without having paid any of the alleged liability, he can present his case on the merits as to why he was indeed entitled to those credits. If he

misses the 90 day window to file a tax court petition, the tax deficiency will be assessed and he will not have judicial review of the merits of his EITC claim unless he pays the full amount owed and then files an administrative refund claim with the IRS followed by a refund suit against the United States. *See* § 7422(a). Although he may not have the immediate means to pay the liability, if he is entitled to refunds in subsequent tax years, those refunds may be offset towards the year with the liability which may bring him up to full payment. He can then initiate an administrative refund claim followed by a refund suit to get those offset refund payments back.

## A. EITC Cases are an Example Where Wrongful Collection of Tax in the Tax Year at Issue Directly Restricts Rights in Future Tax Years and is Capable of Repetition.

The EITC is an anti-poverty provision of the Internal Revenue Code that has been in place since 1975. Margot L. Crandall-Hollick, Cong. Rsch. Serv., R44825, The Earned Income Tax Credit (EITC): Legislative History 1 (2022). It is a refundable credit that benefits low-income taxpayers who work, particularly those with qualifying child dependents. *See* § 32. For Tax Year 2021, 31 million taxpayers received approximately $64 billion in EITC claims, with an average credit of $2,043. *Statistics for Tax Returns with the Earned Income Tax Credit (EITC)*, IRS (Jan. 20, 2023), https://www.eitc.irs.gov/eitc-central/statistics-for-tax-returns-with-eitc/statistics-for-tax-returns-with-the-earned-income. The current EITC tables for Tax Year 2023 indicate that some families with three or more children might receive up to $7,430. *Earned Income and Earned Income Tax Credit (EITC) Tables*, IRS (Jan. 26, 2023),

https://www.irs.gov/credits-deductions/individuals/earned-income-tax-credit/earned-income-and-earned-income-tax-credit-eitc-tables#EITC%20Tables (follow "Tax Year 2023" drop down). These dollar amounts represent significant tools in poverty reduction. *See* National Taxpayer Advocate, Volume 1 – Annual Report to Congress 40 (2019) ("Often low-income taxpayers are waiting on their refunds to pay day-to-day living expenses such as rent, car repairs, or healthcare, and any delay can cause taxpayers significant hardship.") For example, a family receiving several thousand dollars in a refund generated by the EITC might be able to use that lump sum to catch up on back rent, avoiding an eviction. Another family might be able to use such an amount to resolve a medical or credit card debt. These types of scenarios show how the EITC can provide a safety net to avoid a spiral into deep poverty.

The EITC, however, is also a heavily audited credit. As the Congressional Research Service reported in June 2022, "[a]udit rates for EITC returns are disproportionately high compared to the share of taxpayers who claim the credit… These estimates are in line with trends over the past decade, where individual taxpayers claiming the EITC represent about 2 out of 10 individual taxpayers and about 4 out of every 10 individual audits." Margot L. Candall-Hollick, Cong. Rsch. Serv., IN11952, Audits of EITC Returns: By the Numbers 3 (2022). This high audit rate is ostensibly because the EITC has relatively high rates of improper claims. Improper claims result from a combination of abuse by some individuals and, in large

part, difficulty in complying with and understanding the complex requirements to obtain the credit.[4] That situation is exacerbated by the challenges many low-income taxpayers have in responding to the copious documentation requests that often accompany an audit, leading to their credit sometimes being incorrectly withheld from them. National Taxpayer Advocate, Volume 2 – Annual Report to Congress 95, 104 (2007) (showing through a study that 26.5% of taxpayers audited due to EITC did not know they were being audited and almost half of the audited taxpayers did not understand why the requested documents were needed).

