# No. 22-6023

## IN THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

JOSHUA JARRETT; JESSICA JARRETT,

Plaintiffs-Appellants

v.

UNITED STATES OF AMERICA,

Defendant-Appellee

---

## ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

---

## BRIEF FOR THE APPELLEE

---

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

JENNIFER M. RUBIN          (202) 307-0524
IVAN C. DALE               (202) 307-6615
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*

HENRY C. LEVENTIS
  *United States Attorney*

# TABLE OF CONTENTS

**Page**

Table of contents...............................................................................i
Table of authorities ...................................................................... iii
Glossary .........................................................................................xi
Statement regarding oral argument.............................................xii
Jurisdictional statement .................................................................1

    A.    District Court jurisdiction .........................................1

    B.    Appellate jurisdiction.................................................3

Statement of the issue....................................................................3
Statement of the case.....................................................................3

    A.    Brief procedural history.............................................3

    B.    Facts ...........................................................................4

    C.    Decision of the District Court....................................8

Summary of argument ...................................................................12
Argument:

    The District Court correctly held that this tax refund suit was moot once the refund claim was paid in full, and that it lacked jurisdiction to enjoin the IRS in future years ................................15

        Standard of review .................................................15

    A.    Applicable jurisdictional principles.......................16

        1.    Requirements in federal tax refund suits...................16

        2.    Requirement of a case or controversy ..........................20

**Page**

B.    The Jarretts' refund suit is moot because they have
       already received the refund for which they sued ................22

       1.    This Court and others have held that full payment
             of a tax refund moots a refund suit .............................22

       2.    *Campbell-Ewald* does not compel a different result ...26

C.    The "capable of repetition, yet evading review" exception
       to mootness does not apply ....................................................37

       1.    The Government's conduct is not "capable of
             repetition" here ...........................................................38

       2.    The controversy is not "evading review".....................42

D.    The Jarretts' claim for injunctive relief is barred by the
       Anti-Injunction Act ...............................................................45

Conclusion.................................................................................................53
Certificate of compliance ........................................................................54
Addendum .................................................................................................55

21954259.1

-iii-

# TABLE OF AUTHORITIES

**Cases:**                                                      **Page(s)**

*A. A. Allen Revivals, Inc. v. Campbell*,
    353 F.2d 89 (5th Cir. 1965) ................................................... 25

*Agility Network Servs., Inc. v. United States*,
    848 F.3d 790 (6th Cir. 2017) ................................................ 49

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ....................................... 20, 22, 27, 44, 46

*Alvarez v. Smith*,
    558 U.S. 87 (2009) ..................................................... 21-22, 27

*Bard v. Brown County, Ohio*,
    970 F.3d 738 (6th Cir. 2020) ............................................... 11

*Biodiversity Legal Found. v. Badgley*,
    309 F.3d 1166 (9th Cir. 2002) ............................................. 44

*Bob Jones Univ. v. Simon*,
    416 U.S. 725 (1974) ....................................... 42-43, 46-49, 51

*Bobby v. Bies*,
    556 U.S. 825 (2009) ....................................................... 33-34

*Campbell v. PMI Food Equip. Grp., Inc.*,
    509 F.3d 776 (6th Cir. 2007) ............................................... 37

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ............................................... 9, 13, 26-30

*Camreta v. Greene*,
    563 U.S. 692 (2011) ............................................................ 21

*Catholic Answers, Inc. v. United States*,
    438 Fed. App'x 640 (9th Cir. 2011) ..................................... 24

*Christian Coalition of Fla., Inc. v. United States*,
    662 F.3d 1182 (11th Cir. 2011) ................................. 24, 38, 42

*Church of Scientology of Cal. v. United States*,
    506 U.S. 9 (1992) ......................................................... 21, 33

*CIC Servs., LLC v. IRS*,
    141 S. Ct. 1582 (2021) ....................................................... 46

*Cohen v. United States*,
    650 F.3d 717 (D.C. Cir. 2011) ......................................... 47-48

21954259.1

**Cases (cont'd):**                                                      **Page(s)**

*Cole v. Commissioner,*
    73 A.F.T.R.2d 94-650, 15 F.3d 1084 (9th Cir. 1993) ............ 24
*Commissioner v. Sunnen,*
    333 U.S. 591 (1948) ........................................ 41-42
*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .......................................... 20
*Deposit Guar. Nat. Bank v. Roper,*
    445 U.S. 326 (1980) .......................................... 33
*Drs. Hill & Thomas Co. v. United States,*
    392 F.2d 204 (6th Cir. 1968) ............... 9, 24, 29-30, 33, 38-39
*In re DSC, Ltd.,*
    486 F.3d 940 (6th Cir. 2007) ................................. 15
*Enochs v. Williams Packing & Nav. Co.,*
    370 U.S. 1 (1962) ............................................ 46
*F.D.I.C. v. Meyer,*
    510 U.S. 471 (1994) .......................................... 17
*Favors v. Soc. Sec. Admin.,*
    No. 22-cv-262, 2022 WL 17370243
    (D.D.C. Oct. 17, 2022) ...................................... 36
*Fialka-Feldman v. Oakland Univ. Bd. of Trustees,*
    639 F.3d 711 (6th Cir. 2011) ............................... 31, 40
*Freeport-McMoRan, Inc. v. K N Energy, Inc.,*
    498 U.S. 426 (1991) .......................................... 50
*United States ex rel. Girard Tr. Co. v. Helvering,*
    301 U.S. 540 (1937) .......................................... 41
*GMRI, Inc. v. E.E.O.C.,*
    149 F.3d 449 (6th Cir. 1998) ................................. 36
*Granato v. Bane,*
    74 F.3d 406 (2d Cir. 1996) ................................... 44
*Greer v. Commissioner,*
    557 F.3d 688 (6th Cir. 2009) ................................. 35
*Haas v. United States,*
    83 A.F.T.R.2d 99-408 (Fed. Cl. 1999) ...................... 25, 32
*Hancock Cnty. Land Acquisitions, LLC v. United States,*
    No. 21-12508, 2022 WL 3449525 (11th Cir. 2022) ............... 49

21954259.1

**Cases (cont'd):** **Page(s)**

*Harrison v. Commissioner,*
854 F.2d 263 (7th Cir. 1988) ................................................. 32

*Humane Soc. of U.S. v. Clinton,*
236 F.3d 1320 (Fed. Cir. 2001) ............................................ 44

*Johnson v. Commissioner,*
972 F.3d 655 (5th Cir. 2020) ................................................ 32

*Jones v. Liberty Glass Co.,*
332 U.S. 524 (1947) ............................................................. 41

*King v. Burwell,*
759 F.3d 358 (4th Cir. 2014) ............................................... 47

*Koger v. United States,*
755 F.2d 1094 (4th Cir. 1985) ............................................. 43

*Lamb v. Commissioner,*
390 F.2d 157 (2d Cir. 1968) ................................................ 25

*Lawrence v. Blackwell,*
430 F.3d 368 (6th Cir. 2005) ........................................... 40-41

*Lewis v. Continental Bank Corp.,*
494 U.S. 472 (1990) ............................................................ 31

*Lewis v. Reynolds,*
284 U.S. 281 (1932) ............................................................ 41

*Little v. Bowers,*
134 U.S. 547 (1890) ....................................................... 27, 40

*Lohmann v. United States,*
154 Fed. Cl. 355 (2021) ...................................................... 29

*Los Angeles v. Lyons,*
461 U.S. 95 (1983) ......................................................... 21, 37

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ............................................................ 21

*McDonnell v. United States,*
180 F.3d 721 (6th Cir. 1999) ............................................... 18

*Memphis A. Philip Randolph Inst. v. Hargett,*
2 F.4th 548 (6th Cir. 2021) ........................................ 16, 38, 40

*Miklautsch v. Gibbs,*
71A A.F.T.R.2d 93-4621, 1990 WL 236045
(D. Alaska Nov. 6, 1990) ..................................................... 25

**Cases (cont'd):**                                                    **Page(s)**

*Mills v. Green,*
    159 U.S. 651 (1895) ............................................................. 21
*Mokdad v. Sessions,*
    876 F.3d 167 (6th Cir. 2017) ................................................ 22
*Mosley v. Hairston,*
    920 F.2d 409 (6th Cir. 1990) ................................................ 35
*Murphy v. Hunt,*
    455 U.S. 478 (1982) .............................................. 35, 37-39, 42
*Nat'l Fed'n of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012) ............................................................. 46
*Ne. Ohio Coal. for the Homeless v. Husted,*
    831 F.3d 686 (6th Cir. 2016) ................................................ 29
*North Carolina v. Rice,*
    404 U.S. 244 (1971) ............................................................. 20
*Estate of O'Neal v. United States,*
    72 A.F.T.R.2d 93-6719, 1993 WL 766477
    (N.D. Ala. June 2, 1993)....................................................... 25
*People of State of Calif. v. San Pablo & T.R. Co.,*
    149 U.S. 308 (1893) ....................................................... 27, 30
*Richlin v. Commissioner,*
    859 F. App'x 772 (9th Cir. 2021).......................................... 52
*RMI Titanium Co. v. Westinghouse Elec. Corp.,*
    78 F.3d 1125 (6th Cir. 1996) ................................................ 16
*Roberts v. United States,*
    28 A.F.T.R.2d 71-5885, 1971 WL 428
    (S.D. Tex. Oct. 20, 1971) ..................................................... 25
*Rothe Dev. Corp. v. Dep't of Defense,*
    413 F.3d 1327 (Fed. Cir. 2005) ............................................ 30
*Russell v. United States,*
    661 F.3d 1371 (Fed. Cir. 2011) .................................. 30-31, 36
*San Mateo Cnty v. S. Pac. R. Co.,*
    116 U.S. 138 (1885) ............................................................. 27
*Shanks v. United States,*
    112 A.F.T.R.2d 2013-5154, 2013 WL 5460040
    (M.D. Fla. June 10, 2013) .................................................... 25

