No. 22-6023

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOSHUA JARRETT, et al.,
                    Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA.
                    Defendant-Appellee.

On Appeal from the United States District Court
for the Middle District of Tennessee

# REPLY BRIEF OF APPELLANTS

David L. Forst
Sean P. McElroy
FENWICK & WEST LLP
Silicon Valley Ctr.
801 California St.
Mountain View, CA 94041
(650) 988-8500

Jeffrey M. Harris
Cameron T. Norris
Jeffrey S. Hetzel
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................ ii

Introduction & Summary of Argument ............................................................................ 1

Argument .............................................................................................................................. 2

    I.      Jarrett's request for monetary relief is not moot under *Campbell-Ewald.* ......... 2

    II.    Even if Jarrett's request for monetary relief were moot, his requests for other forms of relief are live. ............................................................................ 14

        A.     Judgment ....................................................................................................... 14

        B.     Injunction ...................................................................................................... 17

    III.   Even if the case were otherwise moot, Jarrett would satisfy the capable-of-repetition exception. ............................................................................................ 22

Conclusion ......................................................................................................................... 24

Certificate of Compliance .............................................................................................. 25

Certificate of Service ....................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*A.A. Allen Revivals, Inc. v. Campbell,*
  353 F.2d 89 (5th Cir. 1965) ...................................................................12

*Abbott Lab'ys v. Gardner,*
  387 U.S. 136 (1967) ............................................................................16

*Ahmed v. N.Y.C.,*
  296 F. Supp. 3d 667 (S.D.N.Y. 2017) ...................................................7

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ..............................................................................5

*APB Assocs., Inc. v. Bronco's Saloon, Inc.,*
  315 F.R.D. 200 (E.D. Mich. 2016) ........................................................6

*Ass'n for Disabled Americans, Inc. v. Reinfeld Anderson Fam. Ltd. Prt.,*
  2015 WL 1810536 (S.D. Fla. Apr. 21) ...............................................24

*Bais Yaakov of Spring Valley v. Graduation Source,*
  167 F. Supp. 3d 582 (S.D.N.Y. 2016) ...................................................5

*Bell v. Surv. Sampling Int'l, LLC,*
  2017 WL 1013294 (D. Conn. Mar. 15) .................................................5

*Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.,*
  448 F.3d 138 (2d Cir. 2006) ................................................................20

*Bob Jones Univ. v. Simon,*
  416 U.S. 725 (1974) ......................................................................passim

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263 (1993) ............................................................................19

*Bridging Cmtys. Inc. v. Top Flite Fin. Inc.,*
  843 F.3d 1119 (6th Cir. 2016) ............................................................13

*Brodsky v. Aldi Inc.,*
  2021 WL 4439304 (N.D. Ill. Sept. 28) ...............................................10

*Burlington N.R. Co. v. Maintenance of Way Employes,*
  481 U.S. 429 (1987) ............................................................................23

*California v. San Pablo & T.R. Co.,*
  149 U.S. 308 (1893) ..............................................................................7

*Campbell-Ewald v. Gomez,*
577 U.S. 153 (2016) ...................................................................passim

*Catholic Answers, Inc. v. United States,*
438 Fed. App'x 640 (9th Cir. 2011)...................................................12

*Chafin v. Chafin,*
568 U.S. 165 (2013) ...........................................................................15

*Chapman v. First Index, Inc.,*
796 F.3d 783 (7th Cir. 2015) ............................................................10

*Chi. Typographical v. Chi. Sun-Times,*
935 F.2d 1501 (7th Cir. 1991) ..........................................................19

*Church of Scientology of Hawaii v. United States,*
485 F.2d 313 (9th Cir. 1973) ...............................................12, 16, 23

*City of Erie v. Pap's A.M.,*
529 U.S. 277 (2000) .............................................................................7

*Cohen v. United States,*
650 F.3d 717 (D.C. Cir. 2011) (en banc) ...............................1, 17, 22

*Cole v. Comm'r,*
15 F.3d 1084 (9th Cir. 1993) ............................................................12

*Comm'r v. Shapiro,*
424 U.S. 614 (1976) ...........................................................................19

*Drs. Hill & Thomas Co. v. United States,*
392 F.2d 204 (6th Cir. 1968) ............................................................12

*Duncan v. Gov'r of V.I.,*
48 F.4th 195 (3d Cir. 2022) ..............................................................12

*Fam. Med. Pharmacy, LLC v. Perfumania Holdings, Inc.,*
2016 WL 3676601 (S.D. Ala. July 5) ..................................................6

*Favors v. Soc. Sec. Admin.,*
2022 WL 17370243 (D.D.C. Oct. 17)...................................................9

*FEC v. Wis. Right to Life, Inc.,*
551 U.S. 449 (2007) .....................................................................22, 23

*First Fed. Sav. & Loan Ass'n of St. Joseph v. United States,*
288 F. Supp. 477 (W.D. Mo. 1968) ...............................................3, 23

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
528 U.S. 167 (2000) ...........................................................................16

*Getchman v. Pyramid Consulting, Inc.*,
  2017 WL 713034 (E.D. Mo. Feb. 23) ................................................6

*Glidden Co. v. Zdanok*,
  370 U.S. 530 (1962) ................................................................11

*GMRI, Inc. v. EEOC*,
  149 F.3d 449 (6th Cir. 1998) ...................................................9

*Holstein v. Chicago*,
  29 F.3d 1145 (7th Cir. 1994) .................................................10

*Honig v. Doe*,
  484 U.S. 305 (1988) ..............................................................23

*Hotel Conquistador, Inc. v. United States*,
  597 F.2d 1348 (U.S. Ct. Cl. 1979), *cert. denied*, 444 U.S. 1032 (1980) ...............9, 11, 15

*Humane Soc. of U.S. v. Clinton*,
  236 F.3d 1320 (Fed. Cir. 2001) ...............................................24

*In re Grand Jury Proc.*,
  810 F.2d 580 (6th Cir. 1987) ...................................................5

*Jeffries v. Swank*,
  317 F.R.D. 543 (N.D. Ill. 2016) ...............................................7

*Klepper v. First Am. Bank*,
  916 F.2d 337 (6th Cir. 1990) .................................................19

*Lamb v. Comm'r*,
  390 F.2d 157 (2d Cir. 1968) ..................................................12

*LaSpina v. SEIU Pa. State Council*,
  985 F.3d 278 (3d Cir. 2021) ...................................................4

*Lawrence v. Blackwell*,
  430 F.3d 368 (6th Cir. 2005) ..............................................22, 23