   Although the IRS often audits EITC claims in advance of the payment by freezing the refund, a taxpayer may find themselves under audit up to three years after they claimed, and were paid, for the credit. § 6501(a). Even if the credit is disallowed prior to payment, the taxpayer may be assessed accuracy related penalties or assessment penalties under §§ 6662 and 6676 resulting in a higher tax liability. If the taxpayer misses their opportunity to challenge the case through a deficiency proceeding in the

---

[4] As the IRS has acknowledged: "A taxpayer may feel that the certification process is too complicated or burdensome and therefore decide not to claim the EITC. Alternatively, the information may confuse taxpayers who then conclude they are ineligible for the EITC when, in fact, they actually are eligible. In both instances, the certification process may inadvertently deter eligible taxpayers from claiming the EITC." Internal Revenue Service – IRS Earned Income Tax Credit (EITC) Initiatives: Report on Qualifying Child Residency Certification, Filing Status, and Automated Underreporter Tests (2008). Additionally, the National Taxpayer Advocate found that taxpayers who had a taxpayer advocate explain the relationship test requirement of EITC to them had greater EITC filing compliance for years following the interaction. National Taxpayer Advocate, Volume 1 – Annual Report to Congress 226 (2019).

Tax Court, they might later do so through a refund suit in a United States District Court or Court of Federal Claims pursuant to § 7422, just as the Jarretts did in the instant case involving cryptocurrency income.

In this scenario, if the United States can moot the EITC based refund suit with a unilateral payment for the dollar amount of taxes sought in the suit, it could avoid conceding or a ruling that the taxpayer was entitled to the EITC. This situation could in turn leave the taxpayer in jeopardy of losing their ongoing rights to claim the credit. It is also capable of repetitive harm in a situation where a ruling on the merits could allow a litigant to establish facts that will be the same from one year to the next.

First, a taxpayer might lose their ongoing right to claim the EITC because § 32(k) provides that taxpayers the IRS deems to have recklessly claimed the credit will be barred from claiming the credit for the next two tax years. If it decides the claim was fraudulent, then the bar is for ten years. Therefore, a judgment or settlement on the merits of a refund suit would be critical to protecting the taxpayer from this result. *See e.g., Knez v. Comm'r of Internal Revenue,* 114 T.C.M. (CCH) 444 (T.C. 2017) (holding that plaintiff, by fixing her incorrect filing status, could claim the EITC with her husband over IRS' objection and request that she be barred from doing so for two tax years).

Second, if a refund suit does not result in a settlement or judgment acknowledging the taxpayer's right to the EITC, then crucial facts needed as evidence to claim the credit may go unresolved, causing the IRS to deny the credit again and again in subsequent tax years. While eligibility for the EITC is determined separately for each

13

tax year, there are situations where a taxpayer's facts and circumstances relevant to eligibility do not change from year to year. A simple example stems from the hypothetical taxpayer described above, who is denied an EITC because the IRS disallowed his qualifying children. *See* Taxpayer described *supra* p. 9. The denied qualifying children may be his biological nephews. *See* § 152(c)(2). If evidence in his refund proves that relationship, then that fact becomes static, and should not be a basis in future years to deny the EITC. Therefore, a settlement or judgment in favor of the taxpayer can be used to establish eligibility in future years and avoid repetitive denial and litigation over the EITC claims.

### B. Mooting Refund Suits Through Unilateral Refund Payments Allows the Government to Avoid Attorneys' Fees.

A plaintiff has a right to attorneys' fees in tax controversies pursuant to § 7430, which states,

> [i]n any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and (2) reasonable litigation costs incurred in connection with such court proceedings.

§ 7430(a).