-vii-

## Cases (cont'd): Page(s)

*Shnier v. United States,*
    151 Fed. Cl. 1 (2020) .............................................................. 52

*Sintow v. United States,*
    129 A.F.T.R.2d 2022-2030, 2022 WL 2047315
    (S.D. Fla. Jun. 7, 2022) ................................................... 25, 29

*South Carolina v. Regan,*
    465 U.S. 367 (1984) ................................................................ 51

*Speech First, Inc. v. Schlissel,*
    939 F.3d 756 (6th Cir. 2019) ................................................. 35

*Spencer v. Kemna,*
    523 U.S. 1 (1998) ................................................. 37, 42-43, 45

*Steel Co. v. Citizens for Better Env't,*
    523 U.S. 83 (1998) ................................................................ 30

*Stew Farm, Ltd. v. Nat. Res. Conservation Serv.,*
    767 F.3d 554 (6th Cir. 2014) ................................................. 16

*Tropf v. Fidelity Nat'l Title Ins. Co.,*
    289 F.3d 929 (6th Cir. 2002) ................................................. 15

*U.S. Parole Commission v. Geraghty,*
    445 U.S. 388 (1980) .............................................................. 20

*United States v. Dalm,*
    494 U.S. 596 (1990) ........................................................ 16-17

*United States v. Miller,*
    737 F. Supp. 508 (N.D. Ind. 1990) ....................................... 37

*United States v. Nordic Village, Inc.,*
    503 U.S. 30 (1992) ................................................................ 17

*Your Ins. Needs Agency Inc. v. United States,*
    274 F.3d 1001 (5th Cir. 2001) ............................................... 31

## Statutes:

5 U.S.C.:
    § 551 *et seq.* ........................................................................ 47
    § 552 ...................................................................................... 36

21954259.1

**Statutes (cont'd):**                                                    **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 6015(e)...................................................................19
§ 6212(a)...................................................................19
§ 6213(a)..............................................................19, 43
§ 6232(c)...................................................................19
§ 6330(e)(1)................................................................19
§ 6331(i)...................................................................19
§ 6402(a)................................................................9, 30
§ 6511(a)................................................................1, 18
§ 6511(b)(2)................................................................18
§ 6532(a)(1)-(2)............................................................18
§ 6532(a)(1).........................................................2, 18, 22
§ 6532(b)...................................................................34
§ 6611......................................................................7
§ 6611(a)..............................................................30, 32
§ 6611(b)(2)................................................................30
§ 6621......................................................................7
§ 6672(c)...................................................................19
§ 6694(c)...................................................................19
§ 7122(a)...................................................................34
§ 7401......................................................................34
§ 7405......................................................................34
§ 7421(a) ....................................10, 12, 15, 19, 45-46, 48, 50
§ 7422...............................................................2, 10, 22
§ 7422(a) .................................................17-18, 22-23, 47-48
§ 7426(a),(b)(1)............................................................19
§ 7428......................................................................19
§ 7429(b)...................................................................19
§ 7430(a)...................................................................32
§ 7430(c)(4)(B).............................................................32
§ 7436......................................................................19
§ 7803(a)(3)(D)...........................................................51-52

21954259.1

**Statutes (cont'd):**                                                    **Page(s)**

28 U.S.C.:
  § 1291 ............................................................................. 3
  § 1346(a)(1) ............................................... 2, 12, 17, 22-23, 51
  § 2107(b)(1) ..................................................................... 3
  § 2201(a) ................................................................... 10, 19

31 U.S.C.:
  § 3334(a) ........................................................................ 31

47 U.S.C.:
  § 227(b)(1)(A) ................................................................ 26

U.S. Const. art. III, § 2, cl. 1 ............................................ 20

**Regulations and Regulatory Materials:**

Treasury Regulations (26 C.F.R.):
  § 301.6402-2(b)(1) ......................................................... 18
  § 301.6402-3(a)(2) ......................................................... 28

28 C.F.R.:
  § 0.164 ........................................................................... 33
  § 0.168 ........................................................................... 33
  Pt. 0, Subpt. Y, App. (Tax Div. Dir. 139) ........................... 33

Internal Revenue Manual:
  § 21.3.1.6.24 ................................................................. 31
  § 21.4.2.4.7 ................................................................... 31

**Rules:**

Federal Rules of Appellate Procedure:
  Rule 4(a)(1)(B) ............................................................... 3

Fed. R. Civ. P.:
  Rule 54(a) ........................................................................ 3
  Rule 68 .................................................................. 9, 26, 33

21954259.1

**Miscellaneous:**                                                               **Page(s)**

15 *Mertens Law of Fed. Income Tax'n* § 58A:14
      (March 2023 Update) ..............................................................23

Gerald A. Kafka & Rita A. Cavanagh, *Litigation of Fed.*
      *Civil Tax Controversies* ¶ 22.03[1] (Nov. 2021) ....................34

"New IRS Feature allows Taxpayers Electronically Filing
Amended Returns to Choose Direct Deposit to Speed Refunds," *at*
https://www.irs.gov/newsroom/new-irs-feature-allows-taxpayers-
electronically-filing-amended-returns-to-choose-direct-deposit-to-
speed-refunds (last accessed Mar. 29, 2023)..................................29

Restatement (Second) of Judgments § 27 cmt. e (1982) ................34

"Returns Filed, Taxes Collected & Refunds Issued," *at*
https://www.irs.gov/statistics/returns-filed-taxes-collected-and-
refunds-issued (last accessed Mar. 20, 2023)..................................28

U.S. Dep't of Just., Just. Manual:
   § 4-3.200 ......................................................................................33
   § 6-6.120 ......................................................................................33

# GLOSSARY

| Term | Definition |
| --- | --- |
| Act | Anti-Injunction Act (I.R.C. § 7421(a)) |
| Am. | Amicus Curiae Brief of the Center for Taxpayer Rights |
| Am. compl. | Amended complaint |
| Br. | Appellant's opening brief |
| Code | Internal Revenue Code (26 U.S.C.) |
| Compl. | Complaint |
| Decl. | Declaration |
| FY | Fiscal year |
| I.R.C. | Internal Revenue Code (26 U.S.C.) |
| IRM | Internal Revenue Manual |
| IRS | Internal Revenue Service |
| Mem. op. | Memorandum opinion (RE 65) |
| Mot. | Motion |
| RE | Record entry number, as numbered by the Clerk of the District Court |
| Treas. Reg. | Treasury Regulation (26 C.F.R.) |

-xii-

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for the Commissioner submit that oral argument would be helpful to the Court in understanding the practical and legal effects of the issuance of a tax refund while a lawsuit for that refund is pending, both generally and in this case particularly.

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

### No. 22-6023

### JOSHUA JARRETT; JESSICA JARRETT,

**Plaintiffs-Appellants**

### v.

### UNITED STATES OF AMERICA,

**Defendant-Appellee**

———————————

## ON APPEAL FROM THE ORDER OF THE
## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

———————————

## BRIEF FOR THE APPELLEE

———————————

## JURISDICTIONAL STATEMENT

### A.    District Court jurisdiction

In 2020, appellants Joshua and Jessica Jarrett filed with the

Internal Revenue Service ("IRS") an administrative claim for refund of

income taxes for tax year 2019 in the amount of $3,793, plus statutory

interest on overpayments.  (Jarrett decl., RE 51-1, PageID # 651; Am.

compl., RE 61, PageID # 724.)  The claim was timely.  I.R.C. § 6511(a).

On May 26, 2021, with no decision rendered by the IRS, the Jarretts

15256052.1

timely filed suit in the United States District Court for the Middle District of Tennessee to recover the amount of the claimed refund. (Compl., RE 1, PageID # 1, 5, 7; Answer, RE25, PageID # 64.)  I.R.C. § 6532(a)(1).  At the time that the complaint was filed, the District Court had jurisdiction over the case under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. ("I.R.C." or the "Code") § 7422.

But during the pendency of the suit, the Government allowed the Jarretts' refund claim and sent them a Treasury check in the full amount sought by the Jarretts:  $3,793, plus statutory interest. (McMonagle decl., RE 41-1, PageID # 116.)  The Jarretts then amended their complaint to request a permanent injunction preventing the IRS from treating the receipt of certain cryptocurrency as income in future years.  (Am. compl., RE 61, PageID # 727; Order granting mot. to amend, RE 60, PageID # 719.)

As explained below, the District Court correctly determined that it lacked jurisdiction over the Jarretts' refund suit once they had recovered the refund requested in the complaint.  The court also correctly held that it lacked jurisdiction to award the requested prospective relief.  (Mem. op., RE 65, PageID # 738-39.)

### B.    Appellate jurisdiction

The District Court, on September 30, 2022, entered an order dismissing the case for lack of jurisdiction.  (Order, RE 66, PageID # 743.)  The order constituted a final judgment, *see* Fed. R. Civ. P. 54(a), and disposed of all claims of all parties.  On November 21, 2022, the Jarretts timely appealed.  *See* 28 U.S.C. § 2107(b)(1); Fed. R. App. P. 4(a)(1)(B).  (Notice of appeal, RE 67, PageID # 744.)  This court has jurisdiction to decide the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

1.    Whether the District Court had jurisdiction over this action for the recovery of a tax refund after the requested refund was paid in full.

2.    Whether, after the refund claim was paid, the District Court retained jurisdiction to enjoin the IRS from treating as income certain of the Jarretts' earnings in future years.