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
  2016 WL 4541587 (W.D.N.Y. Aug. 31) ......................................6

*Mannina v. D.C.*,
  437 F. Supp. 3d 1 (D.D.C. 2020) ...............................................7

*Martelack v. Toys R US*,
  2016 WL 762656 (D.N.J. Feb. 25) ............................................4

*McPherson v. MHSAA*,
  119 F.3d 453 (6th Cir. 1997) (en banc) ...................................15

*MOAC Mall Holdings v. Transform Holdco*,
    143 S. Ct. 927 (2023) .........................................................................14

*Mobil Oil Corp. v. Kelley*,
    493 F.2d 784 (5th Cir. 1974) .............................................................19

*Nehmer v. U.S. Dep't of Veterans Affs.*,
    494 F.3d 846 (9th Cir. 2007) .............................................................10

*O'Brien v. Ed Donnelly Enterprises, Inc.*,
    575 F.3d 567 (6th Cir. 2009) .............................................................14

*O'Gilvie v. United States*,
    519 U.S. 79 (1996) .............................................................................15

*O'Neal v. Am.'s Best Tire LLC*,
    2016 WL 3087296 (D. Ariz. June 2) ............................................. 3, 4

*Ogden City v. Armstrong*,
    168 U.S. 224 (1897) ...........................................................................22

*Press-Enterprise Co.* v. *Superior Court of Cal.*,
    478 U.S. 1 (1986) ...............................................................................23

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*,
    850 F.3d 507 (2d Cir. 2017) ................................................................4

*Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*,
    909 F.3d 534 (2d Cir. 2018) ................................................................6

*Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.*,
    2016 WL 3407815 (E.D. Mo. June 16) ..............................................6

*Rezaq v. Nalley*,
    677 F.3d 1001 (10th Cir. 2012) .........................................................20

*Russell v. United States*,
    661 F.3d 1371 (Fed. Cir. 2011) ...........................................................9

*S. Corp. v. United States*,
    690 F.2d 1368 (Fed. Cir. 1982) .........................................................11

*Scholz v. United States*,
    773 F.2d 709 (6th Cir. 1985) .............................................................15

*Sintow v. United States*,
    2022 WL 2047315 (S.D. Fla. Jun. 7) ................................................13

*South Carolina v. Regan*,
    465 U.S. 367 (1984) ..................................................................... 20, 21

*Speech First, Inc. v. Schlissel,*
  939 F.3d 756 (6th Cir. 2019) ............................................................ 16, 17

*Super Tire Engineering Co. v. McCorkle,*
  416 U.S. 115 (1974) ................................................................................ 23

*Ung v. Universal Acceptance Corp.,*
  190 F. Supp. 3d 855 (D. Minn. 2016) ....................................... 4, 6, 14

*United States v. Am. Friends Serv. Comm.,*
  419 U.S. 7 (1974) .................................................................................... 18

*United States v. Cyprus Amax Min. Co.,*
  1998 WL 698761 (D. Conn. June 17) ................................................. 15

*United States v. Farley,*
  202 F.3d 198 (3d Cir. 2000) ................................................................ 16

*United States v. Miller,*
  737 F. Supp. 508 (N.D. Ind. 1990) ...................................................... 9

*United States v. Mitchell,*
  463 U.S. 206 (1983) ................................................................................ 11

*United States v. Universal Mgmt. Servs.,*
  191 F.3d 750 (6th Cir. 1999) .............................................................. 20

*United States v. Washington,*
  142 S. Ct. 1976 (2022) .......................................................................... 16

*United Steel v. Shell Oil Co.,*
  602 F.3d 1087 (9th Cir. 2010) ............................................................ 19

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792 (2021) ............................................................................... 6

*Uzuegbunam v. Preczewski,*
  2021 WL 6752235 (N.D. Ga. Dec. 22) ................................................ 5

*Vega v. T-Mobile USA, Inc.,*
  564 F.3d 1256 (11th Cir. 2009) .......................................................... 19

*Yaakov v. Varitronics, LLC,*
  200 F. Supp. 3d 837 (D. Minn. 2016) ................................................. 6

**Statutes**

26 U.S.C. §6532(a)(1) .................................................................................. 8

26 U.S.C. §7405 ..................................................................................... 8, 15

26 U.S.C. §7421(a) ...................................................................... 18, 19

26 U.S.C. §7422(a) .............................................................................. 8

26 U.S.C. §7803(a)(3)(D) ...................................................................21

31 U.S.C. §3328(a)(1) ..........................................................................7

31 U.S.C. §3328(a)(3) ..........................................................................8

Pub. L. No. 97-164, 96 Stat. 25 (1982) ...........................................11

## Other Authorities

15 *Mertens Law of Fed. Income Tax'n* §58A:14
    (updated March 2023) .................................................................13

*Directive No. 116: Standards to be Applied in Considering Settlement of Civil Tax Cases*
    (Dec. 16, 1999), perma.cc/T6G6-5J26 ........................................9

Fed. R. Civ. P 15(c)(1) ......................................................................20

Fed. R. Civ. P. 54(c) ..........................................................................20

IRS-Mot.-to-Dismiss, Doc. 73-1, *Rueda v. Yellen*,
    No. 1:20-cv-1102, 2021 WL 2459158 (D. Md. May 12) .............18

IRS-Reply, Doc. 10, *Sintow v. United States*,
    No. 1:22-cv-20160 (S.D. Fla. Apr. 12, 2022) ..............................13

*Justice Manual* (updated April 2018),
    perma.cc/YDX2-7FT3 .............................................................. 8, 9

Kumar, *How a Tiny Tennessee Court Case May Shape the Future of Digital Assets: A Dispute
over a $3,800 Tax Bill Could Have Billions of Dollars in Consequences* (Feb. 10, 2022),
    perma.cc/SJR2-VFRL ...................................................................7

*Suit*, Black's Law Dictionary (10th ed. 2014) ...............................18

U.S.-Br., *Christian Coalition of Fla., Inc. v. United States*,
    2011 WL 858547 (11th Cir. Feb.) ..............................................12

## INTRODUCTION & SUMMARY OF ARGUMENT

The IRS has long "envision[ed] a world in which no challenge to its actions is ever outside the closed loop of its taxing authority." *Cohen v. United States*, 650 F.3d 717, 726 (D.C. Cir. 2011) (en banc). The government's arguments in this case prove just how closed it thinks that loop is. Per the government: Once a taxpayer pays the disputed tax, claims an administrative refund, waits six months, and files a federal lawsuit, the government can unilaterally end that suit whenever it wants. Taxpayers can't say no. Taxpayers can't get any other relief. And no exceptions apply because every case involves a new tax year. So the taxpayer who wants judicial review must start all over: pay again, claim again, wait again, and sue again. Even if the taxpayer could afford to start from scratch, the government could just moot his new case too—and again and again, unless perhaps the taxpayer can prove a "pattern." U.S.-Br.44. The IRS is the clear winner of this regime. The clear losers are accountability, fairness, and taxpayers, "especially lower- and middle-income taxpayers." CRT-Amicus-Br.2.