A prevailing party is "any party in a proceeding . . . (i) which—(I) has substantially prevailed with respect to the amount in controversy, or (II) *has substantially prevailed*

*with respect to the most significant issue or set of issues presented.*"  § 7430(c)(4)(A) (emphasis

added).  To become a prevailing party, the plaintiff must show a *direct* causal link

between the initiation of the lawsuit and the result secured – the lawsuit must have

played a "provocative role" in the result being achieved.  *Ruhland v. United States*, 839

F. Supp. 993, 997 (N.D.N.Y. 1993) (citing *Hendricks v. Bowen*, 847 F.2d 1255, 1258 (7th

Cir. 1988)).  However, a party is not a prevailing party if "the United States establishes

that the position of the United States in the proceeding was substantially justified."  §

7430(c)(4)(B). "Substantially justified" according to the Supreme Court means,

"justified to a degree that could satisfy a reasonable person. . . . [And with a]

reasonable basis both in law and in fact." *Ruhland*, 839 F. Supp. at 996 (citing *Pierce v.

Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541 (1988)).

　　Although mooting a case in which the taxpayer has received the requested refund

does not necessarily preclude recovering attorneys' fees, it does make proving certain

prongs much more difficult, if not impossible.  *See e.g., Id.*  Specifically difficult in the

example of *Ruhland v. United States* was the required causal connection between the

taxpayer's desired refund being paid to him and his initiation of the lawsuit.  *Id.* at 997.

The court stated that it could not "escape the conclusion that the instant lawsuit

played no role in plaintiff obtaining the relief he had sought…. The evidence indicates

that the refund was returned to plaintiff hassle-free soon after defendant was

informed of its mistake." *Id.*  The taxpayer was not a prevailing party because he

could not show that the outcome regarding his refund was causally connected to his

initiation of the lawsuit. *Id.* Thus, a plaintiff must prove a link between receiving the refund they sought and filing the lawsuit and not simply that the IRS was unreasonable in their initial denial of the refund.

A refund issued with no explanation in the middle of refund suit, such as what happened to the Jarretts in the instant case, creates a difficult burden for any taxpayers in search of attorneys' fees. Questions would immediately arise as to the motivation behind the refund. For example, did the United States order the IRS to issue a refund specifically to end the taxpayer's lawsuit? In that case, the taxpayer should be considered a prevailing party. Alternatively, did the refund issue because the IRS, during their internal investigation, determined that the taxpayer was entitled to the refund regardless of their refund suit, in which case the taxpayer is not a prevailing party? In either scenario, the taxpayer, who is not privy to the internal workings of the DOJ and the IRS, cannot determine with any certainty why they are being proffered a refund and what impact it will have on a motion for attorneys' fees.

   **C. Mooting Refund Suits Through Unilateral Refund Payments Allows the United States to Choose Alternate Theories, such as First Time Abate, for the Refund which May Abrogate a Taxpayer's Rights.**

The IRS may assess penalties against a taxpayer including penalties for failure to timely file, failure to timely pay, and failure to timely deposit tax due. IRM pt.

20.1.1.3.3.2.1(1)(a)-(c) (Oct. 19, 2020).[5]  For the foregoing penalties, the IRS may issue

penalty relief by administrative waiver, the most common of which is the First Time

Abate.  *Penalty Relief due to First Time Abate or Other Administrative Waiver*, IRS (Aug. 22,

2022), https://www.irs.gov/payments/penalty-relief-due-to-first-time-abate-or-other-

administrative-waiver (Hereintoafter, "*Penalty Relief due to First Time Abate*").  First

Time Abate is available to a taxpayer who is subject to one of these penalties and who

is currently, and has previously been, tax compliant.  *Id.*

There is concern that if the United States can moot a refund suit by unilaterally

authorizing the IRS to issue a refund, the IRS could administratively use First Time

Abate as a theory for the refund, at least regarding penalties and interest.  This would

cause the taxpayer to lose access to First Time Abate going forward.  That is because

current compliance requires that "[t]he taxpayer has filed, or filed a valid extension

for, all required returns currently due, and [t]he taxpayer has paid, or arranged to pay,

any tax currently due." IRM pt. 20.1.1.3.3.2.1(2)(a)-(b) (Oct. 19, 2020). Past

compliance requires that the taxpayer has filed the same return type for the three years

prior to the penalized tax year, if required to do so, and have had no penalties assessed

during the past three years or had the penalty removed for a reason *other than* First

---

[5] *See* § 6651(a)(1) (penalty assessed for failure to timely file an individual tax return), §
6651(a)(2) (penalty assessed for failure to pay the tax shown on the return by the due
date), § 6651(a)(3) (penalty assessed for failure to pay the tax shown on the notice or
demand for payment by the due date), 6656 (penalty assessed for failure to deposit the
correct amount of tax by the due date).