## STATEMENT OF THE CASE

### A.    Brief procedural history

The Jarretts filed a claim with the IRS for refund of $3,793 in income taxes paid for tax year 2019.  (Compl., RE 1, PageID # 5, 7; Answer, RE 25, PageID # 64.)   When they did not receive any decision

from the IRS within six months of filing the claim, the Jarretts sued to

recover the amount of the claimed refund.  (Jarrett decl., RE 51-1,

PageID # 651.)  While the suit was pending, the Government allowed

the refund claim, scheduled an overpayment in the amount of the

claimed refund, and refunded that amount by mailing the Jarretts a

check which included overpayment interest accruing by operation of

law.  (McMonagle decl., RE 41-1, PageID # 116; Forst decl., Ex. A, RE

51-3, PageID # 657.)  The Government then moved to dismiss this

refund suit as moot.  (Mot. to dismiss, RE 41, Page ID # 114.)  The

Jarretts opposed the motion and obtained leave to amend their

complaint to add a request for injunctive relief.  (Order granting mot. to

amend, RE 60, Page ID # 718-19; Am. compl., RE 61, Page ID # 727.)

The District Court (Hon. William L. Campbell, Jr.) granted the motion

to dismiss and entered judgment accordingly.  (Mem. op., RE 65, Page

ID # 742; Order, RE 66, Page ID # 743.)  This appeal followed.

## B.    Facts

Joshua Jarrett owned a kind of cryptocurrency, or virtual

currency, called "Tezos."  (Am. compl., RE 61, PageID # 720-21.)

According to Mr. Jarrett, in 2019, he received 8,876 new units, or

-5-

"tokens," of Tezos cryptocurrency.  (Jarrett decl., RE 51-1, Page ID
# 651; Am. compl., RE 61, PageID # 721.)  The Jarretts timely filed a
2019 federal income tax return which reported the 8,876 Tezos tokens
as income, valued at $9,407.  (Am. compl., RE 61, PageID # 724.)  The
inclusion of the value of the Tezos tokens increased their 2019 federal
tax bill by $3,793 (considering both the additional tax and the loss of
certain credits), which they paid in full.  (Am. compl., RE 61, PageID
# 722, 724.)

The Jarretts averred that Mr. Jarrett earned Tezos tokens
through a "proof-of-stake" process by which users validate
cryptocurrency transactions in the "blockchain," a sort of decentralized
ledger maintained publicly across a network of computers with no
common owner.  (Am. compl., RE 61, PageID # 720-21.)  As blocks of
transactions are added to the blockchain, new tokens are created, to the
benefit of those who have used their computing capacity and staked
their Tezos holdings to validate the transactions.  (Am. compl., RE 61,
PageID # 720-21.)  The Jarretts claim that this process of earning Tezos
tokens did not generate "income" for federal income tax purposes, but

instead resulted in self-created property, which is not taxable until it is sold or exchanged.  (Am. compl., RE 61, PageID # 721-22.)

As a result, after filing their 2019 income tax return, the Jarretts filed with the IRS a claim for refund of the amount of income tax paid ($3,793) which was attributable to the Tezos tokens previously included in the income reported on the 2019 return.  (Jarrett decl., RE 51-1, PageID # 651.)   When at least six months elapsed with no IRS decision on their refund claim, the Jarretts commenced this action to recover the amount of the claimed refund, plus statutory interest.  (Compl., RE 1, PageID # 5, 7; Answer, RE 25, PageID # 64.)

Approximately seven months after the Jarretts' complaint was filed, the Government mailed the Jarretts' counsel a letter advising that "a full refund of $3,793, plus statutory interest . . . has been approved on behalf of the Attorney General."  (Forst decl. Ex. A, RE 51-3, PageID # 657.)  The IRS was thus "authorized and directed to schedule an overpayment of $3,793, plus statutory interest as provided by law for the 2019 tax year."  (Forst decl. Ex. A, RE 51-3, PageID # 657.)  On January 28, 2022, the IRS issued a refund check to the Jarretts in the amount of $4,001.83, consisting of (1) the $3,793 overpayment, plus

(2) $208.83 in interest accruing on the overpayment pursuant to I.R.C.

§§ 6611 and 6621.  (McMonagle decl., RE 41-1, PageID # 116.)  That

check was mailed to the Jarretts' counsel on February 14, 2022, with an

IRS "Notice of Adjustment" which stated that the check was "made in

accordance with the concession authorized" in the case.   (McMonagle

decl., RE 41-1, PageID # 116; Forst decl., RE 51-2, PageID # 654.)

   Although the Jarretts did not dispute that the refund check

represented full payment of the amount they were owed, Mr. Jarrett

represented to the District Court that he "ha[s] not cashed, and do[es]

not intend to cash" the check.  (Jarrett decl., RE 51-1, Page ID # 652.)

Mr. Jarrett stated that "in every year since" 2019, he has continued

with his "staking" enterprise, and "did not have any deductions, losses,

or other items that would prevent my reporting of another

overpayment" for 2020 and 2021.  (Jarrett decl., RE 51-1, Page ID

# 652.)  He directed his counsel to "reject the proffered refund and

continue to seek a judicial determination and any further relief sought

through my lawsuit."  (Jarrett decl., RE 51-1, Page ID # 652.)

   The Government moved to dismiss the complaint as moot,

"because the United States has fully refunded the federal income taxes

and statutory interest demanded in the Complaint." (Mot. to dismiss, RE 41, Page ID # 114.)  The Jarretts opposed the motion and sought leave to amend their complaint to "clarify" that, in addition to a refund, "they seek injunctive and declaratory relief," and to "add supporting factual allegations." (Mot. to modify sched. order & amend compl., RE 55, Page ID # 676.)  The Magistrate Judge (Hon. Alistair E. Newbern) granted the motion to amend because the Government's arguments in opposition to the motion to amend were intertwined with those in the Government's motion to dismiss. (Order granting mot. to amend, RE 60, Page ID # 718-19.)  In the prayer for relief in their amended complaint, the Jarretts added a request for a "permanent injunction against the Internal Revenue Service, preventing it from treating tokens created by the Jarretts as income." (Am. compl., RE 61, Page ID # 727; *compare* Compl., RE 1, Page ID # 7.)  To avoid re-briefing the motion to dismiss, the parties agreed that it should apply to the amended complaint. (Stip. re mot. to dismiss, RE 62, PageID # 729.)

### C.    Decision of the District Court

The District Court granted the Government's motion to dismiss, agreeing that, once the refund sought in the complaint was paid to the

Jarretts, there was no longer any case and controversy for the court to resolve.  (Mem. op., RE 65, PageID # 736.)  The District Court cited six decisions, including one by this Court, *Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204 (6th Cir. 1968), which "concluded that the Government's tender of full payment of a refund moots the refund claim."  (Mem. op., RE 65, PageID # 736.)  The court rejected the Jarretts' argument that their claim was still justiciable because they declined to cash the refund check.  (Mem. op., RE 65, PageID # 737.)  In particular, the District Court ruled that the Jarretts' reliance on *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), which held that an unaccepted offer of judgment under Fed. R. Civ. P. 68 does not render a case moot, was "misplaced" because, "[h]ere, the United Sates has not made an offer of judgment or any other kind of offer."  (Mem. op., RE 65, PageID # 737.)  Rather, the court observed, the IRS simply issued a refund upon determination of an overpayment, as I.R.C. § 6402(a) required.  (Mem. op., RE 65, PageID # 738.)

The District Court disagreed with the Jarretts' assertion that, even if their refund claim was moot, they could still "obtain prospective relief under the refund statute."  (Mem. op., RE 65, PageID # 738.)  The

court noted that the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and the Anti-Injunction Act, I.R.C. § 7421(a), "appear to foreclose forward-looking relief."  (Mem. op., RE 65, PageID # 738.)  Moreover, the court explained that the Jarretts' claim, "a civil action for a refund under [I.R.C.] § 7422, is necessarily backward-looking," as it only permits "the recovery of any internal revenue tax alleged to have been erroneously assessed or collected."  (Mem. op., RE 65, PageID # 738.)  Thus, the court concluded, "[e]ven if prospective relief were available in the context of a refund suit, there is nothing to suggest that [the Jarretts] could proceed with an action involving *only* prospective relief."  (Mem. op., RE 65, PageID # 738 (emphasis in original).)

The court then held that this case did not fall within the "voluntary cessation" or "capable of repetition yet evading review" exceptions to mootness.  The "voluntary cessation" exception did not apply because the refund of a claimed overpayment is not "voluntary cessation of conduct" and, in any event, there was no reasonable expectation that the purported "conduct" of not paying a refund claim

filed by the Jarretts would recur.[1]  (Mem. op., RE 65, PageID # 740.)
The "capable of repetition" exception did not apply because adverse tax
determinations are not "too short to be fully litigated" and the
controversy in issue—whether the Jarretts were entitled to a refund of
taxes paid for 2019—was "not capable of repetition as any subsequent
claim for refund would necessarily apply to a different tax year." (Mem.
op., RE 65, PageID # 741.)

Finally, the District Court was not persuaded that the "public
importance" of an advisory opinion on whether tokens created through
"staking" are taxable income provided an exception to mootness.  (Mem.
op., RE 65, PageID # 742.)  The court thus dismissed the case for lack of
jurisdiction, concluding that it "does not provide advisory opinions,"
however important they may be to the parties or to the public.  (Mem.
op., RE 65, PageID # 742; Order, RE 66, Page ID # 743.)

---

[1] The Jarretts have not challenged in their opening brief the
District Court's conclusion (Mem. op., RE 65, PageID # 740) that the
"voluntary cessation" exception to mootness is inapplicable.  As a result,
the Jarretts have forfeited any challenge to that aspect of the District
Court's ruling.  *See*, *e.g.*, *Bard v. Brown County, Ohio*, 970 F.3d 738, 751
(6th Cir. 2020).