The deck is not that stacked against taxpayers. Even if some of the government's arguments for blocking certain avenues to judicial review were right, they can't *all* be right. The simple answer is that *Campbell-Ewald* no longer allows defendants to unilaterally moot claims for money. *Campbell-Ewald* explains how its rule applies to tax cases, and the government doesn't even argue that it satisfied those conditions. If it did, then taxpayers should be entitled to other relief, including narrow injunctions. And if they aren't, then cases like Jarrett's would be capable of repetition yet evading review.

1

The parties in this case remain very much adverse on the taxability of Jarrett's self-created cryptocurrency tokens, hence the government's machinations below. This Court should let the parties litigate the merits of their ongoing controversy. The district court's dismissal should be reversed.

## ARGUMENT

The district court made no findings of fact. *Cf.* U.S.-Br.17. So under de novo review, this Court should hold that the case is not moot for at least one of three reasons: Jarrett's request for money is live under *Campbell-Ewald*. His requests for a judgment and an injunction are live and not barred by the Anti-Injunction Act. And if the government were somehow correct, then Jarrett's original claim would be capable of repetition yet evading review.

## I.    Jarrett's request for monetary relief is not moot under *Campbell-Ewald*.

*Campbell-Ewald* holds that, when plaintiffs sue for money, defendants cannot unilaterally moot the case by offering the full disputed amount. If the plaintiff rejects the offer, then nothing relevant has happened and the case proceeds. Here, Jarrett sued for money, the government offered him the full amount, and Jarrett did not accept. That the government ignored his choice and unilaterally mailed him an unwanted (and now expired) check changes nothing.

The government's responses to *Campbell-Ewald* have evolved. It no longer claims that *Campbell-Ewald* is limited to class actions. And it concedes that *Campbell-Ewald* applies to tax cases. It even claims that *Campbell-Ewald* holds—through some combination

of concurrences and dissents—that the government *can* unilaterally moot tax cases by "tendering full payment." U.S.-Br.13. In fact, it thinks *any* defendant can use this method. *See* U.S.-Br.27-28.

The government is mistaken. *Campbell-Ewald* already explains how it applies to "tax cases." 577 U.S. 153, 163 (2016). According to that Court, a defendant can moot a tax case by making "actual payment"—meaning the defendant offers the full disputed amount and the plaintiff voluntarily accepts. *Id.* at 163-64. Or the defendant can offer the full disputed amount and the "substantive law" can "requir[e] the [plaintiff] to accept." *Id.* at 164. Neither happened here. The government's generic points about mootness and advisory opinions are thus question-begging and wrong.

**1.** The government did not make "actual payment" under *Campbell-Ewald* because, although it unilaterally mailed Jarrett a check, that offer was "*unaccepted.*" *Id.* at 163-64. Payment, by definition, requires acceptance. *O'Neal v. Am.'s Best Tire LLC*, 2016 WL 3087296, at *3 (D. Ariz. June 2) (citing Black's Law Dictionary); *First Fed. Sav. & Loan Ass'n of St. Joseph v. United States*, 288 F. Supp. 477, 481 (W.D. Mo. 1968). Yet no one thinks Jarrett accepted anything here. The government sent Jarrett a letter explaining that it would instruct the IRS to issue a refund, as well as a draft stipulation of dismissal. Jarrett refused to stipulate. And he rejected the money *before* the IRS cut the check or even processed the refund. Forst Decl., R.51-2, ¶¶5-6, ¶8. Jarrett himself never received the check. The check was never cashed. And the check is now worthless because it expired. *See* Jarrett-Br.6-7, 15-16. Jarrett "thus remains emptyhanded"—"distinguishing

this case" from the tax cases where "the claimant accepted tender." *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 850 F.3d 507, 514 (2d Cir. 2017); *accord Martelack v. Toys R US*, 2016 WL 762656, at *3 (D.N.J. Feb. 25) ("Defendant's tender" did "not moot" claim because plaintiff "has not cashed the check"); *O'Neal*, 2016 WL 3087296, at *2-3 (same); *LaSpina v. SEIU Pa. State Council*, 985 F.3d 278, 288 n.2 (3d Cir. 2021) (noting that, under *Campbell-Ewald*, a plaintiff's "refusal to cash the check may be sufficient to defeat mootness").

The government claims that a "tender of payment" is not an "offer" that can be rejected in the first place, U.S.-Br.29, but the government is wrong. Many defendants tried to make this argument after *Campbell-Ewald*, and many failed. As one of the first courts to consider it explained, "there is no principled difference between a plaintiff rejecting a *tender* of payment and an *offer* of payment" because "[a] tender is nothing more than a particular species of offer." *Ung v. Universal Acceptance Corp.*, 190 F. Supp. 3d 855, 860-61 (D. Minn. 2016). That understanding goes back to Blackstone. *See id.* If anything, the government's tender is a particularly *weak* offer. The defendant in *Campbell-Ewald* offered the plaintiff everything: the full amount, a judgment of liability, and an injunction. If the defendant couldn't moot *Campbell-Ewald* by offering three forms of relief, then the government can't moot this case by offering only one.

Nothing in *Campbell-Ewald* suggests that defendants can moot claims by unilaterally tendering "full payment." *Cf.* U.S.-Br.26-27. The government claims that the majority "reserved" this question, U.S.-Br.26, but it didn't. The majority reserved a

different question: whether a case would be moot "if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, *and the court then enters judgment for the plaintiff in that amount*." 577 U.S. at 166 (emphasis added). No such judgment was entered here. *See Bais Yaakov of Spring Valley v. Graduation Source*, 167 F. Supp. 3d 582, 584 (S.D.N.Y. 2016) (hypothetical reserved in *Campbell-Ewald* wasn't satisfied because "this Court has not entered judgment in favor of Plaintiff"); *Uzuegbunam v. Preczewski*, 2021 WL 6752235, at *5 n.4 (N.D. Ga. Dec. 22) (same); *Bell v. Surv. Sampling Int'l, LLC*, 2017 WL 1013294, at *5 (D. Conn. Mar. 15) (same).