Time Abate.  *Penalty Relief due to First Time Abate.*  Thus, First Time Abate is only available or valid every four tax years.  *See Id.*  (stating that no First Time Abate has been given for three years prior to the tax year in which the taxpayer received the penalty).[6]

Preserving a right to First Time Abate can hold significant value and should not be given up lightly by a taxpayer.  *See e.g. Oosterwijk v. United States*, Civil Action No. CCB-21-1151, 2022 U.S. Dist. LEXIS 14984; 2022 WL 255348 (D. Md. Jan. 27, 2022) (the taxpayers were assessed $274, 634.73 in penalties for late filing and late payment but could not access First Time Abate because they had already been granted it for a $7 penalty in a prior tax year).  If a taxpayer brings a refund suit to recover penalties and interest that should not have been assessed in the first place, then a merits ruling or agreement on that underlying claim would preserve their First Time Abate right.  However, if the IRS is able to spontaneously issue the refund without any evaluation of the merits of the underlying refund suit, then it is possible it will do so under First

---

[6] This scheme makes First Time Abate waivers a valuable resource to taxpayers, a fact acknowledged by the Department of Treasury in I.R.S. Notice 2022-36, Penalty Relief for Certain Taxpayers Filing Returns for Taxable Years 2019 and 2022, IRB 188 (Sept. 6, 2022).  In that notice, the Treasury Department granted taxpayers automatic abatements but did not associate the abatements with First Time Abate waivers.  *Id.* Notice 2022-36 granted automatic abatement for certain failure to file penalties on returns for taxable years 2019 and 2020, *id.* § 3., noting that "the penalty relief [for failure to file penalties] will . . . provide relief to taxpayers affected by the COVID-19 pandemic," *id.* § 2.  Case law and common sense also illustrate the importance and value of a first-time abatement.

Time Abate, thus abrogating a future right. Preserving a taxpayer's First Time Abate right holds value, whether it be a small sum, or $274,634.73 as it was in the Oosterwijks case. *Oosterwijk*, 2022 U.S. Dist. LEXIS at 5.

## CONCLUSION

For these reasons, this Court should reject the lower Courts position that the instant case is moot because the United States unilaterally issued a refund check for the amount in controversy and order that the case be allowed to proceed on the merits.

Respectfully Submitted,

/S/ *Audrey Patten*
AUDREY PATTEN
Federal Tax Clinic
The Legal Services Center of Harvard Law School
122 Boylston Street
Jamaica Plain, Massachusetts 02130
(617) 390-2550
Fax: (617) 522-0715
apatten@law.harvard.edu

Dated: February 13, 2023

### Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.    This document complies with the type-volume limit of Fed. R. App. P. **29(a)(5) and 32(a)(7)(B)** because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

**X**    this document contains 5184 words, excluding the items exempted by Fed. R. App. P. 32(f) **or**

☐    this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

**X**    this document has been prepared in a proportionally spaced typeface using **Microsoft Word** in **Garamond size 14 font, or**

☐    this document has been prepared in a monospaced typeface using [*state name and version of word-processing program*] with [*state number of characters per inch and name of type style*].

(/s/    Audrey Patten

Attorney for _____ *Amicus Curiae,* Center for Taxpayer Rights

Dated:  February 13, 2023

## **Certificate of Service**

I hereby certify that this document was filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 13, 2023.

*/s/ Audrey Patten*

Attorney for _____ *Amicus Curiae,* Center for Taxpayer Rights ___

Dated:  February 13, 2023.