## SUMMARY OF ARGUMENT

The Jarretts sued for a refund of taxes that they paid on cryptocurrency which they received in 2019. The Government granted them that refund. But the Jarretts seek to continue the litigation, either to obtain an advisory opinion stating that they are entitled to the refund that they already received, or to obtain injunctive relief— belatedly requested in an amended complaint—for future years. The District Court correctly held, however, that the Jarretts' refund claim was moot, that their claim was not saved by an exception to mootness, and that the Anti-Injunction Act, I.R.C. § 7421(a), bars their claim for injunctive relief.

1.     Article III of the Constitution grants the judiciary the power to resolve "cases" and "controversies." A case becomes moot, and therefore not justiciable for Article III purposes, where there is no longer an actual controversy concerning the plaintiff's particular legal rights. In this case, the Jarretts sued, under 28 U.S.C. § 1346(a)(1), for the "recovery" of income taxes attributable to cryptocurrency that they earned in 2019, on the grounds that the taxes were "erroneously assessed or collected." But they have since recovered the disputed

taxes. The IRS adjusted their account to reflect an overpayment, and paid the Jarretts the full amount of their claim, plus statutory interest. Five circuits—including this one—have held that where, as here, the Government concedes a plaintiff's entitlement to a tax overpayment and grants a refund of the amount of the refund claim, the plaintiff's refund suit is moot.

The Supreme Court's decision in *Campbell-Ewald* does not compel a different result. That case involved a rejected offer to pay a named plaintiff's claims in order to moot a class action. The refund that the Jarretts received was not an offer to resolve their refund claim—it was a full resolution of that claim. The Court in *Campbell-Ewald* reserved the question presented here: whether actual payment of a claim moots a suit for the recovery of the claimed amount. But four justices answered the question reserved by the majority, stating expressly that tendering full payment moots a plaintiff's individual claims.

The Jarretts obtained all the relief to which they are entitled, rendering their refund claim moot. They cannot keep the case alive by refusing to cash the refund check that they received. They are not entitled a judgment that the Government owes them money after the

Government adjusted their account and issued payment of the amount they say they are owed.  Any such judgment would not provide the Jarretts with any meaningful relief, because the Government has already conceded the overpayment and paid the refund.  The Jarretts' professed concern that the Government (despite expressly denying any such intent) might turn around and sue to recover the refund paid is pretextual, an effort to manufacture controversy where there is none.  Any examination into the Jarretts' 2019 tax year is now closed.

2.    Nor does this case fall within the "capable of repetition, yet evading review" exception to mootness.  There is not a reasonable expectation that the Jarretts will be subject to the same action again, because each tax year is the origin of a new liability and of a separate cause of action.  And tax disputes are not too short to be fully litigated prior to cessation or expiration; if a dispute concerning the taxation of their cryptocurrency were to occur in future years, the Jarretts would again have recourse to the mechanisms designed by Congress to review such disputes, including both the availability of pre-payment review in the Tax Court and the ability to request a refund in a district court.

3.      Finally, the Jarretts are not entitled to an injunction barring the IRS from including their cryptocurrency in income in future years. The Anti-Injunction Act, I.R.C. § 7421(a), plainly prohibits such relief, providing that "no suit for the purpose of restraining the assessment or collection of *any* tax shall be maintained in *any* court by *any* person." (Emphasis added.)  There is no authority for such injunctive relief being granted in the context of a refund lawsuit, and numerous cases have specifically refused to consider claims for prospective relief after a refund claim has been mooted.  The District Court thus correctly held that it lacked jurisdiction to grant this form of relief.

The judgment of the District Court dismissing this case for lack of jurisdiction is correct and should be affirmed.

## ARGUMENT

**The District Court correctly held that this tax refund suit was moot once the refund claim was paid in full, and that it lacked jurisdiction to enjoin the IRS in future years**

### Standard of review

Generally, appellate courts review the issue of mootness *de novo*. *In re DSC, Ltd.*, 486 F.3d 940, 944 (6th Cir. 2007).  A district court's conclusions of law regarding mootness are reviewed *de novo*.  *Tropf v.*

*Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936 (6th Cir. 2002).  A "facial"

challenge—based solely on the allegations of the complaint—is reviewed

*de novo*, but if a "ruling on jurisdiction is based in part on the resolution

of factual disputes, a reviewing court must accept the district court's

factual findings unless they are clearly erroneous." *RMI Titanium Co.*

*v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

The burden is on the plaintiff to demonstrate that the court has

jurisdiction.  *E.g.*, *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767

F.3d 554, 559 (6th Cir. 2014).  Once the litigation has commenced, the

"heavy burden" of demonstrating that a claim is moot rests on the party

claiming mootness.  *Memphis A. Philip Randolph Inst. v. Hargett*,

2 F.4th 548, 558 (6th Cir. 2021).  The burden of proving that an

exception to mootness applies is on the party asserting the exception.

*Id.* at 559.

## A.   Applicable jurisdictional principles

### 1.   Requirements in federal tax refund suits

"Under settled principles of sovereign immunity," the United

States, as sovereign, is immune from suit without its consent.  *United*

*States v. Dalm*, 494 U.S. 596, 608 (1990).  To be effective, waivers of the

Government's sovereign immunity must be "unequivocally expressed," and are to be "construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992) (internal quotation marks and citations omitted). Sovereign immunity is "jurisdictional in nature," and the terms and conditions of the Government's consent to be sued in any court "define that court's jurisdiction to entertain the suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (internal quotation marks and citations omitted).

The Jarretts point to 28 U.S.C. § 1346(a)(1) as the source of the District Court's jurisdiction. (Am. compl., RE 61, Page ID # 722.) That section provides that the district courts have jurisdiction of:

> [a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

Congress imposed stringent requirements, however, before a taxpayer may maintain any suit for the recovery of "taxes that were erroneously assessed." (Am. compl., RE 61, Page ID # 722.) *See Dalm*, 494 U.S. at 601. Specifically, I.R.C. § 7422(a) provides that "[n]o suit or proceeding shall be maintained in any court for the recovery of any internal

-18-

revenue tax alleged to have been erroneously or illegally assessed or collected . . . until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

The "provisions of law" and "regulations," I.R.C. § 7422(a), governing the required refund claim include a requirement that the claim "set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof."  Treas. Reg. (26 C.F.R.) § 301.6402-2(b)(1); *see McDonnell v. United States*, 180 F.3d 721, 722 (6th Cir. 1999).  Also included are timing requirements:  the claim must be filed within a limitations period, I.R.C. § 6511(a), and there are time limits on the amount that may be recovered, I.R.C. § 6511(b)(2).  And a taxpayer may not bring a suit to recover the amount claimed until the IRS renders a decision on the claim, or if the IRS fails to act, until at least six months have passed since the claim was filed.  I.R.C. § 6532(a)(1).  Unless the IRS agrees otherwise, any such suit must be brought within 2 years after a claim is disallowed.  I.R.C. § 6532(a)(1)-(2).

Two other statutes further restrict what may be litigated in a case involving federal taxes. The Anti-Injunction Act, I.R.C. § 7421(a), states that, except as provided in 11 discrete sections of the Code, none of which are applicable here,[2] "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person[.]" And the Declaratory Judgment Act, 28 U.S.C. § 2201(a) permits the federal courts, in "a case of actual controversy" to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought." But it includes an exception: declaratory relief is not authorized "with respect to Federal taxes other than actions brought under section 7428" of the Code (involving classification of tax-exempt organizations and private foundations), certain bankruptcy court proceedings to determine tax liabilities or the

---

[2] The only Code sections under which a "suit for the purpose of restraining the assessment or collection of tax," I.R.C. § 7421(a), is permitted are: § 6015(e) (innocent spouse cases); §§ 6212(a),(c) and 6213(a) (pendency of deficiency proceedings); § 6232(c) (underpayments imputed to partners in a partnership); § 6330(e)(1) ("collection due process" hearings); § 6331(i) ("divisible" taxes); § 6672(c) (challenges to "trust fund" liabilities where a bond is posted); § 6694(c) (return preparer penalties); § 7426(a),(b)(1) (wrongful levies); § 7429(b) (challenges to jeopardy assessments and levies); and § 7436 (determinations of employment status).

tax effects of a reorganization plan, and trade cases involving antidumping or countervailing tariffs.

### 2.    Requirement of a case or controversy

The Constitution grants the judiciary the power to resolve "cases" and "controversies."  U.S. Const. art. III, § 2, cl. 1.  "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).  Rather, the federal courts are limited to resolving disputes that are "definite and concrete, touching the legal relations of parties having adverse legal interests," and "admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (internal citations and quotation marks omitted).

The case-or-controversy requirement means that the court's authority to adjudicate legal disputes depends upon the litigants each having a "personal stake" in the suit.  *U.S. Parole Commission v.*

*Geraghty*, 445 U.S. 388, 396 (1980).  The party invoking the court's jurisdiction must show that he has standing to sue, *i.e.*, that he "suffered an injury in fact" that is caused by "the conduct complained of" and that "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotation marks omitted).  "And the opposing party also must have an ongoing interest in the dispute, so that the case features 'that concrete adverseness which sharpens the presentation of issues.' " *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).