Nor can the government divine its preferred rule by cobbling together the "four justices" who concurred and dissented in *Campbell-Ewald*. U.S.-Br.27. For one, the majority opinion was joined by five justices. That opinion thus states the law and binds this Court, not arguments made by the four justices who didn't join. *Alexander v. Sandoval*, 532 U.S. 275, 285 n.5 (2001); *In re Grand Jury Proc.*, 810 F.2d 580, 584 (6th Cir. 1987). For two, the government wrongly counts Justice Thomas. His concurrence *declined* to decide how much more a defendant would need to do to moot a case. *See* 577 U.S. at 174 (Thomas, J., concurring in judgment) ("we need not decide"). And under the common law of tender that he consulted, full payment could not end this case, since the government tendered payment only after it was sued and refuses to admit liability. *See id.* at 170. For three, it's not even clear that the dissenters in *Campbell-Ewald* think full payment would suffice. The next time the issue came up, the main dissenter suggested that a defendant would have to tender full payment *and* "'accep[t] the entry of

judgment.'" *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 808 (2021) (Roberts, C.J., dissenting) (agreeing with the United States); *accord id.* at 802 (Kavanaugh, J., concurring) (agreeing the defendant would need to "accept the entry of a judgment").

Even if the government had complied with the hypothetical left open in *Campbell-Ewald* by tendering full payment and agreeing to a judgment, that sequence of events could not moot this case either. *Campbell-Ewald* turned on "contract law." 577 U.S. at 163. And under contract law, there is "no material difference" between "a *tender* of payment" and "an *offer* of payment." *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 541 (2d Cir. 2018). Plaintiffs can reject both and, "once rejected," all that remains is the "'unaccepted contract offer'" that *Campbell-Ewald* deemed insufficient. *Id.* A "consensus" of courts agree. *Fam. Med. Pharmacy, LLC v. Perfumania Holdings, Inc.*, 2016 WL 3676601, at *5 (S.D. Ala. July 5); *e.g.*, *Ung*, 190 F. Supp. 3d at 860-61; *Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.*, 2016 WL 3407815, at *3 (E.D. Mo. June 16); *Fam. Med.*, 2016 WL 3676601, at *6; *Yaakov v. Varitronics, LLC*, 200 F. Supp. 3d 837, 841 (D. Minn. 2016); *APB Assocs., Inc. v. Bronco's Saloon, Inc.*, 315 F.R.D. 200, 209 n.4 (E.D. Mich. 2016); *Maddox v. Bank of N.Y. Mellon Tr. Co.*, 2016 WL 4541587, at *3 (W.D.N.Y. Aug. 31); *Getchman v. Pyramid Consulting, Inc.*, 2017 WL 713034, at *3 (E.D. Mo. Feb. 23).

The opposite rule would also violate *Campbell-Ewald*'s caution against "plac[ing] the defendant in the driver's seat." 577 U.S. at 165. It would give one side the power to withdraw federal jurisdiction by tendering payment whenever it wants, even at the podium of the U.S. Supreme Court. The potential for unfairness is manifest. *See* Jarrett-

Br.17-18, 25; CTR-Amicus-Br.7-8, 13-14, 18-19. Though the government promises it would use this power responsibly, there is no "government" exception to *Campbell-Ewald*. *E.g.*, *Jeffries v. Swank*, 317 F.R.D. 543, 550 (N.D. Ill. 2016) (state agency); *Mannina v. D.C.*, 437 F. Supp. 3d 1, 8 (D.D.C. 2020) (D.C.); *Ahmed v. N.Y.C.*, 296 F. Supp. 3d 667, 668 (S.D.N.Y. 2017) (city officials). The government has as much, if not more, incentive to "avoid a potential adverse decision" where a ruling for a taxpayer "could expose it to [monetary losses] a thousand-fold larger than the bid [the plaintiff] declined to accept." *Campbell-Ewald*, 577 U.S. at 165; *see* Kumar, *How a Tiny Tennessee Court Case May Shape the Future of Digital Assets: A Dispute over a $3,800 Tax Bill Could Have Billions of Dollars in Consequences* (Feb. 10, 2022), perma.cc/SJR2-VFRL. In all events, the government's "full payment" rule would apply equally to private defendants. Its far-reaching consequences thus "further counse[l] against a finding of mootness." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 288 (2000).

**2.** Because Jarrett did not voluntarily accept, *Campbell-Ewald* requires the government to identify some "substantive law" that "required [Jarrett] to accept." 577 U.S. at 164 (discussing *California v. San Pablo & T.R. Co.*, 149 U.S. 308, 313-14 (1893)). The government points to none. It cites no federal "statute" that says unilaterally mailing a check has "the same effect as actual payment" and "extinguish[es]" a tax case. *California*, 149 U.S. at 314. No such statute exists, thus ending the analysis under *Campbell-Ewald*.

If anything, federal law says the opposite. The government's checks "expir[e]." *Campbell-Ewald*, 577 U.S. at 165; *see* 31 U.S.C. §3328(a)(1). Federal law makes clear that

their expiration does not "affect the underlying obligation" of the United States—meaning the controversy between the taxpayer and the IRS remains live. §3328(a)(3). And even after a taxpayer cashes the check, the government can sue to get the money back. 26 U.S.C. §7405. Plaintiffs like Jarrett have good reason to reject such "revocable" offers. *Campbell-Ewald*, 577 U.S. at 164 n.5.

Shifting gears, the government compares what it did to the "resolution" of an "administrative claim." U.S.-Br.28-29. It says that, whether Jarrett likes it or not, the IRS has now "adjusted [his] account." U.S.-Br.30-33. And that unilateral adjustment by the executive branch somehow limits the jurisdiction of the judicial branch.

What happened below was not the IRS adjudicating an administrative claim; it was the "Department of Justice" offering to settle a federal "case." U.S.-Br.34. The IRS has a process for adjudicating administrative refunds. *See* Jarrett-Br.24 (discussing 26 U.S.C. §7422(a), §6532(a)(1)). But that process ended when the IRS constructively denied Jarrett's claim. Jarrett thus filed this lawsuit, and the dispute moved out of the agency and into the courts, where the United States is a litigant represented by the Justice Department. Only the Justice Department has the "power to compromise or settle" tax litigation. *Justice Manual* §6-6.100 (updated April 2018), perma.cc/YDX2-7FT3. And it was exercising *that* power when "the Attorney General … authorized and directed" the IRS to schedule an overpayment for Jarrett. Ltr., R.51-3, PageID#657; *see Justice Manual* §6-6.613. According to the government, its offers are not resolutions of the "merit[s]" of a taxpayer's claim, U.S.-Br.33 n.9, but are based on strategic concerns like

"litigation hazards," *Directive No. 116: Standards to be Applied in Considering Settlement of Civil Tax Cases* (Dec. 16, 1999), perma.cc/T6G6-5J26. So unlike refunds that the IRS issues on its own, refunds that the Justice Department instructs the IRS to issue during litigation are "offered as a compromise settlement"; and "[a]s with any other settlement negotiations," the "plaintiff ha[s] a right to refuse." *Hotel Conquistador, Inc. v. United States*, 597 F.2d 1348, 1355-56 (U.S. Ct. Cl. 1979), *cert. denied*, 444 U.S. 1032 (1980).