It is not enough, moreover, that there be a controversy at the time the complaint is filed.  "An actual controversy must be extant at all stages of review[.]" *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (internal quotation marks and citations omitted).  A case becomes moot, and therefore not a case or controversy for Article III purposes, when interim events make it "impossible for the court to grant 'any effectual relief whatever' to a prevailing party," *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  In such a case the "[p]arties lack a legally cognizable

interest in a case's outcome." *Mokdad v. Sessions*, 876 F.3d 167, 169 (6th Cir. 2017) (internal quotation marks and citations omitted). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit," the case is moot in the absence of an actual controversy concerning " 'the plaintiffs' particular legal rights.' " *Already*, 568 U.S. at 91 (quoting *Alvarez*, 558 U.S. at 93).

### B. The Jarretts' refund suit is moot because they have already received the refund for which they sued

#### 1. This Court and others have held that full payment of a tax refund moots a refund suit

As noted above, 28 U.S.C. § 1346(a)(1) and I.R.C. § 7422—which are the sole source of jurisdiction and waiver of sovereign immunity upon which the Jarretts rely (Am. compl., RE 61, Page ID # 722)—grant the district courts jurisdiction over a suit "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected," 28 U.S.C. § 1346(a)(1), so long as the IRS denies or fails to act upon an administrative "claim for refund or credit," I.R.C. § 7422(a); *see id.* § 6532(a)(1). In this case, however, the Jarretts have already recovered "the disputed federal income taxes that were erroneously assessed." (Am. compl., RE 61, PageID # 722.) The IRS

paid the Jarretts $3,793, plus statutory interest, to fully refund the disputed federal income taxes that the Jarretts paid in connection with the cryptocurrency that they earned in 2019—which is the full amount they asked for in their refund claim.  (McMonagle decl., RE 41-1, PageID # 116.)  As a result, there is no longer any "erroneously or illegally assessed" income tax left for the Jarretts to "recover."  28 U.S.C. § 1346(a)(1); I.R.C. § 7422(a).

For the Jarretts, recovery is no longer enough.  They want a court to declare *why* they are entitled to recovery, by answering a hypothetical question—whether Tezos "cryptocurrency tokens are taxable when they are created or when they are sold" (Br. 4)—and to enter a permanent injunction preventing the IRS from ever "treating tokens created by the Jarretts as income."  (Am. compl., RE 61, PageID # 727.)  Under these circumstances, however, the courts have overwhelmingly held that the taxpayer whose refund claim has been paid no longer has a viable cause of action against the federal government.  "The absence of a live refund dispute renders a case moot; once a refund has been paid, courts lack jurisdiction to entertain a suit containing solely forward-looking claims."  15 *Mertens Law of Fed.*

*Income Tax'n* § 58A:14 (March 2023 Update); *see, e.g., Cole v. Commissioner*, 73 A.F.T.R.2d 94-650, 15 F.3d 1084 (9th Cir. 1993) (Table) ("In a refund suit, if the government concedes a plaintiff's entitlement to money paid to or collected by the government and grants a refund for the amount, there is no further money to be paid and the plaintiff's action is moot.").

In *Drs. Hill*, 392 F.2d at 204-05, for instance, the taxpayer challenged the validity of a Treasury regulation requiring it to be taxed as a partnership, rather than a corporation, but this Court held that the case was properly dismissed, as moot, where the IRS tendered more than the taxpayer had sought in its refund claim. In *Christian Coalition of Fla., Inc. v. United States*, 662 F.3d 1182, 1194 (11th Cir. 2011), the taxpayer sought declaratory and injunctive relief confirming its tax-exempt status (as well as a declaration that a statute and its implementing regulation are unconstitutional), but the Eleventh Circuit held that the "suit was rendered moot upon the full refund of taxes by the IRS." In *Catholic Answers, Inc. v. United States*, 438 Fed. App'x 640, 641 (9th Cir. 2011), a tax-exempt nonprofit sought a ruling that it did not make political expenditures and that excise taxes should not

have been collected; the Ninth Circuit held that, because the IRS had issued a refund and abated the taxes, "[t]his suit is moot.  There is no relief that this court could grant."  *See also A. A. Allen Revivals, Inc. v. Campbell*, 353 F.2d 89, 90 (5th Cir. 1965) (rejecting the argument that a refund suit "presented a justiciable controversy even if there was a valid tender of the amount claimed."); *Lamb v. Commissioner*, 390 F.2d 157 (2d Cir. 1968) (Tax Court appeal was moot following refund of overpayment).  There is no shortage of district court cases to the same effect.[3]  Thus, the cases clearly establish that a refund suit is rendered moot when the refund sought has been paid.

---

[3] *See, e.g., Sintow v. United States*, 129 A.F.T.R.2d 2022-2030, 2022 WL 2047315, at *3 (S.D. Fla. Jun. 7, 2022); *Shanks v. United States*, 112 A.F.T.R.2d 2013-5154, 2013 WL 5460040, at *1 (M.D. Fla. June 10, 2013); *Haas v. United States*, 83 A.F.T.R.2d 99-408 (Fed. Cl. 1999); *Estate of O'Neal v. United States*, 72 A.F.T.R.2d 93-6719, 1993 WL 766477, at *3 (N.D. Ala. June 2, 1993); *Miklautsch v. Gibbs*, 71A A.F.T.R.2d 93-4621, 1990 WL 236045, at *5 (D. Alaska Nov. 6, 1990); *Roberts v. United States*, 28 A.F.T.R.2d 71-5885, 1971 WL 428, at *1 (S.D. Tex. Oct. 20, 1971).

### 2. *Campbell-Ewald* does not compel a different result

The Jarretts' argument (Br. 15) that this case is controlled by *Campbell-Ewald* is misplaced. *Campbell-Ewald* was a consumer class-action against an advertising company alleged to have regularly sent unsolicited, automated text messages to cellular phone users in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A). Prior to the filing of a motion for class certification, the defendant attempted to "pick off" the named plaintiff (and rid itself of the risk of a class action) with an offer of judgment under Fed. R. Civ. P. 68 that would satisfy the plaintiff's personal treble-damages claim and enjoin the company from violating the TCPA in the future. 577 U.S. at 157-58. The Court permitted the action to proceed, reasoning that "[u]nder basic principles of contract law," the "offer of judgment, once rejected, had no continuing efficacy." 577 U.S. at 163. Therefore, the parties were in the same position that they were at the outset of the litigation, with an ongoing case or controversy to be resolved. *Ibid.*

But the Court in *Campbell-Ewald* reserved the question presented here: whether full payment of a claim moots a suit for the recovery of the claimed amount. It distinguished a trio of 19th-century railroad tax

cases[4] involving "actual payment of the taxes for which the suit was brought," reasoning that, in those cases, "the railroad's payments had fully satisfied the asserted tax claims, and so extinguished them."  577 U.S. at 164.  The Court also distinguished two more recent cases dismissed on mootness grounds—*Alvarez*, 558 U.S. at 95 and *Already*, 568 U.S. at 102—because, in those cases, "the plaintiffs had received full redress for the injuries asserted in their complaints."  577 U.S. at 164 n.5.  Writing for the dissenters, Chief Justice Roberts observed that "[t]he good news is that this case is limited to its facts," and "[t]he majority does not say that *payment* of complete relief leads to the same result."  *Id*. at 184 (emphasis in original).

Moreover, four justices resolved the question reserved by the majority, stating expressly that tendering full payment moots a plaintiff's individual claims.  *Id*. at 170 (Thomas, J., concurring in judgment) (arguing for a common-law rule that the case was not moot because the defendant did not "tender" payment, without deciding "whether compliance with every common-law formality" would be

---

[4] *People of State of Calif. v. San Pablo & T.R. Co.*, 149 U.S. 308 (1893); *Little v. Bowers*, 134 U.S. 547 (1890), and *San Mateo Cnty v. S. Pac. R. Co.*, 116 U.S. 138 (1885).

necessary to end a case); *id.* at 178-79 (Roberts, C.J., dissenting) (stating that case was moot when the defendant offered complete relief, but if there was any "question whether [the defendant] is willing and able to pay, there is an easy answer: have the firm deposit a certified check with the trial court"); *id.* at 185-86 (Alito, J., dissenting) (a case is moot when it is "absolutely clear" that the plaintiff will be able to receive the offered relief, emphasizing that the "most straightforward way" to do so "is simply to pay over the money").

The Jarretts try to shoehorn this case into the *Campbell-Ewald* rubric by repeatedly referring to the refund they were issued as an "offer." (*See, e.g.*, Br. 15-17). But calling a refund an offer does not make it one. The Treasury Department issues hundreds of millions of tax refund checks annually, *see* Returns Filed, Taxes Collected & Refunds Issued, *at* https://www.irs.gov/statistics/returns-filed-taxes-collected-and-refunds-issued (last accessed Mar. 20, 2023); these checks are not "offers."[5] The refund that the Jarretts received was not an offer

---

[5] For individuals, formal refund claims are made on an amended return, Treas. Reg. § 301.6402-3(a)(2), of which the IRS receives about 3 million annually. *See* "New IRS Feature allows Taxpayers Electronically Filing Amended Returns to Choose Direct Deposit to

(continued…)

to resolve their refund claim:  it is a resolution of that claim.  *Cf.*

*Lohmann v. United States*, 154 Fed. Cl. 355, 363 (2021) (decision to

"correct Plaintiffs' records and Plaintiffs' subsequent entitlement to

payment . . . is not an *offer to resolve* Plaintiffs' FY 2016-2017 claims, it

is a *resolution* of those claims") (emphasis in original).  The Jarretts'

references (Br. 21) to contract law are ill-suited to the circumstance of

an administrative claim that is fully paid.