The same rule "applies in reverse." U.S.-Br.37. When the government sues a taxpayer, the case ends if the taxpayer pays the full amount *and the government accepts. See* U.S.-Br.37. But the taxpayer cannot end the case by unilaterally mailing the government a check. If he tries, the government will "hold" the check until it decides whether to accept his settlement "offer." *Justice Manual* §6-6.421. The government can "rejec[t] the offer." *Id.* And if it does, it will "return the check" and continue litigating. *Id.* So not even the government, it seems, is willing to live under its reading of *Campbell-Ewald*.

Nor could other agencies moot a case this way. *Cf.* U.S.-Br.36-37. The government cites four stray examples. But in three, the plaintiff never rejected the defendant's offer. *See Favors v. Soc. Sec. Admin.*, 2022 WL 17370243, at *4 (D.D.C. Oct. 17); *United States v. Miller*, 737 F. Supp. 508, 510 (N.D. Ind. 1990); *GMRI, Inc. v. EEOC*, 149 F.3d 449, 451 (6th Cir. 1998). And the fourth was overruled by *Campbell-Ewald. Compare Russell v. United States*, 661 F.3d 1371, 1375 (Fed. Cir. 2011) ("a plaintiff may not spurn an offer of all the damages he is owed" (cleaned up)), *with Campbell-Ewald*, 577 U.S. at 162 (yes he may). Tellingly, the case relies on *Holstein v. Chicago*, 29 F.3d 1145 (7th Cir.

1994)—a precedent that *Campbell-Ewald* abrogated in 2016, *see Brodsky v. Aldi Inc.*, 2021 WL 4439304, at *3 (N.D. Ill. Sept. 28), and that the Seventh Circuit had already overruled in 2015, *see Chapman v. First Index, Inc.*, 796 F.3d 783, 786-87 (7th Cir. 2015).

Ultimately it doesn't matter how *the executive branch* views its actions in this case. Jarrett unequivocally rejected the government's offer. Just as an employer could not moot a case by unilaterally changing its books to say it no longer owes the plaintiff backpay, the executive cannot moot this case by unilaterally "adjusting" Jarrett's account to say it no longer owes him a refund. While the IRS might consider the matter closed on its end, mootness goes to the power of the federal courts. The executive branch cannot enlarge or take away that power; only Congress can. *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846, 860-61 (9th Cir. 2007). Hence why *Campbell-Ewald* demanded a "statute." 577 U.S. at 164.

**3.** Because *Campbell-Ewald* controls here, the government's generic points about mootness, jurisdiction, and sovereign immunity are nonresponsive. Jarrett does not want a court to evaluate "'a hypothetical state of facts.'" U.S.-Br.20. He wants a court to evaluate the real facts concerning the taxability of his self-created tokens in 2019. "Having rejected [the government's] settlement bid," he and the government "remai[n] adverse" on that question. *Campbell-Ewald*, 577 U.S. at 163. Especially "given [the government's] continuing denial of liability," "both retai[n] the same stake in the litigation they had at the outset." *Id.* Nor is Jarrett already "holding a check" or unable to "'recover'" the disputed amount. U.S.-Br.33, 23. Because he rejected the government's

10

offer, he has received "nary a penny" and remains "emptyhanded." *Campbell-Ewald*, 577 U.S. at 164-65 & n.5. His "complaint, which [the government] oppose[s] on the merits, st[ands] wholly unsatisfied." *Id.* at 165. Though the government thinks Jarrett has no good reason for refusing to take the all the money he requested, it's just fighting the premise of *Campbell-Ewald*. That decision gives plaintiffs the right to say no and keep litigating, "'however good the terms.'" *Id.* at 162.

Even before *Campbell-Ewald*, the law in tax cases was not "overwhelmingly" the opposite. U.S.-Br.23-25. The Court of Claims adopted Jarrett's position. Not to be confused with the Court of *Federal* Claims, the Court of Claims was the predecessor to the Federal Circuit. It was an Article III court. *Glidden Co. v. Zdanok*, 370 U.S. 530, 584 (1962) (plurality). Its judges became Federal Circuit judges, and its precedents became Federal Circuit precedents. *See* Pub. L. No. 97-164, 96 Stat. 25 (1982); *United States v. Mitchell*, 463 U.S. 206, 228 n.33 (1983); *S. Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982). According to that court, the government cannot moot a tax-refund case by "tender[ing] refund of the full amount due, with interest." *Hotel Conquistador*, 597 F.2d at 1355-56. If the taxpayer "refuse[s]" the offer, then he is "entitled to" keep litigating, "unless the United States" is also "willing to have judgment entered against it." *Id.*

The government's list of "[f]ive circuits" that supposedly disagree is not impressive. U.S.-Br.23-25. The government cites six cases—mostly unpublished or per curiam opinions that offer no analysis. In four of the cases, the taxpayer either accepted the government's refund or never argued that it was rejected. *See Cole v. Comm'r*, 15 F.3d

1084 (9th Cir. 1993) (unpublished) (no suggestion refund was rejected); *Catholic Answers, Inc. v. United States*, 438 Fed. App'x 640 (9th Cir. 2011) (unpublished) (same); *Drs. Hill & Thomas Co. v. United States*, 392 F.2d 204 (6th Cir. 1968) (per curiam) (same); U.S.-Br.25 n.5, *Christian Coalition of Fla., Inc. v. United States*, 2011 WL 858547 (11th Cir. Feb.) (taxpayer "waived" argument "that the case was not moot because it had not accepted the IRS's tender").

The remaining two cases are distinguishable. In one, the government tendered a refund "because of" an intervening precedent that agreed with the taxpayer on the merits, and agreed that the Tax Court should "enter a new decision" in the taxpayer's favor. *Lamb v. Comm'r*, 390 F.2d 157, 158 (2d Cir. 1968) (per curiam). In the other, the government tendered a refund because an intervening decision from "the Tax Court held" that the taxpayer was tax-exempt. *A.A. Allen Revivals, Inc. v. Campbell*, 353 F.2d 89, 90 (5th Cir. 1965). *See generally Church of Scientology of Hawaii v. United States*, 485 F.2d 313, 315-16 (9th Cir. 1973) (similarly distinguishing *Lamb* and *A.A. Allen*).