In short, because this case involves the tender of payment of a

claimed tax refund, and not an offer to settle a case, *Campbell-Ewald*

does not apply.  As the Court itself stated, 577 U.S. at 164 n.5, "full

payment" cases—like *Drs. Hill* and the other refund cases mentioned

above—are not "inconsistent" with *Campbell-Ewald* so as to require

reconsideration, *see Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d

686, 720 (6th Cir. 2016), as the Jarretts contend (Br. 24).[6]  And,

---

Speed Refunds," *at* https://www.irs.gov/newsroom/new-irs-feature-allows-taxpayers-electronically-filing-amended-returns-to-choose-direct-deposit-to-speed-refunds (last accessed Mar. 29, 2023).  The vast majority of these refund claims are resolved through payment.

[6] Contrary to the Jarretts' assertion (Br. 23), not all of the cases holding that tender of a tax refund moots a refund suit predate *Campbell-Ewald.  See Sintow*, *supra*, 2022 WL 2047315, at *3.

contrary to the Jarretts' assertion (Br. 24), *Drs. Hill* was not a "drive-by jurisdictional ruling," *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 91 (1998), any more than the cases it cited in support, such as *San Pablo*, 149 U.S. 308, which the Court in *Campbell-Ewald* found distinguishable because they involved "actual payment of the taxes for which suit was brought," 577 U.S. at 164.

The fact that the Jarretts "may have chosen not to 'accept' that payment by cashing the check is not sufficient to prevent [their] claim from becoming moot." *Russell v. United States*, 661 F.3d 1371, 1375 (Fed. Cir. 2011). A "plaintiff may not prolong a case merely by refusing to accept a valid tender." *Rothe Dev. Corp. v. Dep't of Defense*, 413 F.3d 1327, 1331 (Fed. Cir. 2005). Moreover, the expiry of the check after one year (*see* Br. 16) does not affect the analysis. The Jarretts' account for tax year 2019 was credited with an overpayment (Forst decl. Ex. A, RE 51-3, PageID # 657),[7] which the Secretary was obligated to refund (in the absence of any offsetting liabilities), *see* I.R.C. § 6402(a). The

---

[7] The Jarretts' insistence (Br. 23) that the Government does not recognize an overpayment is belied by the record. (Forst decl. Ex. A, RE 51-3, PageID # 657). The payment of statutory interest to the Jarretts (McMonagle decl., RE 41-1, PageID # 116) necessarily required the existence of an overpayment. *See* I.R.C. § 6611(a), (b)(2).

-31-

Secretary met this obligation. *Cf. Your Ins. Needs Agency Inc. v. United States*, 274 F.3d 1001, 1005 (5th Cir. 2001) (theft and forgery of refund check does not mean that Government owes a refund, but taxpayer may seek a replacement check). In accordance with the usual procedure, the proceeds of their refund check were "returned" to the IRS for crediting to their account, and the Jarretts were sent a Form CP-32A notice advising them to contact the IRS for issuance of a replacement check. 31 U.S.C. § 3334(a); *see* IRM §§ 21.3.1.6.24 & 21.4.2.4.7 (explaining usual procedure). Their refusal to do so does not manufacture a dispute for the District Court to adjudicate.

The Government was not obligated, as the Jarretts claim (Br. 17), to "offer to pay [their] costs." (Br. 17.) A claim for costs does not prevent a case from becoming moot. *Russell*, 661 F.3d at 1375; *cf. Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990) ("interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim"); *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 714 (6th Cir. 2011) (same).

Nor should the Government have to continue to litigate the case, as amicus suggests (Am. 14-16), so that taxpayers are more easily able to recover attorneys' fees. The Government may decide to concede a case after litigation has commenced, and such a concession is a factor to be considered in, but not determinative of, whether its position is substantially justified. *E.g.*, *Johnson v. Commissioner*, 972 F.3d 655, 658 (5th Cir. 2020). Indeed, the Government may be substantially justified when it decides to concede seven months after the complaint is filed, *see Harrison v. Commissioner*, 854 F.2d 263, 265 (7th Cir. 1988), as it did here (Forst decl. Ex. A, RE 51-3, PageID # 657).[8] But *preventing* a concession would not give the court greater insight into the Government's "motivation" (Am. 16), and would only increase the unrecovered fees of the taxpayer.[9] *See*, *e.g.*, *Haas*, 43 Fed. Cl. at 86.

---

[8] This does not mean that the IRS has "no incentive" to comply with the refund-claim procedure, as the Jarretts contend. (Br. 24.) The Government must pay interest on overpayments. 26 U.S.C. § 6611(a). And, once litigation has commenced, it may be subject to "reasonable litigation costs," including attorney fees, if it cannot show that its refusal to concede was "substantially justified." I.R.C. § 7430(a), (c)(4)(B).

[9] The argument of amicus (Am. 16-19) that issuing a refund of penalties might deprive taxpayers of abatement relief regarding the same penalty in the future is not relevant to this case, which does not

(continued…)

There is also no need for the Government to "submit to a formal Rule 68 judgment against it," as the Jarretts claim.  (Br. 17.)  The Jarretts want the Court to say that the Government owes them money while holding a check for the amount they say they are owed.  But "[i]t is the tender itself that moots the case whether or not a judgment is entered." *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 347 (1980) (Powell, J., dissenting) (citing, among others, this Court's decision in *Drs. Hill*, 392 F.2d 204).

Any judgment here would not provide the Jarretts with any "effectual relief," *see Church of Scientology*, 506 U.S. at 12, because the Government has already conceded the overpayment, adjusted the Jarretts' account accordingly, and paid a refund.  A judgment would not have issue-preclusive effect, because the merits of the case would not have been "actually litigated and determined." *Bobby v. Bies*, 556 U.S.

---

involve penalties and would have no such effect.  And amicus is wrong to suggest (Am. 7) that the Department of Justice can only make concessions when its case is meritless.  The Department is not so bound. *See* 28 C.F.R. §§ 0.164, 0.168; Tax Div. Dir. 139, 28 C.F.R. Pt. 0, Subpt. Y, App. (authority to close claims other than by compromise or entry of judgment); U.S. Dep't of Just., Just. Manual § 4-3.200, *available at* https://www.justice.gov/jm/justice-manual (last accessed Mar. 29, 2023) (listing criteria for closing a claim); *id*. § 6-6.120 (authority to concede refund suits).

825, 834 (2009) (citation omitted); *see also* Restatement (Second) of

Judgments § 27 cmt. e (1982); Gerald A. Kafka & Rita A. Cavanagh,

*Litigation of Fed. Civil Tax Controversies* ¶ 22.03[1] (Nov. 2021)("An

issue that was compromised or conceded . . . in an earlier action can be

litigated in a subsequent suit for another taxable period.")  And the

Jarretts' professed concern (Br. 18, 28) that the Government might turn

around and sue for an erroneous refund, *see* I.R.C. § 7405, does not give

rise to an actual controversy.

The Government has represented (Mem. in support of mot. to

dismiss, RE 42, PageID # 128) that its concession in this case is final,

and that any examination into the Jarretts' 2019 tax return is closed.

The same Department of Justice that conceded the case (Forst decl. Ex.

A, RE 51-3, PageID # 657), *see* I.R.C. § 7122(a), would not have the

effrontery to undercut its own representations and direct that a

countervailing erroneous refund action be commenced, *see* I.R.C. § 7401

(no civil action for recovery of taxes unless directed by the Attorney

General or his delegate).[10]  In these matters the Government is entitled

---

[10] Even if it were viable, an erroneous refund suit would have to be
brought within 2 years of payment, absent fraud on the Jarretts' part.
I.R.C. § 6532(b).

to a presumption of good faith. *Speech First, Inc. v. Schlissel*, 939 F.3d

756, 767 (6th Cir. 2019); *see also Mosley v. Hairston*, 920 F.2d 409, 415

(6th Cir. 1990) (government officials' "self-correction provides a secure

foundation for a dismissal based on mootness so long as it appears

genuine") (citations omitted).  Even if the Jarretts' refund could be

considered "erroneous" in these circumstances, which seems unlikely,

*see Greer v. Commissioner*, 557 F.3d 688, 692 (6th Cir. 2009), the

"theoretical possibility" of governmental double-dealing, *Murphy v.

Hunt*, 455 U.S. 478, 482 (1982) does not turn a moot case into a live

controversy.[11]

Nor was the Government required to "submit to an injunction

barring it from engaging in similar conduct again." (Br. 17.)  As

explained below, the District Court lacked jurisdiction to enjoin the IRS

from future tax assessment or collection.  And the IRS did not engage in

---

[11] For similar reasons, the Court should not give weight to the theoretical ways the Jarretts propose the Government might manipulate the system to treat similarly situated taxpayers unequally. (Br. 25.)  If the Jarretts could provide evidence of a deliberate governmental effort to game the system in the ways that they suggest (and, of course, there is no such evidence), then an appropriate court could take the matter up under the "capable of repetition, yet evading review" exception, discussed *infra*.

any past "conduct" that ought to be prohibited going forward.  The Jarretts themselves initially reported the disputed amount as tax due and paid it; all the IRS did was not act on their subsequent refund claim within six months.  (Am. compl., RE 61, PageID # 722, 724.)

Finally, the Government's position does not, as the Jarretts suggest (Br. 22), require "an exception 'good for tax law only.'"  As explained above, that full payment of a refund moots a claim for that refund is the rule, not the exception.  And the same rule applies to other administrative claims.  In a Social Security action seeking payment of benefits, for instance, payment of those benefits generally moots the action.  *See Favors v. Soc. Sec. Admin.*, No. 22-cv-262 (ABJ/GMH), 2022 WL 17370243, at *4 (D.D.C. Oct. 17, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 18787828 (D.D.C. Nov. 9, 2022).  A claim for excessive interest charged on credit cards issued to military personnel is rendered moot by payment of more than the amount claimed.  *Russell*, 661 F.3d at 1374.  And a claim seeking production of documents under the Freedom of Information Act, 5 U.S.C. § 552, becomes moot when the agency turns over the documents under request.  *GMRI, Inc. v. E.E.O.C.*, 149 F.3d 449, 451 (6th Cir. 1998).