After *Campbell-Ewald*, no court has accepted the government's position. The Third Circuit recently considered a taxpayer's argument that, based on its "refusal to cash" the check, a tender of the full disputed amount does not moot a refund suit. *Duncan v. Gov'r of V.I.*, 48 F.4th 195, 205 (3d Cir. 2022). "Since such offers cannot moot a case when they are not accepted," the Third Circuit called the taxpayer's argument "sensible advocacy," before ultimately ruling for the taxpayer on other grounds. *Id.* (citing *Campbell-Ewald*, 577 U.S. at 165-66). This Court, too, has recognized that *Campbell-Ewald*

"abrogated" its decision in *O'Brien*—the only case where this Court suggested that *Drs. Hill* supports the government's current view. *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1127 (6th Cir. 2016); *see* Jarrett-Br.24. (Notably, the government thinks *Drs. Hill* has been abrogated by several other precedents too. *See* U.S.-Br.39-40.)

The government identifies only two authorities that postdate *Campbell-Ewald*. One is a treatise that says taxpayers cannot refuse the government's refunds but cites nothing except the district court's opinion in this very case. 15 *Mertens Law of Fed. Income Tax'n* §58A:14 n.7 (updated March 2023). The other is an out-of-circuit opinion where neither the court nor the parties mentioned *Campbell-Ewald*. *Sintow v. United States*, 2022 WL 2047315 (S.D. Fla. Jun. 7). That case didn't implicate *Campbell-Ewald* because, as the government pointed out in its brief, the taxpayers had "apparently accepted" the refund, thus distinguishing themselves from taxpayers who "refused" the tender. IRS-Reply 4, Doc. 10, No. 1:22-cv-20160 (Apr. 12, 2022).

Older authorities are dubious because *Campbell-Ewald* changed the law. It denies the government, like it denies other defendants, the power to unilaterally moot claims for money by offering or tendering the full disputed amount. Because Jarrett did not accept the government's refund voluntarily or under compulsion of law, his claim cannot be moot.

13

II.    **Even if Jarrett's request for monetary relief were moot, his requests for other forms of relief are live.**

Cases aren't moot unless it would be "'impossible'" for a court to grant "'any effectual relief whatever.'" *MOAC Mall Holdings v. Transform Holdco*, 143 S. Ct. 927, 934 (2023). Any "'concrete interest, however small, in the outcome of the litigation'" keeps the case alive. *Id.* Here, Jarrett has a concrete interest in getting a judgment in his favor, rather than a without-prejudice dismissal. And it wouldn't be impossible for a court to grant him an injunction—relief that the government's monetary offer doesn't even arguably moot. *Ung*, 190 F. Supp. 3d at 861-62.

A.    **Judgment**

It's no accident that *Campbell-Ewald* stressed the importance of a "judgment for the plaintiff." 577 U.S. at 166. Judgments turn the defendant's voluntary and uncertain offer into an involuntary and certain payment. *See* Jarrett-Br.27. Though the judgment might lack *issue*-preclusive effect, *see* U.S.-Br.33, it has *claim*-preclusive effect and thus changes the parties' rights and protects the taxpayer, *see* Jarrett-Br.26-27. (And here, a judgment would have issue-preclusive effect because the government disagrees with Jarrett on the merits and thus would likely continue resisting a judgment on remand.) Hence why, even before *Campbell-Ewald*, offers of full payment could not end a case before the court "enter[ed] judgment in favor of the plaintiffs." *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 575 (6th Cir. 2009).

Judgments are extra important in tax cases because they prevent the IRS from turning around and suing taxpayers to recover refunds. The government doesn't deny

that a judgment would stop it from suing Jarrett. And the government doesn't explain why, without a judgment, it *couldn't* sue Jarrett for an "erroneous" refund. 26 U.S.C. §7405. It could—for no better reason than "the IRS simply change[d] its mind." *United States v. Cyprus Amax Min. Co.*, 1998 WL 698761, at *2 (D. Conn. June 17). The government can sue Jarrett at least until February 2024, as it acknowledges. U.S.-Br.34 n.10. And it likely has much longer because it can use other causes of action with longer statutes of limitation, *Scholz v. United States*, 773 F.2d 709, 710 (6th Cir. 1985), and because it can argue that the clock doesn't start until Jarrett receives and cashes the check, *O'Gilvie v. United States*, 519 U.S. 79, 92 (1996).

That the government promises it won't sue Jarrett is irrelevant, even if the Court fully credits that representation. The Court of Claims rejected the same argument in *Hotel Conquistador*:

> [B]y I.R.C. §7405, if plaintiff took the check, [the United States] could sue in a U.S. District Court for recovery of a refund erroneously paid. [The United States] later denied it had any such strategy in mind, *and we are sure it did not*. However, we believe a party who has sued the United States in this court in a tax case is entitled to … a decision …, unless the United States is willing to have judgment entered against it.

597 F.2d at 1355 (emphasis added). Even if the government's representations meant that a judgment for Jarrett would have no "practical impact," that fact wouldn't make the case moot. *Chafin v. Chafin*, 568 U.S. 165, 175-76 (2013). As explained, a judgment for Jarrett would still "make a difference to the legal interests of the parties." *McPherson v. MHSAA*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). It would eliminate the

15

government's right to sue, thus removing a "'collateral legal consequenc[e]'" from its refund. *Church of Scientology*, 485 F.2d at 318. Because it's "not 'impossible' that the United States" could come after Jarrett, his case cannot be moot. *United States v. Washington*, 142 S. Ct. 1976, 1983 (2022).

The government's representations are not credible anyway, no matter how much "effrontery" it would take for the government to contradict them. U.S.Br.34. Mootness is not standing: "the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000). But the government's nonbinding representations here couldn't even defeat standing. *See* Jarrett-Br.28; *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 154 (1967). Every action under §7405, after all, involves a refund that the government said the taxpayer could have and then later changed its mind. *E.g.*, *United States v. Farley*, 202 F.3d 198, 203 (3d Cir. 2000) (IRS "changed its interpretation of the substantive law").