The rule also applies in reverse:  actions to reduce assessments to judgment generally become moot upon full payment of the assessed liabilities.  *See*, *e.g.*, *United States v. Miller*, 737 F. Supp. 508, 510 (N.D. Ind. 1990).  Otherwise, even full payment of their taxes would not save taxpayers from litigation with the IRS.

### C.    The "capable of repetition, yet evading review" exception to mootness does not apply

Alternatively, the Jarretts argue (Br. 32-36) that their case falls within an exception to mootness.  "An otherwise moot claim will not be dismissed" if "it is 'capable of repetition, yet evading review,' " *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 781 (6th Cir. 2007) (quoting *Murphy*, 455 U.S. at 482).  This doctrine "applies only in exceptional situations," *Lyons*, 461 U.S. at 109, "where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal brackets, quotation marks, and citations omitted).   The party invoking the exception bears the burden

of establishing both of these elements.  *Memphis A. Philip Randolph Inst.*, 2 F.4th at 559-60.

### 1.     The Government's conduct is not "capable of repetition" here

To be capable of repetition, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party."  *Murphy*, 455 U.S. at 482.  A "mere physical or theoretical possibility" is not enough.  *Ibid*. Relying on the Eleventh Circuit's decision in *Christian Coalition*, 662 F.3d at 1195-96, the District Court concluded that "the instant controversy was limited to whether [the Jarretts] were entitled to a refund of taxes paid for the 2019 tax year," and "[t]his particular issue is not capable of repetition as any subsequent claim for refund would necessarily apply to a different tax year."  (Mem. op., RE 65, PageID # 741.)  The Jarretts take issue with this aspect of the District Court's decision (Br. 34-35), arguing that this Court, in *Drs. Hill*, *supra*, "recognized that a yearly recurring tax dispute *would* satisfy the 'probability of immediate repetition' prong," and that election-law cases satisfy this standard "even though each election will involve a different

year, different race," etc. The Jarretts' arguments are misplaced. But even if they were correct, these arguments would not help their cause.

In *Drs. Hill*, 392 F.2d at 205, this Court affirmed the dismissal of a refund suit challenging the validity of a Treasury Regulation because the Government had already paid the full amount of the refund claim. The Court also stated that "the only arguable grounds for avoidance of dismissal for mootness would be the probability of immediate repetition of the issue and the public importance of a final decision." *Ibid*. But it dispatched of this "only arguable ground" by pointing out that suits concerning the validity of the Treasury Regulation were already in progress in the Sixth and Tenth Circuits. *Ibid*. The Jarretts read too much into this reassurance; the Court did not decide whether, in the absence of other cases raising the same issue, a taxpayer could establish the capable of repetition but evading review exception.

Moreover, the Court in *Drs. Hill* did not state the "capable of repetition" test as it is currently applied. To satisfy the test, there must be a reasonable expectation that "the *same controversy* will recur involving the *same complaining party*." *Murphy*, 455 U.S. at 482 (emphasis added). The Court's statement in *Drs. Hill* referred to suits

involving different parties.  And the "public importance of a final decision," *Drs. Hill*, 392 F.2d at 205, is not relevant.  *See Fialka-Feldman*, 639 F.3d at 714-15 (collecting Supreme Court and lower court cases rejecting a "public interest" exception to mootness).  As this Court later explained, "it is hard to grasp" why the risks of hearing an otherwise moot case "would be ameliorated, as opposed to accentuated, when the public has a keen interest in the resolution of the issue."  *Id.* at 715.  If, as the Jarretts claim (Br. at 36), the question whether their Tezos tokens are taxable has public importance, "so much the more important is it that it should not be decided in a case where there is nothing in dispute."  *Little*, 134 U.S. at 558.

Nor is the Jarretts' analogy to election-law cases (Br. 35) of much assistance.  This Court has repeatedly explained that the capable-of-repetition prong is " 'somewhat relaxed in election cases.' " *Memphis A. Philip Randolph Inst.*, 2 F.4th at 560 (quoting *Lawrence v. Blackwell*, 430 F.3d 368, 372 (6th Cir. 2005)).  As this Court has explained, "[c]hallenges to election laws are one of the quintessential categories of cases which usually fit [the short-duration] prong because litigation has only a few months before the remedy sought is rendered impossible by

the occurrence of the relevant election." *Lawrence*, 430 F.3d at 371.  In light of that fact, courts will find the capable-of-repetition prong to be satisfied where the law being challenged by an election-law plaintiff is extant and future candidates would likely suffer the same harm allegedly caused by that law.  *Id.* at 372.  Here, the Jarretts have not shown—and cannot show—that refund lawsuits are inherently of such short duration that "the remedy sought is rendered impossible" by the passage of time.

While the Jarretts would like to characterize the issue in their tax refund suit as whether Mr. Jarrett's "self-created cryptocurrency tokens are taxable income upon creation" (Br. 33), the question in any refund suit, preliminarily, is whether there has been an overpayment, *i.e.*, a "payment of more than is rightfully due." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947).  "This involves a redetermination of the entire tax liability," *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), and therefore the IRS may determine that, upon grounds other than those stated by the taxpayer, he is or is not entitled to a refund, *United States ex rel. Girard Tr. Co. v. Helvering*, 301 U.S. 540, 543 (1937).  Moreover, "[e]ach year is the origin of a new liability and of a separate cause of action."

-42-

*Commissioner v. Sunnen*, 333 U.S. 591, 598 (1948).  Consequently, if the Jarretts are involved in future litigation involving the taxation of Tezos tokens, they will not have been "subject to the same action again." *Spencer*, 523 U.S. at 17.  The "same controversy"—the Jarretts' 2019 tax liability—"is not an issue capable of repetition," *Christian Coalition*, 662 F.3d at 1196, except (perhaps) in the context of a suit for erroneous refund, which as we explained above, presents only a "theoretical" risk, and not a "reasonable expectation."  *Murphy*, 455 U.S. at 482.

## 2.    The controversy is not "evading review"

Even if the controversy in this case were defined as whether "self-created cryptocurrency tokens are taxable income upon creation" (Br. 33), it would not help the Jarretts' cause, because any future adverse determination by the IRS would not necessarily evade review. If a dispute concerning the taxation of the Jarretts' cryptocurrency were to occur in future years, the Jarretts would again have recourse to the mechanisms designed by Congress to review such disputes.  *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974).

For instance, Mr. Jarrett states that, in 2020 and 2021, he continued to engage in the enterprise of earning cryptocurrency through

"staking," and "did not have deductions, losses, or other items that would prevent my reporting of another overpayment." (Jarrett decl., RE 51-1, PageID # 651.) If the Jarretts believe there was an overpayment, then they can file a claim for refund for 2020 or 2021 and, if denied, bring another refund suit. Alternatively, they can report the cryptocurrency as non-taxable and put the onus on the Government to determine a deficiency, in which case they would have the right to pre-payment review by petitioning the Tax Court.[12] I.R.C. § 6213(a). "These review procedures offer . . . a full, albeit delayed, opportunity to litigate the legality of" the IRS's position on cryptocurrency earned through staking. *Bob Jones*, 416 U.S. at 746; *see Koger v. United States*, 755 F.2d 1094, 1097 (4th Cir. 1985) ("the claim of illegal assessment will not evade review to the extent that the taxpayers may be able to vitiate the effect of any illegal assessment in a claim and suit for refund"). As a result, the question of legal liability for taxes is not inherently "too short to be fully litigated prior to cessation or expiration." *Spencer*, 523 U.S. at 17.

---

[12] Notably, Mr. Jarrett does not contend that he was denied a refund claim or subject to deficiency proceedings for 2020 or 2021 because of his position on the taxation of such cryptocurrency.

The cases cited by the Jarretts (Br. 36) do not compel a different conclusion. In *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002), the court was persuaded by a demonstrated pattern by the U.S. Fish and Wildlife Service, in eight separate cases, of making determinations whether to list species as endangered or threatened shortly after a lawsuit was filed. But there is no such pattern here. The Jarretts have not pointed to any other instance where the Government has paid claims shortly after the filing of a refund suit challenging its position on cryptocurrency.[13] And there is no "once bitten" exception to the requirement of a case or controversy. *Already*, 568 U.S. at 98.

Likewise, in *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir. 1996), there was a demonstrated pattern by the state agency of restoring Medicaid home care services as soon as a lawsuit was filed. And in *Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1332 (Fed. Cir. 2001), the court explained that the Commerce Secretary's process of identifying countries that had ceased large-scale driftnet fishing was

---

[13] The Jarretts' suggestion (Br. 36) that the Government might "[i]gnore refund claims" in order "to evade review for all time" is therefore entirely unsupported and exceedingly cynical.

inherently "recurring" and "short term," because it was a given that, as soon as a plaintiff pointed out evidence that a country was engaged in such fishing, the Secretary would de-list the country and the listing process would escape review.  Here, there is no similar presumption that the IRS's refund procedures *inherently* escape review.  *Spencer*, 523 U.S. at 17.

### D.    The Jarretts' claim for injunctive relief is barred by the Anti-Injunction Act

Finally, the Jarretts contend that this action is not moot because, after the Government issued them a full refund of the disputed taxes, they amended their complaint to add a request for "[a] permanent injunction against the Internal Revenue Service, preventing it from treating tokens created by the Jarretts as income" (Am. compl., RE 61, PageID # 727), and they claim they are "entitled" to such an injunction, (Br. 28.)  This argument contravenes the plain language of the Anti-Injunction Act.