The government says it's entitled to a "presumption of good faith," U.S.-Br.34-35; but as its cited case explains, that presumption does not meaningfully attach to the executive's litigation promises. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768-69 (6th Cir. 2019). And here, the government's promise bears no weight because it was made "after the complaint was filed." *Id.* at 769. The government "does not claim to have changed its position" that Jarrett is wrong, let alone its "rules or regulations" opposing his position. Opinion, R.65, PageID#740; *see* Jarrett-Br.34. And it "continues to" resist a

16

judgment in Jarrett's favor, *Schlissel*, 939 F.3d at 770, despite insisting that a judgment would have no real effect, *see* U.S.-Br.32-35. It is thus not "'absolutely clear'" that the threat to Jarrett—either from these executive-branch officials or future ones—has abated. *Schlissel*, 939 F.3d at 770. His interest in a judgment remains.

### B.     Injunction

Whether the Anti-Injunction Act bars taxpayers from getting injunctions in refund suits is a question of first impression in this circuit. This Court should answer it by following the Supreme Court's dicta in *Bob Jones* and then-Judge Kavanaugh's dissent in *Cohen*.

Contra the government, both authorities support Jarrett. The *Cohen* majority did not decide whether plaintiffs could get "equitable remedies as part of a refund suit"; it deemed that question irrelevant because the plaintiff there could get an injunction *outside* of a refund suit. 650 F.3d at 732; *see id.* ("even if [the refund-suit statute] allowed for an injunction"); *id.* ("[e]ven if equitable relief were possible in a [refund] proceeding"). Judge Kavanaugh's dissent was the most IRS-friendly opinion in the case. *Bob Jones* likewise stressed that the taxpayer there "did not" request equitable relief "in a refund suit," warned that its decision "should not be interpreted as deciding whether injunctive relief is possible in a refund suit," and gave three reasons why it "might well" answer that question yes. *Bob Jones Univ. v. Simon*, 416 U.S. 725, 748 n.22, 746 (1974).

These authorities persuasively explain why taxpayers can get narrow injunctive relief in refund suits. The government once agreed: In 2021, the same attorney in charge

of this case argued that "[a] federal court plainly has the authority to … order … injunctive relief in a refund suit." IRS-Mot.-to-Dismiss 10, Doc. 73-1, *Rueda v. Yellen*, No. 1:20-cv-1102, 2021 WL 2459158 (D. Md. May 12). The government's current attempts to deny what it told other courts is "plain" fail. Jarrett's view is supported by the text of the Anti-Injunction Act, its purpose, and established substantive canons.

**1. Text**: The Act bars only a "suit for the purpose of restraining the assessment or collection" of taxes. 26 U.S.C. §7421(a). A "suit" is an entire "proceeding," not an individual claim or remedy. *Suit*, Black's Law Dictionary (10th ed. 2014). So the question is not whether a "*claim* for injunctive relief is barred by the Anti-Injunction Act," U.S.-Br.45 (emphasis added), but whether the *suit* is. Refund suits, as the government admits, are not one of the listed exceptions in the Act. U.S.-Br.19. They do not implicate the Act in the first place because they lack the forbidden "purpose" of restraining assessment or collection. *Bob Jones*, 416 U.S. at 748 n.22. So the question is whether a refund suit, which all agree lacks the purpose that triggers the Act, gains that purpose when the taxpayer tacks on a request for injunctive relief.

The purpose of a refund suit does not change when it also seeks an injunction, at least when the injunctive relief is "ancillary." *United States v. Am. Friends Serv. Comm.*, 419 U.S. 7, 11 (1974). An injunction is ancillary when it seeks only "to avoid the necessity of continuous subsequent 'backward-looking refund suits'"—*i.e.*, it simply prevents the IRS from doing in future years what it did to this one taxpayer this year. *Id.* A refund suit that includes ancillary relief does not implicate the Act because it is still filed after

18

the taxes are paid, uses the refund-suit mechanism that Congress identified, and seeks the same relief that the taxpayer could get in (a series of) refund suits. *Cf. Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 275-76 (1993) ("for the purpose of" means "*aimed at*," not "incidental"). Because such suits still lack the purpose of restraining the assessment or collection of taxes, they fall outside the Act's "literal terms." *Bob Jones*, 416 U.S. at 748 n.22.

The government doesn't disagree. It instead claims that, even if such a suit does not violate the Act when it's filed, it violates the Act once the monetary claim becomes moot. The government divines this principle from the Act's use of the word "maintained." U.S.-Br.49-50. But "maintained" modifies "*suit* for the *purpose* of restraining the assessment or collection" of taxes. 26 U.S.C. §7421(a) (emphasis added). And the purpose of a suit is determined "at the time" it's filed, not based on subsequent developments. *Comm'r v. Shapiro*, 424 U.S. 614, 627 (1976). That's how threshold questions work generally. *E.g.*, *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (amount in controversy); *Mobil Oil Corp. v. Kelley*, 493 F.2d 784, 786 (5th Cir. 1974) (federal question); *United Steel v. Shell Oil Co.*, 602 F.3d 1087, 1091 (9th Cir. 2010) (class certification); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 n.12 (11th Cir. 2009) (class numerosity); *Chi. Typographical v. Chi. Sun-Times*, 935 F.2d 1501, 1508 (7th Cir. 1991) (arbitrability). The government's contrary rule would create serious administrability problems, as courts would have to constantly reassess whether the suit's "purpose" has changed.

In a footnote, the government faults Jarrett for explicitly requesting an injunction only in his amended complaint, *after* the government offered a refund. U.S.-Br.50 n.15. The government does not cite any caselaw or explain what to do with this observation. The answer is nothing. The law treats Jarrett's amended complaint as if it were filed on the date of the original complaint, *before* the government's offer. *Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 151 (2d Cir. 2006); Fed. R. Civ. P 15(c)(1). Remedies needn't be pleaded anyway, Fed. R. Civ. P. 54(c), and Jarrett's original complaint included all "other and further relief," Compl.1, R.1, PageID#7; *see United States v. Universal Mgmt. Servs.*, 191 F.3d 750, 760 n.7 (6th Cir. 1999). Even if Jarrett had never requested an injunction, a case is not moot if the court could award "*some possible* remedy, even a partial remedy or *one not requested by the plaintiff.*" *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012) (emphasis added). The government's footnote thus amounts to nothing.