As explained above, suits restraining the assessment or collection of federal taxes are barred by the Anti-Injunction Act, which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." I.R.C.

-46-

§ 7421(a).  The Act's object "is to withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes."  *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 5 (1962).  It "protects the Government's ability to collect a consistent stream of revenue," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 543 (2012) with "a minimum of pre-enforcement judicial interference," *Bob Jones*, 416 U.S. at 736. "Because of the Act, a person can typically challenge a federal tax only after he pays it, by suing for a refund." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586 (2021).

As the Supreme Court has observed, the absolute language of the statute "could scarcely be more explicit." *Bob Jones*, 416 U.S. at 736. Although the Act is subject to a number of statutory exceptions (*see* note 1, *supra*), and to a "single, narrow judicial exception" under *Williams Packing*, 370 U.S. at 1, none are applicable here.[14]

The Jarretts argue (Br. 29) that the Act "does not apply to refund suits in the first place."  However, because a refund suit seeks "the

---

[14] To qualify for the judicial exception to the AIA, a taxpayer must show both "irreparable injury," *Williams Packing*, 370 U.S. at 6, and "that under no circumstances could the Government ultimately prevail," *id*. at 7.

recovery" of a tax that was *already* "erroneously or illegally assessed or collected," I.R.C. § 7422(a), a refund claim does not require injunctive relief and thus, a refund suit does not run afoul of the Anti-Injunction Act.  Indeed, the Act's very purpose is to require "that the legal right to the disputed sums be determined in a suit for refund," *Bob Jones*, 416 U.S. at 736 (internal quotation marks and citations omitted).  But "Section 7422(a) does not allow for prospective relief." *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014).  Moreover, the Jarretts have already obtained recovery of the taxes that they allege were erroneously assessed or collected.  What remains is not a refund suit, but a stand-alone request for a permanent injunction restraining the assessment of taxes attributable to cryptocurrency earned by the Jarretts in future years.  (Am. compl., RE 61, PageID # 727.)  This is a paradigmatic example of the sort of relief the Anti-Injunction Act prohibits.

The Jarretts' only authority for the proposition that injunctive relief is available in tax refund suits (Br. 29) is a footnote to the dissenting opinion in *Cohen v. United States*, 650 F.3d 717, 740 n.5 (D.C. Cir. 2011).  The majority opinion, however, rested on the opposite proposition:  it held that a challenge to telephone excise tax refund

procedures was actionable under the Administrative Procedure Act, 5

U.S.C. § 551 *et seq*., because the plaintiffs did not otherwise have an

adequate remedy.  *Cohen*, 650 F.3d at 731-32.  The court reasoned (*id*.

at 732) that:

> § 7422(a) would not provide Appellants the equitable relief
> they seek.  Section 7422(a) provides 'for the recovery of any
> internal revenue tax.'  It does not, at least explicitly, allow
> for prospective relief.

*Cohen* thus undermines, rather than supports, the Jarretts' argument.

The Jarretts are simply wrong in their assertion (Br. 30-31) that

any interpretation of the Anti-Injunction Act that prohibits prospective

relief would violate due process.  The Court in *Bob Jones*, 416 U.S. at

746, said just the opposite:  *viz*., that 60 years prior it had "dismissed

out of hand" the contention that forcing a taxpayer to meet the

standards of Section 7421(a) would be a denial of due process of law,

and that it found "such arguments no more compelling now than then."

The Court observed that the options open to a taxpayer to challenge the

IRS's determination of tax-exempt status are either "in accordance with

prescribed procedures [to] petition the Tax Court to review the

assessment of income taxes" or to "pay income taxes, . . . exhaust the

Service's internal refund procedures, and then bring a suit for a

refund." 416 U.S. at 746. While acknowledging the hardship to tax-exempt organizations that must follow this backward-looking review procedure, it concluded that "the problems presented do not rise to the level of constitutional infirmities, in light of the powerful governmental interests in protecting the administration of the tax system from premature judicial interference . . . and of the opportunities for review that are available." *Id.* at 747-48.

Even if injunctive relief could be requested and granted in a refund suit, the Anti-Injunction Act would bar continuation of a suit that consisted solely of a claim for injunctive relief after the refund claim was mooted. It is beyond cavil that the Jarretts could not have filed a stand-alone lawsuit that sought injunctive relief seeking to bar the IRS from assessing income taxes on their cryptocurrency earnings. *Cf. Hancock Cnty. Land Acquisitions, LLC v. United States*, No. 21-12508, 2022 WL 3449525, at *2 (11th Cir. 2022) (lawsuit to "restrain the IRS from assessing or collecting" taxes "is barred by the AIA."); *Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 796 (6th Cir. 2017) (same). But the text of the Act does not solely bar the *filing* of such a lawsuit. Rather, it states that "no suit for the purpose of

restraining the assessment or collection of any tax *shall be maintained* in any court by any person." I.R.C. § 7421(a) (emphasis added).

The Jarretts have cited nothing indicating that they could "maintain" a stand-alone claim for injunctive relief that otherwise falls within the scope of the Act simply because that claim was originally packaged with a mooted claim for monetary relief.[15]  Rather, they simply assert a purported "rule that statutory jurisdiction must be assessed at the time the complaint is filed."  (Br. 32.)  But the case that they cite in support of that claim is markedly more limited, and does not address the Act (or any statute with similar language) at all. Rather, the cited case, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991), merely reaffirms "the well-established rule that diversity of citizenship is assessed at the time the action is filed," under which "[d]iversity jurisdiction, once established, is not defeated by the addition of a nondiverse party to the action."

---

[15] Notably, the Jarretts had not pled a claim for injunctive relief prior to the IRS fully paying, and thereby fully resolving, their refund claim (with full statutory interest).  (Compl., RE 1, PageID # 7-8.) Rather, they amended their complaint after the refund claim was already moot to add a claim for injunctive relief that falls within the heart of the Act.  (Am. compl., RE 61, PageID # 727.)  Such an end-run around the strictures of the Act should not be permitted.

The Jarretts' argument (Br. 31-32) from *South Carolina v. Regan*, 465 U.S. 367 (1984) that they have a right to an injunction *because* they are unable to bring a refund claim is even further afield. The Jarretts are not like the State in *South Carolina*, which, being not subject to federal taxation, had no way of contesting the tax to be collected on the bonds it issued. 465 U.S. at 371-73. Here, the Jarretts are like any other taxpayer: if, in the future, a tax is collected on their income that they contend is "erroneously or illegally assessed or collected," they may contest it, first administratively, and if no refund is granted, by bringing a "civil action against the United States for the recovery of" that amount. 28 U.S.C. § 1346(a)(1). That is an adequate remedy. *Bob Jones*, 416 U.S. at 746; *South Carolina*, 465 U.S. at 376. The Jarretts' position that injunctive relief is available for all taxpayers who aren't owed refunds (as well as for those who have a live refund claim) would render the Act meaningless.

Finally, the Jarretts' citation to I.R.C. § 7803(a)(3)(D), does not demonstrate that they are entitled to injunctive relief. That section— which instructs the Commissioner to ensure that IRS employees are "familiar with and act in accord with taxpayer rights *as afforded by*

*other provisions of this title*, including . . . the right to challenge the

position of the [IRS] and be heard," I.R.C. § 7803(a)(3)(D) (emphasis

added)—does not confer any new stand-alone rights. *Richlin v.*

*Commissioner*, 859 F. App'x 772, 773 (9th Cir. 2021); *Shnier v. United*

*States*, 151 Fed. Cl. 1, 10 (2020). Nor does it justify undermining the

Anti-Injunction Act. Here, the Jarretts seek to maintain a stand-alone

lawsuit seeking injunctive relief barring the IRS from assessing taxes

on their cryptocurrency activities in the future. But the Act bars them

from maintaining that lawsuit.

-53-

## CONCLUSION

The order of the District Court dismissing this action is correct

and should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

/s/ Ivan C. Dale

JENNIFER M. RUBIN              (202) 307-0524
IVAN C. DALE                   (202) 307-6615
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

*Of Counsel:*

HENRY C. LEVENTIS
  *United States Attorney*

MARCH 30, 2023

21954259.1

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X]   this document contains 10,912 words, **or**

[ ]   this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]   this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in Century Schoolbook 14, **or**

[ ]   this brief has been prepared in a monospaced typeface using _____ with _____.

(s)   _/s/ Ivan C. Dale_____

Attorney for  _appellee_____

Dated:  _March 30, 2023____

# ADDENDUM

## DESIGNATION OF RELEVANT
## DISTRICT COURT DOCUMENTS

### Pursuant to Sixth Circuit Rule 30(g)

| Record Entry No. | Description | Page ID Range |
|---|---|---|
| 1 | Complaint | 1-8 |
| 25 | Answer | 61-66 |
| 41 | Motion to dismiss | 114-15 |
| 41-1 | Declaration of Ryan O. McMonagle | 116-17 |
| 42 | Memorandum in support of motion to dismiss | 119-30 |
| 51-1 | Declaration of Joshua Jarrett | 650-52 |
| 51-2 | Declaration of David L. Forst | 653-55 |
| 51-3 | Exhibit A to declaration of David L. Forst (letter from David A. Hubbert, Deputy Assistant Attorney General to David L. Forst) | 656-57 |
| 55 | Motion to modify scheduling order and amend complaint | 676-83 |
| 60 | Order granting motion to amend complaint | 714-19 |
| 61 | First amended complaint | 720-28 |
| 62 | Stipulation regarding motion to dismiss | 729-30 |
| 65 | Memorandum opinion | 733-42 |
| 66 | Order and judgment | 743 |
| 67 | Notice of appeal | 744-46 |