**2. Purpose**: Allowing ancillary injunctions in refund suits wouldn't implicate the Act's "principal purpose" of channeling disputes into refund suits. *Bob Jones*, 416 U.S. at 748 n.22; *see South Carolina v. Regan*, 465 U.S. 367, 376 (1984). And it "obviously" wouldn't implicate the Act's "'collateral objective'" of protecting tax collectors from litigation "'pending a suit for refund.'" *Bob Jones*, 416 U.S. at 748 n.22. The government does not argue otherwise. Though the government would prefer a world where it can never be enjoined, the cost of ancillary injunctions is small: They apply only to individual taxpayers, only over the same recurring dispute that prompted the refund, and only

after the taxpayer already paid the tax once and went through the administrative process. That small cost is worth the benefit of honoring taxpayers' "right to … be heard." 26 U.S.C. §7803(a)(3)(D); *see Regan*, 465 U.S. at 376 n.13 (stressing that the tax code is concerned with "providing remedies" as much as "limiting remedies" and denying that "concerns with judicial interference overr[i]de all other concerns").

**3. Canons**: Other doctrines—most notably the *Regan* exception to the Act and constitutional avoidance—also support the availability of injunctive relief. Under the government's reading of the Act, taxpayers could *never* get prospective relief, even when they raise constitutional claims (as Jarrett does). U.S.-Br.48. That contention alone implicates *Regan* and the due-process principles that it protects, since it means there's no "alternative avenue for an aggrieved party to litigate [these] claims." 465 U.S. at 381.

Not to worry, says the government, because taxpayers can keep bringing backward-looking refund claims every year ad infinitum. But *Bob Jones* "serious[ly] question[ed]" the "reasonableness" of a regime that would "forc[e] a [taxpayer] to bring a series of backward-looking refund suits." 416 U.S. at 748 n.22. And the government ignores the import of its other arguments. If it's right, then it can unilaterally moot those backward-looking suits for monetary relief, thus denying taxpayers any "access to judicial review." *Regan*, 465 U.S. at 393. That outcome is precisely what *Regan* and the Constitution will not tolerate.

Jarrett's position does not mean "injunctive relief is available for all taxpayers who aren't owed refunds." U.S.-Br.51. It means "injunctive relief [is] available *only* in

tax refund suits." *Cohen*, 650 F.3d at 740 n.5 (Kavanaugh, J., dissenting). Equitable remedies exist precisely so that taxpayers like Jarrett, who do everything right only to have their primary claim strategically mooted by the government, can vindicate their rights without "a multiplicity of suits." *Ogden City v. Armstrong*, 168 U.S. 224, 237-38 (1897).

### III.  Even if the case were otherwise moot, Jarrett would satisfy the capable-of-repetition exception.

Jarrett's case is, at a bare minimum, "capable of repetition yet evading review." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005). The government concedes that refund suits *can* satisfy this exception, even after the government tenders the full amount, if the government is trying to "game the system." U.S.-Br.35 n.11. (So its suggestions elsewhere that these tenders automatically strip courts of jurisdiction are overblown. *E.g.*, U.S.-Br.23.) Yet after making that concession, the government immediately contradicts it. It argues that refund suits are *never* capable of repetition because every tax year is different. And it argues that refund suits do not "*inherently* escape review." U.S.-Br.45. Both arguments are still wrong.

**1.** "History repeats itself, but not at the level of specificity demanded by the [government]." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007). Courts do not "[r]equir[e] repetition of every legally relevant" fact, only that the plaintiff have "a reasonable expectation that it will again be subjected to the alleged illegality." *Id.* (cleaned up). No two pregnancies, school years, labor strikes, or criminal proceedings are alike—yet controversies over them are capable of repetition. *Super Tire Engineering Co. v.*

*McCorkle*, 416 U.S. 115, 126-27 (1974); *Honig v. Doe*, 484 U.S. 305, 320 n.6 (1988); *Burlington N.R. Co.* v. *Maintenance of Way Employes*, 481 U.S. 429, 436, n.4 (1987); *Press-Enterprise Co.* v. *Superior Court of Cal.*, 478 U.S. 1, 6 (1986).

Here, too, Jarrett's claim is capable of repetition in different years. This controversy will likely recur because Jarrett plans to engage in "'materially similar'" conduct and "there is no reason to believe" the IRS has changed its position on that conduct's taxability. *Wis. Right to Life*, 551 U.S. at 463; *see* Jarrett-Br.34; Opinion, R.65, PageID #740. When the IRS deems Jarrett's self-created tokens taxable in future years, it will subject him to the exact same illegality as 2019. The resulting overtaxation will occur regardless whether Jarrett's overall tax liability is positive or negative. *Cf.* U.S.-Br. 41. The law requires no more. *E.g.*, *Church of Scientology*, 485 F.2d at 316-18 (different tax years didn't prevent refund suit from being capable of repetition).

**2.** This controversy also evades review. The question is whether time is too short to litigate before the government's "cessation *or* expiration." *Lawrence*, 430 F.3d at 371 (emphasis added). Under the government's view of its case-mooting authority, it can "cease" the offending conduct as rapidly as it pleases. Cases that the defendant can quickly and unilaterally end evade review, regardless how many times the defendant has done it. *E.g.*, *First Fed.*, 288 F. Supp. at 482 (tendering a full remand didn't moot the case, even the first time, because this maneuver is "entirely within the discretion of the [IRS]"); *Ass'n for Disabled Americans, Inc. v. Reinfeld Anderson Fam. Ltd. Prt.*, 2015 WL

23

1810536, at *5 (S.D. Fla. Apr. 21) (terminating a patient didn't moot the case, even the first time, since any doctor could use this maneuver to defeat judicial review).

The government insists that Jarrett should keep filing refund suits until he can prove a "pattern." U.S.-Br.44. One "problem with the Government's mootness argument" is that it "places on interested parties … the burden to constantly refile suits." *Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1331 (Fed. Cir. 2001). That predicament is precisely what the capable-of-repetition exception is designed to avoid. *Id.*

## CONCLUSION

This Court should reverse and remand.

Respectfully submitted,

*/s/ Cameron T. Norris*

David L. Forst
Sean P. McElroy
FENWICK & WEST LLP
Silicon Valley Ctr.
801 California St.
Mountain View, CA 94041
(650) 988-8500

Jeffrey M. Harris
Cameron T. Norris
Jeffrey S. Hetzel
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

J. Abraham Sutherland
106 Connally Street
Black Mountain, NC 28711
(805) 689-4577

*Counsel for Appellants*

**CERTIFICATE OF COMPLIANCE**

This brief complies with Rule 32(a)(7)(B) because it contains 6,429 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it was prepared using Microsoft Word in 14-point Garamond font.

*/s/ Cameron T. Norris*
Counsel for Appellants
Dated: May 11, 2023

**CERTIFICATE OF SERVICE**

I filed this brief via ECF, which will email everyone requiring notice.

*/s/ Cameron T. Norris*
Counsel for Appellants
Dated: May 11, 2023